IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NYEISHA S. GHEE,

      Plaintiff,

v.                                             Civil Action No.: 3:25-cv-17-RCY

PINETREE APARTMENTS, LLC,

      Defendant.

**PINETREE APARTMENTS, LLC'S MEMORANDUM IN SUPPORT OF ITS PARTIAL
12(b)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

      Pursuant to Local Rule 7 and Rule 12(b)(6) of the Federal Rules for Civil Procedure, the

defendant, Pinetree Apartments, LLC ("Pinetree"), by counsel, hereby submits this Memorandum

in Support of its Partial 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint.

## I.      PRELIMINARY STATEMENT

      This personal injury case arises from an apartment fire. How the fire started is

undetermined. As such, the Amended Complaint's claims are unrelated to the cause of the fire.

Instead, the Amended Complaint asserts an egress claim alleging the sliding glass door (which was

almost completely destroyed in the fire) did not slide open when Plaintiff attempted to exit with

one of her children. Plaintiff alleges that when trying to exit the sliding glass door, she placed her

son down on the bed and lost track of him, and then she exited the apartment through the front

door. When she later realized her son was still inside the apartment, she reentered the apartment

and sustained burn injuries searching for her son, who died in the fire.

      The parties' landlord-tenant relationship is controlled by the operative lease agreement and

the Virginia common law rule that a tenant assumes all risk for personal injury from defects in the

apartment unless there is concealment. To avoid the lease and common law responsibilities placed on tenants, the Amended Complaint asserts that Pinetree intentionally concealed water and termite damage from her by painting over allegedly visible termite holes 21 months before the fire, and the combination of water and termites deteriorated the supporting wooden framing that held the sliding door in place, causing it to come out of square and impeding its ability to slide. Plaintiff asserts that by painting over finished wood trim around the sliding door, Pinetree concealed the fact that the wood damage inside the back wall of the main bedroom interfered with the operation of the sliding glass door.

To succeed on concealment claims, regardless of how framed (common law fraud or fraudulent concealment of a latent defect), requires proof that the alleged defect was not something Plaintiff knew about or had the means of knowing by ordinary inspection. That cannot be proved. Lest there be any doubt, Plaintiff's Amended Complaint introduced a new revelation (in Plaintiff's language below) that confirmed her knowledge of the alleged defect with the sliding glass door before the fire:

- "Initially, Ms. Ghee and her family did not use the sliding glass door. But roughly 13 months after taking possession of the apartment, while preparing for an inspection by Pinetree, she discovered that she could not move the door." Am. Compl. ¶ 4.
- "Shortly before July 7, 2023, Pinetree posted a notice on the front door of Apartment G8 stating that it would perform an annual routine inspection of the apartment on a specified date." Am. Compl. ¶ 55.
- "In response to this notice, Ms. Ghee looked around Apartment G8 to see what was not working. She tried to open the Sliding Glass Door but could not get it to move." Am. Compl. ¶ 56.

Now that Plaintiff admits she discovered all by herself that she could not open the sliding glass door in July 2023, the concealment claims must be dismissed. This occurred 14 months after Pinetree painted the wood trim, and seven months before the fire. Plaintiff cannot take a mutually contradictory position in her Amended Complaint that what was known (or knowable if simply

checked), was hidden. Something cannot be readably discovered by a tenant before the claimed damages occurred, yet at the same time be a latent defect the landlord fraudulently concealed. Any suggestion to the contrary is incomprehensible. Plaintiff also waived any ability to rely on concealment when she failed to request the repairs in writing or seek to exercise her rights under the lease and the law before the fire. Consequently, Plaintiff's concealment claims categorically fail because the alleged defect that caused her damages – the functionality of the sliding glass door – was not, and could never be, hidden from Plaintiff, and it was not.

Plaintiff's concealment claims fail for the alternative, independently sufficient reason that the Amended Complaint does not satisfy the plausibility pleading requirement, as it erroneously relies on unreasonable and unwarranted inferences. Plaintiff's artful pleading draws multiple successive inferences, making drastic leaps in logic, in a failed attempt to state concealment claims against Pinetree. First, the subject work order, upon which Plaintiff's entire theory depends, simply refers to repairs to chipping paint in a 27-year-old apartment. Second, Pinetree's employee painted areas of chipped paint around the apartment, including the wood trim around the sliding glass door, before Plaintiff moved in. Third, Plaintiff's only basis for termite damage to the wood framing inside the back wall around the sliding glass door is a photograph taken two months after the fire (and 23 months after the repair work), after the wood had been exposed to extensive fire and fire suppression efforts. From these allegations, Plaintiff makes the unwarranted deduction of fact that the termite damage found in April 2024 was not only present and visible in May 2022, but also it prevented the sliding glass door to open in May 2022, and relying on *ipse dixit*, Pinetree's employee must have intentionally painted over termite holes on the wood trim around the sliding glass door in May 2022 with the intent to conceal it. Plaintiff's speculation and inference building,

3

even if a possibility, does not satisfy the plausibility requirement to state concealment claims against Pinetree.

Relying on the same facts underlying the concealment claims, the Amended Complaint asserts willful and wanton negligence claims. Even taken as true, the alleged facts do not rise to the level of willful and wanton conduct (i.e., "egregious conduct") to support punitive damages, which are disfavored in Virginia law. Further, Pinetree demonstrated care for Plaintiff's safety because the alleged fraud occurred while Pinetree was addressing other maintenance and safety issues. Because conclusory allegations are not to be considered on a motion to dismiss, Plaintiff has failed to state any claim for concealment, negligent repair, willful and wanton negligence, and punitive damages. Accordingly, these claims should be dismissed, with prejudice.

## II.    ALLEGATIONS IN PLAINTIFF'S AMENDED COMPLAINT[1]

Plaintiff's Amended Complaint arises from an apartment fire that occurred on February 20, 2024. *See* Am. Compl. ¶ 1. By way of summary,[2] Plaintiff's Amended Complaint alleges the following facts relevant to this Motion:

1.    The Pinetree Apartments were constructed in 1995. Am. Compl. ¶ 19.

2.    Plaintiff rented Pinetree's Apartment G8, effective June 1, 2022. Am. Compl. ¶ 15.

---

[1] For the purposes of this Motion only, the Court and Defendant take Plaintiff's factual allegations and reasonable inferences as true. *See, e.g.*, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

[2] While an Amended Complaint typically replaces the original Complaint, the Court may still consider the prior Complaint when determining whether the Amended Complaint's allegations are plausible. *See, e.g.*, *Smith v. Wilt*, No. 12-cv-05451-WHO, 2013 U.S. Dist. LEXIS 149787, *15 n.5 (N.D. Cal. Oct. 17, 2013) ("The alteration of the allegations about plaintiffs' own knowledge of the fraud, and omission of the contradictory allegations, make plaintiffs' current allegations regarding their delayed discovery of the alleged fraud simply not plausible.").

