UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NYEISHA S. GHEE,

    Plaintiff,

v.

                                      Civil Action No.: 3:25-cv-17-RCY

PINETREE APARTMENTS, LLC,

    Defendant.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT PINETREE'S PARTIAL MOTION TO DISMISS**

Plaintiff Nyeisha S. Ghee ("Ms. Ghee"), by counsel, files this Memorandum in Opposition to Defendant Pinetree Apartments, LLC ("Pinetree")'s Partial 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint ("Defendant's Memorandum") (ECF No. 27), and states as follows:

**I.    INTRODUCTION**

Defendant Pinetree's Partial Motion to Dismiss is limited to Count 1 (common law fraud) and Count 2 (negligence), and Ms. Ghee's request to impose punitive damages upon Pinetree. Pinetree's Partial Motion to Dismiss does not specifically address Count 3 (failure to maintain the inside of the back wall of the primary bedroom, an area in Pinetree's control).

**II.    FACTS**

**A.    Facts delineated in the Amended Complaint.**

The Amended Complaint asserts that early in the morning on February 20, 2024, Ms. Ghee awoke to one of her sons yelling, "Fire!" ¶ 62.[1] Her two older sons quickly escaped through their apartment's front door. ¶ 64. But when Ms. Ghee grabbed her youngest son, three-year-old Mark,

---

[1] All paragraph citations are to the Amended Complaint (ECF No. 24).

as he stood in the living room where he had been sleeping, the flames quickly filled the front doorway. *Id.* With Mark in her arms, she retreated into her bedroom (referred to below as the "Primary Bedroom"). ¶¶ 64-65. Still holding Mark in her arms, she checked to make sure that the bar on the sliding door assembly was up and then pushed the thumb latch down to unlock the door and slide the door open. ¶ 66. But the door would not budge. *Id.* In order to use both hands to slide the door, she placed Mark on her bed, pushed the thumb latch down again, and tried to slide the door open. But it still would not budge. ¶ 67.

While Ms. Ghee was wrestling with the door, Mark disappeared in the smoke. ¶ 68. She searched for him, going through the front door to see if he had made it to safety outside, but he was not there. ¶ 69. She then rushed back into the burning apartment and resumed her search, suffering severe burns and smoke inhalation in the process. ¶¶ 70-71. Despite her valiant efforts, Mark perished in the fire. Firefighters later found his charred body on the floor near the front door. ¶ 2.

Before Ms. Ghee and her children moved into the apartment, a work order had been filled out to "fix both sliding doors." ¶ 33. But this work was never correctly done and, unbeknownst to Ms. Ghee, water and termites had deteriorated the supporting wooden framing behind the sheetrock wall. ¶ 32. This supporting wooden framing was intended to hold the sliding door's frame in place. *Id.* But rather than removing the sheetrock and replacing the deteriorated wood, Pinetree's agents ***painted over*** the sliding door's finished wood trim to mask the holes termites had eaten in the trim, thereby preventing anyone in the Primary Bedroom from seeing the holes. ¶ 32.

The Amended Complaint observes that, initially, Ms. Ghee and her family did not use the sliding glass door. ¶ 4. But roughly 13 months after taking possession of the apartment, while preparing for an inspection by Pinetree, she discovered that she could not move the door. *Id.* She

reported this to Pinetree's maintenance worker. She did not know what Pinetree knew or should have known – that the problem was caused by termites and water infiltration that had deteriorated the wood behind the sheetrock in the Primary Bedroom's back wall – an area that was controlled by Pinetree. *Id.* The maintenance worker indicated that the door would be repaired and Ms. Ghee did not believe otherwise. *Id.*

The photograph attached to the Amended Complaint as Exhibit 1 shows the deteriorated wood in the wall at the back of the Primary Bedroom. ¶ 5, Exhibit 1. Before this photograph was taken, a putty knife was inserted into the wood to demonstrate the extent of the deterioration of the wood. *Id.* Before the fire, sheetrock covered this deteriorated wood. This deterioration caused the wooden framing around the sliding glass door to deflect, putting the frame out of square. *Id.* As a result, when the fire took place, the sliding glass door could not move along its track. *Id.*