I-2894815.1

3.      Apartment G8's main bedroom contained a single external exit, which was a sliding glass door (the "Sliding Door") that opened onto a concrete pad. Am. Compl. ¶ 24.

4.      On May 31, 2022, the day before Plaintiff took possession, Pinetree completed the following work orders. *See* Am. Compl. ¶¶ 30-36.

      a.      Work Order 693150: "The windows need to be fixed. They are difficult to open/close." Am. Compl. ¶ 31.

      b.      Work Order 693151: "Chipping paint around window sills and sliding doors." Am. Compl. ¶ 32.

      c.      Work Order 693154: "Fix both sliding doors. We need to ensure the locking mechanism works (MANDATORY)." Am. Compl. ¶ 33.

5.      As part of making the repairs for Work Order 693151, Pinetree painted the finished wood trim of the Sliding Door. Am. Compl. ¶ 35.

6.      During the "walk through" tour when Plaintiff took possession, nothing was said to Plaintiff about the Sliding Door and associated repair work. Am. Compl. ¶ 48.

7.      In September 2022, Plaintiff and her mother saw "flying ants" by the windowsill in the front living room of Apartment G8, which Plaintiff's mother reported to a female office worker. The Pinetree office worker said she would "put the work order in," but no pest control remediation ever occurred for Apartment G8 during Plaintiff's tenancy. Am. Compl. ¶ 32 n.4.

8.      Shortly before July 7, 2023, Pinetree posted a notice on the front door of Apartment G8 stating it would perform an annual routine inspection. Am. Compl. ¶ 55.

9.      Plaintiff inspected her own apartment in response to this notice, including trying to open the Sliding Door, but it would not move. Am. Compl. ¶ 56.

10.     Plaintiff was not present for the annual inspection, if any. *See* Am. Compl. ¶ 57.

11.     Later in July 2023, Plaintiff orally reported the problem with the Sliding Door to a Pinetree maintenance man walking near her apartment, who replied "I got you," or words to that effect. *See* Am. Compl. ¶ 58.

5

12.    After July 2023, Plaintiff never tried the Sliding Door again. Am. Compl. ¶ 59.

13.    On "several occasions," Plaintiff saw wingless ants on the floor toward the right of the Sliding Door. Am. Compl. ¶ 32 n.4. Plaintiff did not report these ants. *See id.*

14.    Plaintiff never saw holes around the Sliding Door's wooden trim. Am. Compl. ¶ 32 n.4.

15.    During the fire on February 20, 2024, Plaintiff attempted to open the Sliding Door but was unable to do so. Am. Compl. ¶¶ 66-67.

16.    A photograph taken approximately two months after the fire shows deteriorated wood behind the sheetrock of the bedroom's back wall.  Am. Compl. ¶ 5.

17.    The Sliding Door was mostly destroyed in the fire. Am. Compl., Exhibit 14.

## III.    RULE 12 MOTION TO DISMISS STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint[.]" *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis*, 588 F.3d at 193 (quoting *Iqbal*, 558 U.S. at 678). Rather, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 556 U.S. at 557) (cleaned up).

While the Court must presume all "factual allegations in the complaint to be true and accord[] all reasonable inferences to the non-moving party," the Court is not bound to accept as true "conclusory allegations regarding the legal effect of the facts alleged." *Westmoreland v.*

*Brown*, 883 F. Supp. 67, 70 (E.D. Va. 1995) (quoting *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995)). Indeed, the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of [liability]." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). Thus, the plausibility standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

Additionally, the Court will consider not just the allegations in the Complaint, but any "documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (first citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); and then citing Fed. R. Civ. P. 10(c)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Lawhon v. Edwards*, 477 F. Supp. 3d 428, 436 (E.D. Va. 2020) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)).

## IV.    <u>LEGAL ARGUMENT</u>

### A.    The Court Should Dismiss Plaintiff's Common Law Fraud Claim.

The Amended Complaint alleges that Pinetree intentionally concealed the fact that the termites and related water infiltration inside the back wall of the main bedroom interfered with the operation of the sliding glass door, to get around the general rule that the tenant otherwise takes the premises in whatever condition it is in, "assuming all risk of personal injury from the defects therein." *Isbell v. Commercial Investment Associates, Inc.*, 273 Va. 605, 611-12 (2007) (quoting *Caudill v. Gibson Fuel Co.*, 185 Va. 233, 239-41 (1946)). Concealment is a fraud action subject

7

to the heightened pleading standards under Rule 9.[3] *See* Fed. R. Civ. P. 9(b). Plaintiff must show

that Pinetree "willfully and deliberately concealed the material fact while knowing that Plaintiff

was acting on the assumption that the fact did not exist." *Guy v. Tidewater Inv. Props.*, 41 Va. Cir.

218, 220-221 (Norfolk 1996); *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368 (2003)

(requiring the defendant make a "knowing and deliberate decision not to disclose a material fact"

(quoting *Lambert*, 262 Va. 701, 714) (2001)); *see also Bank of Montreal v. Signet Bank*, 193 F.3d

818, 827 (4th Cir. 1999); *N. Va. Eye Inst., P.C. v. Cynosure, LLC*, No. 5:21-cv-00008, 2021 U.S.

Dist. LEXIS 75804, at *13 (W.D. Va. Apr. 20, 2021) ("[C]oncealment always involves deliberate

nondisclosure designed to prevent another from learning the truth.").

> ### i.    *Plaintiff Cannot Take Advantage of Any Alleged Concealment About the Sliding Door's Condition Because She Discovered the Defect Regardless.*

Plaintiff has brought a fraud claim based on Pinetree's alleged concealment of the defect,

but Plaintiff admits that she discovered the defect despite Pinetree's alleged concealment efforts.

The Amended Complaint states that in July 2023, Plaintiff "tried to open the Sliding Glass Door

but could not get it to move." Am. Compl. ¶ 55. By discovering the defect, Plaintiff has removed

all claims for concealment. *See*, *e.g.*, *Caudill*, 185 Va. at 239-41 (requiring the defect must be

known to the landlord and "unknown to the tenant" to claim concealment or fraud).