As a direct and proximate result of Pinetree's conduct described in this Amended Complaint, Ms. Ghee suffered burns over 53 percent of her body, from her scalp down to her feet. ¶ 6. Her face was terribly disfigured. *Id*. All five fingers on her right hand and three on her left hand had to be amputated. *Id*. To date, Ms. Ghee has been hospitalized twice, for a total of 110 days, and has undergone multiple surgeries. *Id*. Her medical bills exceed $2.7 million. *Id.*

**B.      Defendant's "Preliminary Statement" is both inaccurate and unpersuasive.**

Defendant Pinetree's Preliminary Statement characterization of Plaintiff's three-count Amended Complaint as simply an "egress" claim is too simplistic. Defendant's Memorandum, ECF No. 27, at 6. The Amended Complaint asserts a count of common law fraud and two counts of negligence pled in the alternative. The negligence claims are in the alternative based on whether the defect is deemed to be in the control of Ms. Ghee or Pinetree. Count 2 is predicated on the defect being in Ms. Ghee's exclusive control. The fact that Pinetree concealed that latent defect

3

allows Plaintiff's claim to step past the application of caveat emptor. Count 3 is predicated on the defect being in an area within Pinetree's control. As Pinetree has not challenged Count 3, Plaintiff's arguments will focus on the area having the defect being within Ms. Ghee's exclusive control.

Defendant Pinetree's effort to characterize a very courageous and quick-thinking Ms. Ghee as less than so (Pinetree states that Ms. Ghee "lost track" of Mark, "exited" the front door without her son, and "later" realized that her son was still in the apartment, ECF No. 27, at 1), is not accurate. Indeed, it is repugnant. *See* ¶¶ 67-71. As the Amended Complaint lays out, Ms. Ghee did all she could to care for her children in the middle of a horrifying event. In the absence of the fraud and negligence by Pinetree, she would have been successful.

Finally, the landlord-tenant relationship is not "controlled" by the operative lease. Rather, the lease merely identifies the two parties as landlord and tenant. ECF No. 27, at 1-2. The common law, not the lease, delineates the landlord's tort duties to Ms. Ghee and her family. Defendant Pinetree's effort to create notice obligations contrary to the practices followed by the parties carries no legal weight whatsoever.

Pinetree's other erroneous contentions are addressed below.

### III.   STANDARD OF REVIEW

**A.    The Plaintiff is entitled to draw all reasonable factual inferences in her favor.**

To satisfy Federal Rule of Civil Procedure 8(a)(2), a complaint simply must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A Rule 12(b)(6) motion "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A motion to dismiss for failure to state a claim may only be granted if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and

drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitled him to relief." *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 248 (4th Cir. 2005) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

**B.     When alleging fraud by omission or concealment, plaintiffs may partly rely on information and belief.**

Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requires the plaintiff to allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019). However, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Corder v. Antero Res. Corp.*, 57 F.4th 384, 401 (4th Cir. 2023) (*citing Edmonson*, 922 F.3d at 553).

Following the lead of six other circuits, the Fourth Circuit Court of Appeals in *Corder* adopted a relaxed Rule 9(b) standard for allegations of fraud by omission or concealment, reasoning that the relevant "facts will often be in the sole possession of the defendant." *Id.* at 402. Requiring the standard Rule 9(b) particularity "in such cases would 'create a Catch-22 situation.'" *Id.* (quoting *Emery v. Am. Gen. Fin., Inc.,* 134 F.3d 1321, 1323 (7th Cir. 1998)). Accordingly, "[w]hen alleging fraud by omission or concealment, plaintiffs may partly rely on information and belief without running afoul of Rule 9(b)" so long as "the factual allegations that make their belief plausible" are stated. *Id*. The Fourth Circuit did not eliminate the particularity requirement for

5

claims of fraud by omission or concealment, *id*., but it did relax the standard by allowing for some pleading by information and belief.