The opposite of a concealed or latent defect is a patent defect, which is readily apparent or

can be discovered during an ordinary inspection (*e.g.*, inoperable doors or windows). *See Patent

Defect*, Black's Law Dictionary (12th ed.) (defining a "patent defect" as one that is "apparent

to a normally observant person" and can be found "on a reasonable inspection"). It is a well-

---

[3] The Fourth Circuit recently adopted a partially relaxed pleading standard under Rule 9(b) for fraud by concealment: "'[P]laintiffs may partly rely on information and belief without running afoul of Rule 9(b). However, they must state the factual allegations that make their belief plausible.'" *Corder v. Antero Res. Corp.*, 57 F.4th 384, 402 (4th Cir. 2023) (emphasis added).

established principle under Virginia law (*caveat lessee*, or let the lessee beware) that landlords have no duty to warn tenants of patent defects. *See, e.g., John Aragona Enterprises, Inc. v. Miller*, 213 Va. 298, 299-300 (1972) (holding a landlord is not liable for injury "resulting from an open and obvious condition existing at the inception of the tenancy, and of which the tenant knew or had means of knowing equal to the landlord"). As Plaintiff admits she discovered the alleged defect well in advance of the fire, she cannot take any advantage of the alleged concealment.[4] *See Hogg v. Long Fence Co.*, 52 Va. Cir. 250, 251 (2000) ("If there was concealment and inducement for Plaintiff to sign the contract based on the promised date of completion, that concealment vanished after the completion date had passed and construction of the deck had not begun . . . Plaintiff knew the contract as written could not be performed.").

Plaintiff attempts to sidestep this defense by stating that she "never knew why the sliding door would not open the one time she tried to open it before the fire." Am. Compl. ¶ 59. This is a red herring. The defect at the core of Plaintiff's Amended Complaint is not the termite and/or water damage itself – it is that the wood damage allegedly caused deflection so that "the sliding glass

---

[4] While it does not matter for purposes of dismissing the concealment claims, Plaintiff wrongly alleges that she was not permitted to make repairs to the Sliding Door. Am. Compl. ¶ 34. Plaintiff was provided with and signed the Virginia Statement of Tenant Rights and Responsibilities under the VRLTA, which explained her rights and responsibilities, and which she incorporated into her Amended Complaint by attachment. *See* Lease (ECF No. 24-6, at 49-51). The Lease – which is incorporated with and made part of the pleadings – requires Plaintiff to request repairs <u>in writing</u> and permits her to vacate the premises if "damaged . . . to such an extent that your enjoyment of the premises is substantially impaired[.]" *See* Lease ¶¶ 26, 27 (ECF No. 24-6, at 4). Further, the Virginia Residential and Landlord Tenant Act ("VRLTA") entitles a tenant to hire a contractor and recover repair costs if the landlord fails to correct a condition that "will constitute a fire hazard or serious threat to the life, health, or safety of occupants of the premises[.]" *See* Va. Code § 55.1-1244.1(B). Plaintiff was also entitled to sue the landlord in General District Court and get a hearing within five business days if Pinetree made the "premises unsafe for habitation." *Id.* § 55.1-1243.1. Plaintiff alleges that she only made a <u>single</u> oral request for the repair, not in keeping with the terms of the Lease or the VRLTA. She also thereafter failed to test the Sliding Door despite not seeing a maintenance person fix it, and she not seeing a repair notice. This demonstrates a complete indifference to the Sliding Door's functionality despite notice of an alleged defect.

door could not move along its track."[5] Am. Compl. ¶ 5; *see also* Am. Compl. ¶ 80 (defining the

alleged material fact as "namely, that there were termites and related water infiltration and

deteriorated wood inside the back wall of the Primary Bedroom, <u>which, in turn, interfered with the</u>

<u>operation of the Sliding Glass Door</u>" (emphasis added)). It was unnecessary that Plaintiff discover

the termite and water damage to discover that the Sliding Door was inoperable. It was also

unnecessary for Plaintiff to understand the exact causal chain to understand that an inoperable

Sliding Door might pose a health and safety risk to herself and her family. As has been observed

in a comparative area of law, "there are some dangers that are so obvious that they will be held to

have been assumed as a matter of law despite assertions of ignorance to the contrary." *Howell v.*

*Clyde*, 533 Pa. 151, 158 n.9 (Pa. 1993). Fire is a common, well-known hazard; the necessity for

fire exits equally well-known. Plaintiff discovered the Sliding Door defect before the fire and,

---

[5] To the extent that Plaintiff attempts to claim two separate defects – the termite/water damage and the inoperable Sliding Door – Plaintiff is trying to have it both ways. Plaintiff pleads that the termite/water damage occurred in the exterior wall, an area under Pinetree's control. *See* Am. Compl. ¶ 94. If Plaintiff is correct and this area was within Pinetree's possession, then Pinetree had a duty to maintain the area but no affirmative duty to disclose the defect, eliminating the potential for a concealment claim. *See Cadd v. Bowman Assocs.*, LLC, 105 Va. Cir. 144, 148 (Roanoke 2020) ("[L]andlords do have a duty to use ordinary care to maintain any common areas in a reasonably safe condition."). The area remains forever within Pinetree's control and responsibility, and a concealment claim would only arise if Pinetree shifted the duty to repair to the Plaintiff without also sharing concurrent knowledge of the defect. *See Stewart v. Holland Family Props., LLC*, 284 Va. at 288 (2012); *see also Herndon v. Ambassador Inv. Prop.*, *LLC*, No. 0101-24-3, 2024 Va. App. LEXIS 707 (Va. Ct. App. 2024) (finding there is no duty to repair after "transfer of control of the leased premises to the tenant"). Of course, Plaintiff does not allege the termite/water damage caused her damages, but the "combination of water and termites deteriorated the supporting wooden framing that held the Sliding Glass Door in place, causing it to become out of square and impeding **[the Sliding Door's]** *ability to slide*." Am. Comp. at ¶ 28 (emphasis added).

If the defect is the Sliding Door's inability to slide, as alleged in the Amended Complaint, then the Sliding Door is within Plaintiff's exclusive possession. *See* Va. Code § 55.1-1220 (defining common area "shared by two or more dwelling units"). Thus, liability would only arise if the defect were concealed – and Pinetree did not (and could not) conceal an inoperable Sliding Door.

through the exercise of common knowledge, perceived its potential danger. In the end, Plaintiff's notice of the claimed defect with the Sliding Door negates any claim based on concealment by law.

> **ii.      *The Court Should Not Allow Plaintiff the Unreasonable and Unwarranted Inference that Pinetree Painted Over Termite Damage.***

Plaintiff makes numerous unwarranted and unreasonable inferences in her Amended Complaint that should be rejected. The court is not required, even on a Rule 12(b)(6) motion, to "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Dash BPO, LLC v. Lindberg*, No. 22-1146, 2024 U.S. App. LEXIS 13915, at *6 (4th Cir. June 7, 2024) (citing *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). A plaintiff's factual allegations must "nudge her claims . . . beyond the realm of 'mere possibility' into 'plausibility.'" *S.Y. v. Sampson Cnty. Bd. of Educ.*, No. 7:24-CV-471-D, 2024 U.S. Dist. LEXIS 198452, *11 (E.D.N.C. Oct. 31, 2024) (quoting *Twombly*, 550 U.S. at 570; and then *Iqbal*, 556 U.S. at 678-79) (cleaned up). If a complaint "permit[s] a court to infer no more than a possibility of misconduct," it must be dismissed. *Atkins v. FedEx Freight, Inc.*, No. 3:14cv505, 2015 U.S. Dist. LEXIS 69250, *25 (E.D. Va. May 28, 2015). Even a plaintiff relying on information and belief for a concealment claim must "state the factual allegations that make their belief plausible." *Corder v. Antero Res. Corp.*, 57 F.4th 384, 402 (4th Cir. 2023). "Determining whether a complaint states a plausible claim will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible." *McClinton v. Berry*, No. 5:22-CV-109, 2024 U.S. Dist. LEXIS 173912, *6 (M.D. Ga. Sept. 25, 2024) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678))).