## IV. ARGUMENT

The Amended Complaint contains three counts. Count 1 asserts a claim for common law fraud based on Pinetree's intentional concealment of termite damage. Count 2 asserts a negligence claim that overcomes any caveat emptor assertions due to the concealment of a latent defect. Count 3 asserts a negligence claim for failure to maintain the inside of the back wall of the Primary Bedroom, an area in Pinetree's control. Contrary to Pinetree's assertion, ECF No. 27, at 23, Ms. Ghee is not making a negligent repair claim.

**A. Plaintiff has pled sufficient facts to demonstrate common law fraud.**

Ms. Ghee must prove six elements by clear and convincing evidence to prevail on her common law fraud claim: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance thereon by the party misled, and (6) resulting damage to the party misled." *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 497 (2014). Plaintiff has plausibly alleged sufficient facts as to each element.

1. <u>Pinetree made a false representation.</u>

Ms. Ghee has alleged that Pinetree made a false representation—namely, that Pinetree "***painted over*** the sliding door's finished wood trim to mask the holes termites had eaten in the trim, thereby preventing a person in the Primary Bedroom from seeing the holes." ¶ 3. *See also* ¶¶ 29 and 32. Painting over termite damage for the purpose of concealing the damage is a false representation. *See Clay v. Butler*, 132 Va. 464, 474 (1922) (noting that "concealment is as much a fraud as if the existence of the fact were expressly denied, or the reverse of it expressly stated"). Concealment can be "accomplished by word or conduct" and functions as "the equivalent of a

6

false representation, because concealment always involves deliberate nondisclosure designed to prevent another from learning the truth." *Spence v. Griffin*, 236 Va. 21, 28 (1988).[2]

Pinetree argues that it is not fair to infer that it painted over the otherwise visible termite damage. ECF No. 27, at 14. To the contrary, as explained below, it is fair to infer that termite damage existed, that it was extensive and visible, and that Pinetree painted over it.

It is reasonable to infer from the Amended Complaint that extensive termite damage existed when the work orders concerning Ms. Ghee's apartment were completed. Before Ms. Ghee took possession of Apartment G8, water had seeped into the space between the interior and exterior back walls, and termites had entered. ¶¶ 28-29. This combination of water and termites deteriorated the supporting wooden framing that held the Sliding Glass Door in place, causing it to become out of square and impeding its ability to slide. *Id*. Pinetree completed a work order for chipping paint around the exterior windows and doors of Apartment G8 the day before Ms. Ghee took occupancy. ¶ 32. Upon information and belief, the "chipping paint" was the damage caused by termites in the finished wood trim discussed above, painted over by Pinetree to conceal the termite damage. ¶ 29. Once Ms. Ghee began living in the apartment, she and her mother saw what they described as "flying ants" coming "out of *holes in the windowsill*." ¶ 32, n.4. Ms. Ghee also "saw ants on the floor in the Primary Bedroom on several occasions." *Id*. It is fair to infer that these holes and more existed when Pinetree painted the day before Ms. Ghee took occupancy. Just two months after the fire, the sliding door's supporting wooden framing was severely deteriorated, as the Amended Complaint's Exhibit 1 photograph clearly shows (the photograph with the putty knife stuck into badly

---

[2] While Virginia law controls here, the United States Supreme Court has also "carefully explained why concealment is 'equivalent to a false representation' and so appropriately forms the basis for a common law fraud action." *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000) (quoting *Stewart v. Wyoming Cattle Ranche Co.*, 128 U.S. 383, 388 (1888)).

7

deteriorated wood). ECF No. 24.1. This deterioration makes it fair to infer that the termite damage had been ongoing for years and that there were termite holes in the sliding door's finished wood trim when the work orders were being completed the day before Ms. Ghee moved in. By painting over the holes, Pinetree made a false representation.

2. <u>Plaintiff satisfies the remaining five prongs as well.</u>

Pinetree's main contention is that it did not paint over termite damage and that such an inference cannot be drawn. As discussed above, there are sufficient facts in the Amended Complaint to draw the reasonable inference that Pinetree did just that. Once this inference is drawn, the rest of the fraud elements fall into place easily.