I-2894815.1

The Court should not give credence to Plaintiff's speculative assertion that Pinetree painted over visible termite damage in May 2022. See Am. Compl. ¶ 35. Plaintiff never saw termite holes in the wooden trim above the Sliding Door in her apartment. Am. Compl. ¶ 32 n.4. Plaintiff's only allegation of water and termite damage is a photograph taken months after the fire, including after the fire department extinguished the fire and exposed the area to copious additional water damage. *See* Am. Compl. ¶ 5. The Amended Complaint attempts to bolster this supposition by referencing a few isolated instances when Plaintiff saw various ants – flying and wingless – around her apartment. Plaintiff does not allege they were termites. Even if these were termites, she never saw them above the Sliding Door. *See* Am. Compl. ¶ 32 n.4. And Plaintiff never saw any holes in the finished wood trim around the Sliding Door. *Id.*

There is no telling when the wood framing behind the drywall and sheetrock was damaged by an active termite infestation. Plaintiff only alleges deteriorated wood damaged found behind the sheetrock of the back bedroom's wall was caused by water and termites in April 2024. *See* Am. Compl. ¶ 5. Plaintiff then infers the exterior wall of the apartment had signs of termites in May 2022. However, damaged wood framing in April 2024 does not mean visible termite damage on the exterior walls, causing chipping paint, in May 2022. It is just as likely the wood was damaged by long inactive terminate infestation, maybe even dating back to the late-1990s, that had resolved but the damaged wood framing was not replaced. If the exterior wood was painted, say in 1997, and thereafter no signs of termites existed, there was no concealment 25 years later in May 2022, as alleged in the Amended Complaint. This is yet another unwarranted inference based on guesswork. Plaintiff cannot make inferences that support the concealment claim while ignoring or excusing disconfirmatory inferences with equal probability.

I-2894815.1

Most critically, Work Order 693151, which is the genesis of Plaintiff's entire liability theory, only says that Pinetree repaired "[c]hipping paint around window sills and sliding doors." Am. Compl. ¶ 32. It is a speculative, unreasonable factual inference to claim that the <u>chipping paint</u> was caused by <u>termite damage</u>. At most, it is a mere possibility incapable of satisfying the pleading standard. Plaintiff acknowledges Pinetree was built in 1995 – approximately 27 years before Plaintiff moved into Apartment G8. *See* Am. Compl. ¶ 19. It is equally (if not substantially more) likely that chipping paint occurred because the apartment was in an older condition, not an unsafe one. *Cf. L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2nd Cir. 2011) (noting that plausibility depends on a "host of considerations," including "the existence of alternative explanations so obvious that they render the plaintiff's inferences unreasonable" (citing *Iqbal*, 556 U.S. at 674-682)). Chipping paint was also found multiple other places in the apartment, not just around the Sliding Door. Am. Compl. ¶ 32 (referencing window sills and the other sliding door). Plaintiff's assertion that Pinetree painted over visible termite damage is "simply speculative, an unwarranted deduction of fact." [6] *Baldino's Lock & Key Serv. v. Google, Inc.*, 88 F. Supp. 3d 543, 550 (E.D. Va. 2015); *see also Convisser v. Exxon Mobil Corp.*, No. 3:24-cv-00072, 2025 U.S. Dist. LEXIS 45955 (W.D. Va. Mar. 13, 2025) (finding that the plaintiffs' conspiracy claims were "built on far-fetched and speculative allegations").

The assertion that chipping paint was caused by termite damage cannot, based on the facts alleged in the Amended Complaint, amount to anything more than a mere possibility – one of

---

[6] Apt comparison can be made to *Patton v. Carnival Corp.*, where the Eleventh Circuit rejected the plaintiff's "reasonable inference" that a dangerous condition in a threshold had "developed over a considerable time," finding there was "not enough in the complaint or the attachments for us to conclude that this inference is reasonable and not an unwarranted deduction." *Patton v. Carnival Corp.*, No. 22-13806, 2024 U.S. App. LEXIS 10441, *6-7 (11th Cir. 2024) (noting that she "never explains (and it's not self-evident) what in the photos or complaint shows that it's a reasonable inference that the gap beneath the metal threshold emerged gradually").

I-2894815.1

many. *See Atkins*, 2015 U.S. Dist. LEXIS 69250, *25 (requiring dismissal if the complaint "permit[s] a court to infer no more than a possibility of misconduct"). There are obvious, alternative explanations for chipping paint on exterior wooden surfaces unrelated to termite damage. For example, other unrelated causes may include, but are not limited to, the following:

- temperature blisters (light exposure, high temperatures, high humidity);
- moister blisters (rain and dew, ice and snow, high moisture content from other sources);
- poor workmanship (low-quality paint and materials, improper preparation of the surface, incorrect application techniques);
- intercoat peeling (separation of the newer paint film from old paint coat due to weak bonding);
- cross-grain cracking (coatings from repeat painting become too thick and cracks); and
- the normal lifespan of paint (depending on condition of the wood, quality of paint, environmental conditions, surface preparation, and application techniques).

All but one of these possibilities do not even relate to moisture damage and can occur without any underlying structural defect in the wood. None of the factual assertions in Plaintiff's Amended Complaint make any of these possibilities (or others) less likely than Plaintiff's termite damage speculation. The work order itself does not even touch upon the cause. *See* Am. Compl. ¶ 32. The existence of numerous alternate possibilities, all equal, ends Plaintiff's claim. The Court should apply its "judicial experience and common sense," as dictated by *Iqbal*, and find that the facts in the Amended Complaint are facially insufficient to show plausibility. *See Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

Lastly, Plaintiff has not pled any facts supporting a reasonable inference that Pinetree acted with specific intent to defraud her. "[U]nlike fraud for affirmative misrepresentations, concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable." *Western Capital Partners, LLC v. Allegiance Title & Escrow, Inc.*, 520 F. Supp. 2d 777, 782 (E.D. Va. 2007) (quoting *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999)). As

14

described above, there are numerous possibilities for chipping paint. Plaintiff cannot succeed by showing that Pinetree recklessly failed to identify which of the various possibilities caused the chipping paint, or by showing that Pinetree recklessly ignored chipping paint as a sign of potential termite damage, or by showing that Pinetree recklessly painted over termite damage without sufficient investigation. She must show knowledge and intent.