As to the materiality of the false representation that there were no termites and consequently no ongoing deterioration, Ms. Ghee, like all tenants, considered the safety of the apartment to be material when she and her three boys moved into the apartment. The fact that one of the primary exits would not function in an emergency as a result of damage inside the wall would certainly have been material to her. ¶ 82. Common sense and common experience tell us that the mere presence of ongoing termite damage is a material fact to a landlord-tenant relationship.

The fact that Pinetree intentionally made the false representation with the intent to deceive the next tenant (Ms. Ghee) is a reasonable inference. Why else would a landlord paint over termite holes and otherwise hide damage *the day before* a tenant takes possession of an apartment? At this stage of the litigation, it is fair to infer from the nature and timing of the concealment that it was done with an intent to mislead.

Ms. Ghee's reliance on the misrepresentation that the apartment lacked termite damage and thus was safe for her family is reasonable as well. Moreover, for purposes of common law fraud,

8

it is irrelevant when Ms. Ghee discovered that the sliding door would not open and what she knew the cause of that issue to be. When possession of the apartment was transferred to her on June 1, 2022, the door would open—just not easily. ¶ 44. She had no reason to suspect that termites were to blame, as Pinetree had intentionally painted over the termite damage. She had no information as to what was happening behind the sheetrock. All she could have known when she took possession of the apartment was that the door did not move easily along its track. *Id.*

Lastly, as detailed in the Amended Complaint, ¶¶ 8 and 74-78, Ms. Ghee and her family have suffered horribly as a result of Pinetree's fraud.

**B.      Plaintiff has plausibly pled that Defendant Pinetree concealed a latent defect, allowing her to bring a negligence claim.**

The general rule is that landlords owe no duty to their tenants to "maintain in a safe condition any part of the leased premises that [is] under [a tenant's] exclusive control." *Isbell v. Commercial Inv. Assocs.*, 273 Va. 605, 611 (2007) (alterations in original) (quotation omitted). But this rule is not absolute. Of relevance here, if there is "concealment **or** fraud by the landlord as to some defect in the premises, known to him and unknown to the tenant," the general rule does not apply. *Id*. (quoting *Caudill v. Gibson Fuel Co.*, 185 Va. 223, 240 (1946) (emphasis added)).

Years before *Isbell's* framing of the issue as an obligation "to maintain [the area] in safe condition," the Supreme Court of Virginia in *Smith v. Wolsiefer,* also referenced a duty to disclose the latent defect:

> Where, however, there is some latent defect, e.g., an original structural weakness, or decay, or the presence of an infectious disease, or other injurious thing rendering the occupation of the premises dangerous, which were known to the lessor, and were not known to the lessee, nor discoverable by him on a reasonable inspection, then it was the duty of the lessor to disclose the defect; and, if an injury results therefrom, he is liable as for negligence.

9

119 Va. 247, 253 (1916) (quoting Shearman & Redfield on Negligence (6th ed.) § 709); *accord*, Restatement (Second) of Property § 17.1 and Restatement (Second) of Torts § 358.

As explained above, Ms. Ghee has sufficiently alleged that Pinetree concealed a material fact from her before she took occupancy of the apartment. Under Virginia law, that means that Pinetree was liable for any injury stemming from that defect. Pinetree does not seem to contest that point. Rather, Pinetree asserts that Ms. Ghee eventually discovered the defect and thus cannot bring a claim. That allegation is incorrect. A reasonable person would not have discovered the defect between the walls, and therefore, Pinetree continued to owe a duty to Ms. Ghee when the fire occurred.

Contrary to Defendant Pinetree's assertion, ECF No. 27, at 8, Plaintiff never learned, and could not have learned, that water and termites had caused the wooded trim supporting the sliding glass door to deteriorate because the defects were not reasonably discoverable. ¶¶ 4, 54. Ms. Ghee merely learned, at the time that she tried sliding the door, that it was stuck. ¶¶ 4, 54-56. She did not know, nor would any reasonable person have known, whether it was a temporary circumstance or what was causing it to stick. She did not know that the problem was caused by deteriorated wood behind the sheetrock in the Primary Bedroom's back wall. Nor did she know that, as time passed, the wooden framing supporting the sliding glass door would deteriorate more and more (due to ongoing damage caused by termites and water infiltration), causing the door to become more and more out of square and more and more difficult to slide.