Even if the Court permits Plaintiff the extremely dubious inference that termite damage found in April 2024 shows termites had caused the chipping paint in May 2022, it is yet another unreasonable extrapolation that Pinetree concealed rather than failed to observe or misdiagnosed the issue. It is implausible that, after entering the apartment for the express purpose of resolving multiple maintenance issues, that Pinetree would intentionally conceal termite damage. *Cf. Dash BPO, LLC v. Lindberg*, No. 22-1146, 2024 U.S. App. LEXIS 13915, at *6 (4th Cir. June 7, 2024) (requiring the plaintiff to plead "the identity of the person making the misrepresentation and what he obtained thereby" (quoting *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019)). Intent is generally inferred from the conduct and representations of the defendant. *See, e.g.*, *Smith v. Commonwealth*, 72 Va. App. 523, 536 (Va. App. Ct. 2020). Realistically, the defendant's conduct should somehow differ from legitimate, non-fraudulent behavior, and a plaintiff should be able to point to hallmarks supporting the inference – like the "badges of fraud" that courts use to distinguish fraudulent conveyances from legitimate transfers. *See White v. Llewellyn*, 299 Va. 658, 664 (2021). There are no comparative badges or hallmarks here; the alleged fraud occurred when a maintenance worker addressed the maintenance issues identified in the language of the work orders. *See* Am. Compl. ¶¶ 31-33. Thus, Plaintiff's fraudulent concealment claim, even if a possibility, does not meet the facially plausible standard, and must be dismissed.

### iii.   The Court Should Not Allow Plaintiff the Unreasonable and Unwarranted Inference that the Sliding Door Was Inoperable When Plaintiff Took Possession of the Apartment.

Equally egregious to the allegation that Pinetree painted over visible termite damage is the requested factual inference that the Sliding Door was inoperable when Plaintiff took possession of the apartment. None of Plaintiff's contemporaneous facts support this inference. As the Plaintiff observes, the Pinetree maintenance worker would have tested the Sliding Door when performing the May 2022 repairs, but the only repairs were those listed in the work orders. *See* Am. Compl. ¶¶ 31-34. Upon moving in, Plaintiff also signed an "Inventory and Condition Form," through which she explicitly agreed to "inspect and test all safety-related items," but which form does not list issues with the Sliding Door. *See* Lease (ECF No. 24-5, at 10-12). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Lawhon v. Edwards*, 477 F. Supp. 3d 428, 436 (E.D. Va. 2020) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). Plaintiff also admits to discovering problems with opening the Sliding Door in July 2023 – 13 months after taking possession of the apartment. *See* Am. Compl. ¶¶ 55-57. If there was ongoing termite damage, as Plaintiff infers without factual support, then the damage feasibly could have begun and progressed during that timeframe. *See, e.g.*, Am. Compl. ¶¶ 50, 94. It is an unreasonable factual deduction that the Sliding Door was not operating in May 2022. The mere possibility that the Sliding Door was inoperable when Plaintiff took possession of the apartment is not enough to state a claim for fraudulent concealment.

### iv.   The Amended Complaint Does Not Fix Issues Relating to the Materiality of the Sliding Glass Door.

The Amended Complaint also does not plead facts showing that a working sliding glass door was material to Plaintiff's contract with Pinetree. A fact is material "when it influences a person to enter into a contract, when it deceives him and induces him to act, or when, without it,

16

the transaction would not have occurred." *Guy*, 41 Va. Cir. at 222 (citing *Packard Norfolk, Inc. v. Miller*, 198 Va. 557 (1956)); *Beiler v. Commonwealth*, 243 Va. 291, 295 (1992). In *Guy v. Tidewater Inv. Props.*, the court sustained the landlord's demurrer to the plaintiff's fraudulent concealment claim, noting that the pleadings did not contain "any allegations that the presence or non-presence of lead paint had an influence on the plaintiff's entering into the contract nor that the disclosure of the presence of the lead paint would have prevented the execution of this lease." 41 Va. Cir. at 222. Plaintiff had a daily opportunity to test the Sliding Door, if not to access the backyard, to at least check for safety in case the door was needed as an exit. She never followed the procedures, appearing in both her Lease and the VRLTA, to request in writing that the Sliding Door be repaired or have third-party repairs reimbursed. The functionality of the Sliding Door did not induce Plaintiff to enter into the contract; it was an irrelevant feature to Plaintiff until the fire. This cannot be the basis for a fraud claim against Pinetree. The Court must, as the law requires, focus on the materiality of the Sliding Door at the time of contract formation.

> **v.    Plaintiff Cannot Reasonably Rely on Pinetree Regarding Any Alleged Representations About the Functionality of the Sliding Door.**

Fraud by concealment requires reasonable reliance. *See In re Volkswagen "Clean Diesel" Litig.*, 94 Va. Cir. 189, 198-199 (Fairfax 2016) (emphasizing that "[t]he misled party claiming fraud must, however, still demonstrate the reasonable reliance on the misrepresentation" (citing *Metrocall of Delaware v. Continental Cellular Corp.*, 246 Va. 365, 374 (1993)). Plaintiff asserts she relied on Pinetree to provide "a safe apartment." Am. Compl. ¶ 82. This is a general reliance as to the safety of the <u>entire apartment</u>.[7] General reliance like this cannot form the underpinnings

---

[7] Pinetree also never made a verbal or written representation that the apartment was safe above and beyond simply allowing her to rent the apartment. If the Court were to permit Plaintiff such general reliance, this would run counter to the common law, which holds that tenants "assum[e] all risk of personal injury from the defects" in leased properties. *Isbell v. Commercial Investment*

I-2894815.1

for common law fraud – it would tack on a fraud claim to any negligent repair made by any landlord. *Cf. Snider v. Hostess Brands, LLC*, No. 7:20-cv-00516, 2021 U.S. Dist. LEXIS 12833, *9 (W.D. Va. Jan. 15, 2021) (observing in the product liability context that there is an "intuitive appeal to the idea that we all rely on companies" for the safety of products, but "such a vague, generalized notion of reliance would tack on a fraud claim to every products liability claim"). Fraud must be something more than failure of duty – the very definition of negligence. *See Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 157 (1974) (discussing duty to keep common areas safe); *McGuinness v. Miele*, 108 Va. Cir. 138, 140 (Va. Beach 2021) (discussing duty not to make negligent repairs).