Plaintiff's Amended Complaint notes that Ms. Ghee told Pinetree of her inability to slide the door, but Pinetree failed to address her concerns. ¶¶ 57-59. Ms. Ghee did not know, nor would a reasonable person have known, whether the door required WD-40, a more aggressive push or pull, or some other action. She did not know, nor would a reasonable person have known, that the

cause of the problem was hidden below the fresh paint applied by Pinetree to cover up the evidence. Ms. Ghee did not know, nor would a reasonable person have known, that the supporting wooden frame inside the wall would only become more out of square with time. As Defendant Pinetree concealed the latent defect, it is responsible for the resulting injuries caused by the defect, including Ms. Ghee's pain, suffering, deformities, impeded abilities, and enormous medical bills.

**D.     Plaintiff has pled sufficient facts to state a claim for punitive damages.**

In two ways, Ms. Ghee has pled sufficient facts to justify her claim for punitive damages. First, fraud is an intentional tort. *Fox. v. Deese*, 234 Va. 412, 425 (1987). And a plaintiff who "pleads and proves an intentional tort under the common law of Virginia" may be entitled to punitive damages. *Shaw v. Titan Corp.*, 255 Va. 535, 545 (1998). Thus, because Ms. Ghee has stated a claim for common law fraud (Count 1), the jury could award punitive damages to her.

Second, Pinetree has not challenged Count 3. There, and in Counts 1 and 2, Ms. Ghee alleges that Pinetree acted in a willful and wanton manner. ¶¶ 84, 91, and 96. Punitive damages are proper in a negligence action when the negligence "is so willful or wanton as to evince a conscious disregard of the rights of others." *Booth v. Robertson*, 236 Va. 269, 273 (1988); *see also Green v. Ingram*, 269 Va. 281, 292 (2005). Under Virginia law, if a plaintiff proves willful and wanton conduct, the jury may award punitive damages. Whether there was conscious disregard is a question for the jury. *See Curtis v. Highfill*, 298 Va. 499, 506-07 (2020); *Booth v. Robertson*, 236 Va. at 273; *see also Green v. Ingram*, 269 Va. at 292 (holding that an award for punitive damages should not be overturned because an appellate court should defer to a jury's finding that there was conscious disregard if there is sufficient evidence to support it). In short, at this pleadings stage, the allegations in the Amended Complaint are sufficient to establish willful and wanton conduct allowing for the imposition of punitive damages.

## CONCLUSION

For these reasons, there is no merit to Pinetree's attempt to dismiss Counts 1, 2, and the claim for punitive damages. As a result, Ms. Ghee asks the Court to allow these claims to go forward, along with Count 3 (which Pinetree has not moved to dismiss).

Respectfully submitted,

NYEISHA S. GHEE

By:   /s/ Mark Krudys
            Counsel

Charles H. Cuthbert, Jr. (VSB # 14519)
Richard M. Cuthbert (VSB # 82025)
Cuthbert Law Offices
A Professional Corporation
220 North Sycamore Street
Petersburg, Virginia 23803-3228
Phone: (804) 733-3100
Fax: (804) 732-4658
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com

Mark J. Krudys (VSB#30718)
Danny Zemel (VSB#95073)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, VA, 23219
Phone: (804) 774-7950
Fax:    (804) 381-4458
mkrudys@krudys.com
dzemel@krudys.com

*Counsel for Plaintiff*

**Certificate of Service**

I hereby certify that on this 16th day of April 2025, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record.

    /s/ Mark J. Krudys
Mark J. Krudys (VSB# 30718)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, Virginia 23219
804.774.7950 Phone
804.381.4458 Fax
mkrudys@krudys.com
*Counsel for Plaintiff*

13