Even if Plaintiff can overcome this obstacle, her reliance on Pinetree must have been reasonable. It is not reasonable to rely on representations – particularly silent ones – regarding something Plaintiff was able to easily discover by inspection. In *Kuczmanski v. Gill*, the Supreme Court of Virginia found that the seller was not responsible for affirmative misrepresentations about the presence of storm windows because "the missing windows were an open and obvious defect which could have been discovered by the [plaintiffs] by even a cursory inspection of the premises." *Kuczmanski v. Gill*, 225 Va. 367, 370 (1982) (applying the doctrine of caveat emptor and finding the plaintiffs "were not entitled to rely on this statement instead of ascertaining the true facts for themselves"). As bears repeating, nothing Pinetree could have done would have concealed an inoperable Sliding Door in the main bedroom of the apartment where Plaintiff slept for 20 months before the fire. Pinetree also disclaimed such general reliance because the Inventory and Condition Form encouraged Plaintiff to inspect her apartment and report any safety issues. *See* Lease (ECF

---

*Associates, Inc.*, 273 Va. 605, 611-12 (2007). The Court should resist Plaintiff's attempts to essentially eliminate the reliance requirement for landlord-tenant contracts and relationships.

No. 24-5, at 10-12). Her reliance on Pinetree in May 2022 for an operable Sliding Door, without testing it herself, is simply not reasonable. Even more, her continued reliance on Pinetree regarding the operation of the Sliding Door, after affirmatively discovering that it was inoperable in July 2023, is patently unreasonable.[8]

    This common law fraud claim is fatally flawed as to nearly every element of the cause of action. Plaintiff's concealment claim is not remotely plausible because it is based on a series of unreasonable inferences, assumptions, and flawed logic. The Court should not allow Plaintiff the following unreasonable inferences under the heightened pleading requirement for fraud because there are obvious, alternative explanations, all as likely, refuting each of the following:

- the Sliding Door was inoperable in May 2022;
- there were termites and related water infiltration inside the back wall of the main bedroom in May 2022;
- the termites and related water infiltration inside the back wall caused deterioration of the wooden framing around the Sliding Door to deflect, putting the frame out of square, but was not observable to Plaintiff inside the main bedroom in May 2022;
- the termites and water infiltration damage to the wood framing inside the wall prevented the Sliding Door from opening in May 2022;
- termite holes caused the chipping paint referenced in the work order in May 2022;
- visible termite holes were on the wall with chipped paint near the Sliding Door in May 2022;
- Pinetree's employee knew the Sliding Door was inoperable when completing the work order for chipping paint in several places for the apartment, including the main bedroom wall near the Sliding Door, in May 2022;
- Pinetree's employee knew there was deteriorating wood framing inside the wall based on the visible termite holes when completing the work order in May 2022;

---

[8] Plaintiff asks to be excused because she was afraid of snakes. *See* Am. Compl. ¶ 59. Even assuming this is true, her fear of snakes did not prevent her from testing the door in July 2023 ahead of the annual inspection to ensure it worked. *See* Am. Compl. ¶ 56. Further, had Plaintiff opened the Sliding Door, Plaintiff was not required to leave the door open to allow snakes to enter; she could simply have closed it again. The Court should find Plaintiff had a responsibility by law to take that common-sense action before relying on Pinetree.

- Pinetree's employee knew the deteriorating wood framing caused the Sliding Door to be inoperable when completing the work order in May 2022;

- Pinetree's employee's intent when completing the work order for chipping paint in May 2022 was to conceal termite damage from Plaintiff;

- Pinetree's employee's intent when completing the work order for chipping paint in May 2022 was to conceal termite damage in order to conceal the inoperative Sliding Door from Plaintiff;

- Pinetree's employee knew in May 2022 that by painting over the termite holes that Plaintiff would not discover the inoperative Sliding Door in the main bedroom;

- Pinetree's employee knew in May 2022 that Plaintiff was afraid of snakes and would not use the Sliding Door;

- Pinetree's employee knew in May 2022 that Plaintiff would not have others use the Sliding Door;

Even if the Court believes each inference is reasonable and plausible, Plaintiff's reliance on Pinetree about the operation of the Sliding Door was never reasonable, and her actions before the fire do not support that she considered the Sliding Door a material aspect of her lease. However, even if the Court also finds Plaintiff's reliance reasonable, Plaintiff's fraud claim must still fail because she discovered the alleged concealment seven months before the fire and made only an oral request to have it repaired, without exercising her rights under the Lease or requesting the repairs in writing. For all these reasons, the allegations in the Amended Complaint cannot imply and do not sufficiently state a claim for fraud, and thus the Court should dismiss this claim.

**B.    The Court Should Dismiss Plaintiff's Concealment of a Latent Defect Claim.**

The Court should dismiss Plaintiff's claim for concealment of a latent defect for all the reasons listed above,[9] but also because the defect was not latent. A latent defect is one "not manifest, but hidden or concealed, and not visible or apparent; a defect hidden from knowledge as

---

[9] A landlord is not liable for constructive knowledge of a latent defect but can only be charged with fraudulent concealment of such latent defects. *See Appalachian Power Co. v. Saunders*, 232 Va. 189 (1986); *Oliver v. Cashin*, 192 Va. 540, 543 (1951); *Jones v. Kidd*, 63 Va. Cir. 432, 434 (Norfolk 2003). Thus, the elements of this cause of action are similar to common law fraud.

well as from sight; specifically, a defect which reasonable and careful inspection will not reveal[.]"

*Proto v. Futura Group*, 83 Va. Cir. 21, 25 (Va. Beach 2011) (quoting *Glens Falls Ins. Co. v. Long*,

195 Va. 117 (1953)); *see also Hidden Defect*, Black's Law Dictionary (12th ed.) (defining as "not

discoverable by reasonable inspection"). One court has provided a detailed analysis of the

dictionary term "latent," finally focusing on the following two central ideas:

> First, if something is latent one cannot see it. One might be able to discover it, but
> it is not—to use a phrase that fairly leaps from the dictionary definition—"readily
> observable." Second, the difficulty of discovering whether a defect is "latent" must
> be substantial. A latent quality cannot be detected with merely a cursory inspection.
> Something which is latent is not apparent <u>"to any but a most searching
> examination."</u>

*Scott v. Cont'l Ins. Co.*, 44 Cal. App. 4th 24, 31 (1996) (emphasis added). The policy on latent

defects is clear – a landlord should not be charged with a defect that the plaintiff had an even

greater opportunity to discover. *Cf. Caudill v. Gibson Fuel Co.*, 185 Va. 233 (1946) ("The plaintiff

had as great, if not greater opportunity to ascertain these defects as the defendant. She lived with

them for two years. She had full opportunity to know all that anybody could know.").

The defect of Plaintiff's Amended Complaint is not the termite damage itself – it is the

Sliding Door's ability to slide along its track. *See* Am. Compl. ¶ 87 (defining the latent defect as

"namely, termites that were causing the supporting wooden framing behind the sheetrock to

deteriorate and deflect, <u>thereby interfering with the operation of the Sliding Glass Door</u>" (emphasis

added)). Plaintiff's own behavior in finding and reporting the Sliding Door in July 2023 establishes

definitively that the Sliding Door was not a latent defect. *See* Am. Compl. ¶¶ 55-58. Latent defects

require more than minimal effort to uncover. *See, e.g.*, *Roberts v. McCoy*, No. CA2016-04-071,

2017-Ohio-1329, at *P13 (Ohio Ct. App. 2017) ("Roberts could have easily discovered the

condition in the ceiling by simply pushing up a single ceiling tile . . . Roberts demonstrated a

present ability to conduct such inquiry when she lifted the ceiling tile to discover the condition

after moving into the residence."). Regardless of whether Plaintiff could see the termite damage, the Sliding Door was never hidden from Plaintiff. In fact, she slept in the bedroom where the Sliding Door was located during the 21 months of her tenancy. *See* Am. Compl. ¶ 61.

Because only discovery of the <u>existence</u> and not the <u>cause</u> of the defect is required, the Court should find that any independent latency in the alleged termite and water damage is irrelevant. *See Showalter v. Leung*, 17 Va. Cir. 256, 257 (Fairfax 1989) ("[A] landlord has the duty to warn the lessee of latent defects and dangerous conditions <u>existing</u> on the premises." (emphasis added)). Termite and water damage did not separately create this fire risk. The nature of the harm commonly associated with termite damage is building collapse. *Cf. Garber v. Haddon Hills Assocs., LLC*, No. A-1659-11T2, 2012 N.J. Super. Unpub. LEXIS 2612, *13 (N.J. Ct. App. 2012) ("Termite-damaged floors can collapse and negatively affect the structural integrity of the entire building[.]"). Termite damage only created the fire risk <u>because of</u> the alleged pressure of the deteriorating wood on the Sliding Door's frame. *See* Am. Compl. ¶ 80. The two are inseparable in Plaintiff's Amended Complaint. This distinction is critical here, when there were no affirmative representations about any condition of the property, and Plaintiff is relying only on inferences.

Even if the latency of the cause is relevant, the impediment to the Sliding Door should have notified Plaintiff that further investigation was necessary. In *Steward v. Holland Family Properties, LLC*, the Court held that lead paint was open and obvious in part because the paint itself was chipping. *See* 284 Va. 282 (2012). In *Uribe v. Briar-Ridge, LLC*, the Texas Court of Appeals charged a commercial leasee with knowledge of plumbing defects in part because "while nonfunctioning toilets may not have revealed the full extent of any defects in the sewer line, testing them during the walk-through would have put Uribe on notice that further investigation of the plumbing was necessary before signing the lease." *Uribe v. Briar-Ridge*, LLC, No. 13-20-00167-

22

CV, 2021 Tex. App. LEXIS 10165, *21 (Tex. Ct. App. Dec. 29, 2021). Plaintiff cannot avoid her obligation to be aware of open and obvious defects by relying only on the alleged termite and water damage because the operation of the Sliding Door was not – could not have been – concealed from Plaintiff.

**C.    The Court Should Dismiss Any Negligent Repair Claim.**

Just as the first Complaint did not make a claim for negligent repair, the Amended Complaint also does not include allegations sufficient to make out a claim for negligent repair. While Plaintiff has not pled negligent repair as a separate count, Pinetree asks this Court to dismiss this claim in order to clarify and narrow the scope of dispute. Under Virginia law, "[a] landlord who makes repairs to leased property has a common law duty not to make those repairs in a negligent manner and is liable for injuries <u>sustained as a result</u> of negligent repair." *Federico v. Lincoln Military Hous., LLC*, No. 2:12-cv-80, 2013 U.S. Dist. LEXIS 138613 (E.D.V.A. 2013) (emphasis added) (quoting *Steward*, 726 S.E.2d at 257). For a plaintiff to bring a negligent repair claim, the remedial measures giving rise to liability must have created the issue. *See Holland v. Shively*, 243 Va. 308 (1992) ("In order for the tenant to recover for the injuries <u>caused by a defective condition resulting from the repairs</u>, he must show the repairs were made in a negligent manner." (emphasis added) (quoting *Oden v. Housing Authority*, 203 Va. 638, 640 (1962)).

In this case, Pinetree repaired the Sliding Door lock and chipping paint. *See* Am. Compl. ¶¶ 31-33. Pinetree was not called to address termite and water damage or difficulty with the sliding mechanism. Further, Plaintiff alleges that the defect resulted from termite damage and water rot, not actions taken by Pinetree. *See* Compl. ¶ 39-40. Specifically, Pinetree did not create the danger in May 2022 – the danger was allegedly pre-existing at the time of the repairs. *See* Compl. ¶¶ 28-29. Further, concealing a defect only prevents the discovery of the defect, but it does not inherently change the nature of the defect, nor does it increase the danger such defect poses. As Plaintiff

23

alleges, the Sliding Door was difficult to slide before the repairs, and it was difficult to slide after the repairs; nothing that Pinetree allegedly did in May 2022 increased the difficulty of moving the Sliding Door. *See* Compl. ¶ 34. This Court should thus dismiss any claims for liability based on a theory of negligent repair.

**D.    The Court Should Dismiss Plaintiff's Punitive Damages Claim.**

The claim for punitive damages based on Pinetree's alleged willful and wanton conduct should be dismissed because the Amended Complaint does not plead facts sufficient to show Plaintiff's entitlement to same. Plaintiff does not separately articulate a count for punitive damages, but claims that "Pinetree's conduct . . . constitutes willful and wanton conduct [and] . . . demonstrates a conscious disregard for the rights or others (including Ms. Ghee)[.]" Am. Compl. ¶ 88; *see also* 1 Va. J.I. – Civil No. 9.080 (reciting standard for punitive damages as including "actual malice . . . [or] willful and wanton disregard of the plaintiff's rights"). The Supreme Court of Virginia has consistently barred claims seeking to transform simple negligence actions by attaching "willful and wanton" labels to their allegations, and it has enforced a high bar for permitting enhanced negligence claims to proceed.[10] Because the actions alleged in the Amended Complaint do not amount to willful and wanton conduct, and because punitive damages are disfavored in Virginia law, Plaintiff's punitive damages claim and associated claims for willful and wanton conduct should be dismissed.

---

[10] The Supreme Court of Virginia struck a claim for willful and wanton negligence when a plaintiff alleged the defendant driver was drunk, speeding, took no evasive action to avoid impact, and attempted to leave the scene of the accident. *Puent v. Dickens*, 245 Va. 217, 218-19 (1993). In contrast, cases where willful and wanton allegations are permitted involve actual notice to the defendant of the dangerous nature of their actions. For example, a defendant's conduct was willful and wanton when a drunk driver had been involved in a prior collision, continued to drive, and caused a second accident while speeding and driving in the wrong lane. *Huffman v. Love*, 245 Va. 311, 313 (1993).

Pinetree's alleged conduct does not rise to the level of willful and wanton negligence, which "differs in kind" from gross negligence.[11] *Infant C. v. Boy Scouts of America, Inc*. 239 Va. 572, 582 (Va. 1990). Willful and wanton negligence "is defined as acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (Va. 2004) (quoting *Etherton v. Doe*, 268 Va. 209, 213-14 (Va. 2004)) (cleaned up). Although ill will is not necessarily an element, the plaintiff must still show that the defendant "intends his act[.]" *Curtis v. Highfill*, 298 Va. 499, 506 (2020) (quoting *Infant C.*, 239 Va. at 582). Ordinarily, the award of punitive damages is reserved for only the "most egregious conduct." Virginia courts disfavor awarding punitive damages because such damages are meant to act as a penalty; rather, punitive damages are only awarded under Virginia common law involving "egregious conduct." *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 637 (2019) (quoting *Bowers v. Westvaco Corp.*, 244 Va. 139, 150 (1992)); *see also id.* at 668 ("[A]n award of punitive damages is not favored generally[.]"); *see also Phillip Morris Incorporated v. Emerson*, 235 Va. 380, 407 (1988).

While the Amended Complaint attaches the terms "willful and wanton conduct," in rote fashion, to the factual allegations, this Court should disregard the terms assigned by the Plaintiff and consider instead the substance of the Amended Complaint. Plaintiff's requested inferences that Pinetree intentionally concealed visible termite damage and failed to repair the Sliding Door are not reasonable. *See supra*. Even if permitted, these actions still do not support punitive damages. The Fourth Circuit has held that Virginia law precludes punitive damages "when a

---

[11] Plaintiff has not pled gross negligence. Gross negligence requires "indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (Va. 2004).

defendant has shown some care for the safety of others." *Dudley v. Bungee Int'l Mfg. Corp.*, No. 95-1204, 1996 U.S. App. LEXIS 1267 at *9 (4th Cir. 1996) (citing *Philip Morris, Inc.*, 235 Va. at 409). The repairs were made when Pinetree attempted to rectify other perceived safety hazards, including chipping paint and a locking door. *See* Am. Compl. ¶¶ 31-33. None of the work orders state the Sliding Door could not slide. *Id.* Further, there are no allegations that Pinetree separately enhanced the danger posed to the Plaintiff, such as by causing the fire, and Pinetree's repairs did not cause the underlying defect. Thus, even if Pinetree did conceal the alleged termite damage, which is disputed, the facts do not support that the concealment was done with reckless disregard for Plaintiff's safety warranting punitive damages.

When considered without Plaintiff's inflammatory language and unreasonable inferences, the Amended Complaint's allegations only amount to a claim that Pinetree "failed to adequately address the problem." Am. Compl. ¶ 44. Claims that landlords were negligent in maintaining equipment or did not hire competent staff are not sufficient for punitive damages. *See Emerald Point, LLC v. Hawkins*, 294 Va. 544, 551 (Va. 2017) (discussing lower court's determination that tenants had "failed to establish the requisite level of negligence for punitive damages" when claims were "based on an assertion that the landlord had been willful and wanton in failing to maintain the furnace and in failing to employ competent staff") (remanding on other grounds); *Cadd v. Bowman Assocs., LLC*, 105 Va. Cir. 144, 145-146 (Roanoke 2020) (sustaining landlord's demurrer to punitive damages when the plaintiff claimed the landlord breached its duty to upkeep the common areas, including the septic system). Punitive damages require "conscious disregard" of the risk. *Cowan*, 268 Va. at 487. Nothing in the Amended Complaint plausibly pleads that Pinetree consciously disregarded a fire risk to Plaintiff when it repaired chipping paint above the Sliding

Door. This Court should follow the Supreme Court of Virginia and refuse to allow Plaintiff's punitive damages claim to continue.

## V.   CONCLUSION

For the foregoing reasons, and any reasons stated at any hearing on this matter, the defendant, Pinetree Apartments, LLC, by counsel, respectfully requests this Court partially dismiss Plaintiff's Amended Complaint related to any claim for concealment, negligent repair, willful and wanton negligence, and punitive damages with prejudice, and order such other and further relief as the Court may deem appropriate.

This 28th Day of March, 2025.

Respectfully submitted,

**PINETREE APARTMENTS, LLC**


By:   */s/ Joseph P. Moriarty*
    Joseph P. Moriarty (VSB No. 68465)
    Kevin M. Kennedy (VSB No. 75071)
    Bryn L. Clegg (VSB No. 96923)
    WILLCOX & SAVAGE, P.C.
    440 Monticello Avenue, Suite 2200
    Norfolk, Virginia 23510-2243
    Telephone: (757) 628-5500
    Facsimile: (757) 628-5566
    jmoriarty@wilsav.com
    kkennedy@wilsav.com
    bclegg@wilsav.com
    *Counsel for Defendant*
    *Pinetree Apartments, LLC*

I-2894815.1

**CERTIFICATION**

I hereby certify that on this 28th day of March, 2025, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

> Charles H Cuthbert, Jr. (VSB No. 14519)
> Richard M. Cuthbert (VSB No. 82025)
> Cuthbert Law Offices, P.C.
> 220 North Sycamore Street
> Petersburg, VA 23803-3228
> Telephone: 804-733-3100
> Facsimile: 804-732-4658
> ccuthbert@cuthbertlaw.com
> rcuthbert@cuthbertlaw.com
>
> Mark J. Krudys (VSB No. 30718)
> Daniel Guinnane Zemel (VSB No. 95073)
> The Krudys Law Firm, PLC
> Truist Place
> 919 East Main Street, Suite 2020
> Richmond, VA 23219
> Telephone: 804-774-7950
> Facsimile: 804-381-4458
> mkrudys@krudys.com
> dzemel@krudys.com
>
> *Counsel for Plaintiff*

> /s/ Joseph P. Moriarty
> Joseph P. Moriarty (VSB No. 68465)
> Kevin M. Kennedy (VSB No. 75701)
> Bryn L. Clegg (VSB No. 96923)
> WILLCOX SAVAGE, P.C.
> 440 Monticello Avenue, Suite 2200
> Norfolk, Virginia 23510-2243
> Telephone: (757) 628-5500
> Facsimile: (757) 628-5566
> jmoriarty@wilsav.com
> kkennedy@wilsav.com
> bclegg@wilsav.com
> *Counsel for Defendant*
> *Pinetree Apartments, LLC*

28

I-2894815.1