IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NYEISHA S. GHEE,

     Plaintiff,

v.                                                               Civil Action No.: 3:25-cv-17-RCY

PINETREE APARTMENTS, LLC,

     Defendant.

**PINETREE APARTMENTS, LLC'S REPLY MEMORANDUM
IN SUPPORT OF ITS PARTIAL 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Pursuant to Local Rule 7 and Rule 12(b)(6) of the Federal Rules for Civil Procedure, defendant Pinetree Apartments, LLC ("Pinetree"), by counsel, hereby submits this Reply Memorandum in Support of its Partial 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint.

## I.    <u>INTRODUCTION</u>

Instead of undermining Pinetree's motion, the opposition confirms that the Amended Complaint has not pled a concealment or latent defect claim through the following admissions:

- Plaintiff "could have known when she took possession of the apartment . . . that the door did not move easily along its track." Opp. (ECF No. 31, at 9).

- "[S]he discovered that she could not move the door." *Id.* at 2.

- She "learned, at the time that she tried sliding the door, that it was stuck." *Id.* at 10.

Both Count 1 and Count 2 of the Amended Complaint require the defect to be hidden beyond what a reasonable inspection would uncover. Because nothing could be more reasonable than opening the Sliding Door, the opposition centers on a red herring: the alleged termite and wood rot damage. That argument is unavailing. Termite and wood rot damage is relevant to this claim only because it allegedly impeded the Sliding Door's "ability to slide." *See id.* at 7. In no event could such

damage, independent of operating the Sliding Door, have caused or contributed to the Plaintiff's alleged injuries. The concealment and latent defect claims must fail because Plaintiff should have known "the door did not move easily along its track." *Id.* at 9.

The opposition also fails to provide any additional support for the remaining elements of a fraud claim—that Pinetree attempted to deceive the Plaintiff (or even could do so), that the Sliding Door's functionality was material to her lease, or that she reasonably relied on Pinetree. When stripped of speculation and leaps of logic, the Amended Complaint only shows that Pinetree repaired chipping paint in May 2022 in response to a work order; that Plaintiff failed to verify that the Sliding Door worked when she took possession; that Plaintiff did not find and report the problem until July 2023; and that Pinetree did not repair the Sliding Door after July 2023. This does not amount to common law fraud or concealment of a latent defect, and it does not show willful and wanton negligence giving rise to punitive damages. The Court should thus dismiss Plaintiff's claims for common law fraud, concealment of a latent defect, negligent repair, willful and wanton negligence, and punitive damages with prejudice.

## II.    LEGAL ARGUMENT

### A.    The Court Should Dismiss Plaintiff's Common Law Fraud Claim.

As the old saying goes, "You can't hide a bad tree." A bad tree produces bad fruit—or in other words, even if Pinetree concealed termite damage, Pinetree could not hide an immobile Sliding Door from the Plaintiff, a tenant who slept in the same bedroom as the Sliding Door for 22 months before the fire. Am. Compl. ¶ 61. This simple, logical truth should end all concealment-based claims without further inquiry. But even if this hurdle is cleared, Plaintiff's claim is halted by a runway of additional impediments, including that the entire basis for fraud—that termite damage was present and visible on May 31, 2022—is an unreasonable inference under the pleading standards of Rule 9(b). Additional hurdles come with each successive element, which, rather than

"fall[ing] into place" as Plaintiff claims, are each insufficiently pled and facially unsatisfied. Opp. (ECF No. 31, at 8-9). In fact, the opposition devotes barely over a page to these other four elements, telegraphing to Pinetree and the Court that the Amended Complaint does not support Plaintiff's contentions. *Id.* She cannot meet the required elements of materiality to the lease contract, intent to mislead her, or her own reliance on Pinetree for the Sliding Door. All told, there are no legal grounds to support Plaintiff's claim for common law fraud in the Amended Complaint, and the Court should dismiss this claim.

### 1.  *The Defect Was Easily Discoverable by a Reasonable Tenant.*

The undisputed fact in the Amended Complaint showing Plaintiff was not deceived is her July 2023 discovery of the alleged defect. Am. Compl. ¶ 55. Only concealment "designed to prevent another from learning the truth" is actionable as fraud. *N. Va. Eye Inst., P.C. v. Cynosure, LLC*, No. 5:21-cv-00008, 2021 U.S. Dist. LEXIS 75804, at *12 (W.D. Va. Apr. 20, 2021). It is elementary that someone is not prevented from learning something when he or she could discover it upon "reasonable inspection[.]" *Smith v. Wolsiefer*, 119 Va. 247, 253 (1916). As Defendant elucidated throughout its original briefing, even if Pinetree painted over the termite and wood damage, Plaintiff was never prevented from discovering that the Sliding Door's movement was impaired, and she in fact did so. *See* Opp. (ECF No. 31, at 2, 9, 10). Because the defect was easily discoverable, her claim is subject to the general rule that the tenant takes the premises in whatever condition it is in, "assuming all risk of personal injury from the defects therein." *Isbell v. Commercial Investment Assocs., Inc.*, 273 Va. 605, 611-12 (2007) (quoting *Caudill v. Gibson Fuel Co.*, 185 Va. 233, 239-41 (1946)).

The dispute then becomes: Was Plaintiff required to know about the wood rot and termite damage before she could understand that the Sliding Door's immobility posed a substantial safety risk? No, she was not. The danger posed by an impeded exit is obvious to a reasonable tenant. The

opposition attempts to conceal this common-sense principle by focusing on the alleged defect's cause and origin, complicating a legal principle that is rooted instead in the doctrine of notice. *See, e.g., McGuinness v. Miele*, 108 Va. Cir. 138, 143 (Va. Beach 2021) (discussing duty to "inform Plaintiff of known and concealed defects"); *Hillsville v. Nester*, 215 Va. 4, 6 (1974) (criticizing a plaintiff who "failed to notice the defect during the eight months she had used the sidewalk"); *Knight v. Moore*, 179 Va. 139, 146 (1942) ("While the owner must give <u>notice or warning</u> of an unsafe condition which is known to him and is unknown to the invitee, such <u>notice</u> is not required where the dangerous condition is open and obvious[.]" (emphasis added)); *cf. Barna v. Paris*, No. 99-L-084, 2000 Ohio App. LEXIS 4555, *9 (Ohio App. Ct. Sept. 29, 2000) ("[T]he issue is ultimately whether the facts were such that a reasonably prudent person would be <u>put on notice</u> of a possible problem." (emphasis added)). Courts have "reject[ed] the argument that it is the true extent or seriousness of the defect which must be open and obvious to a non-expert. . . . The cause of the defect is not required to be open and obvious, rather it is the open and obvious nature of the defect itself which invokes the defense of *caveat emptor*." *Seecharan v. Macy*, No. 75130, 1999 Ohio App. LEXIS 5065, *13 (Ohio Ct. App. Oct. 28, 1999) (citing *Layman v. Binns*, 35 Ohio St. 3d 176, 177-78 (Ohio 1988) (rejecting argument that the defect was not open and obvious because the purchaser only "saw a symptom of it" and finding no fraud had occurred); *see also Casey v. Estes*, 657 So.2d 845, 848 (Ala. 1995) (finding the defect gas line "highly visible" and not latent, even though landlord never discussed the gas system with the tenants at any time). Notice of a defect, not an explanation of its cause and origin, is sufficient to eliminate any concealment claim.

Plaintiff had sufficient notice of the alleged defect that caused her injury—the impediment in the Sliding Door. In a similar area of law, the Supreme Court of Virginia has defined what constitutes sufficient notice: "[W]hatever fairly puts a person on inquiry is sufficient notice where

the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained[.]" *Brooks v. Lum*, 52 Va. Cir. 390, 398 (Winchester 2000) (quoting *Chavis v. Gibbs*, 198 Va. 379, 385 (1956)) (discussing notice for tile and recording). Notice is not the same as understanding "the cause of the issue"—the bar is lower, allowing for additional inquiry. Opp. (ECF No. 31, at 9); *see Uribe v. Briar-Ridge, LLC*, No. 13-20-00167- CV, 2021 Tex. App. LEXIS 10165, *21 (Dec. 29, 2021) (finding nonfunctional toilets "would have put Uribe on notice that further investigation . . . was necessary before signing the lease"). For example, had Pinetree simply told Plaintiff that "the Sliding Door does not slide," Plaintiff could not say she lacked notice. *See* Am. Compl. ¶ 48 ("[N]othing was said to Ms. Ghee[.]"). Similarly, Pinetree cannot be charged with fraud when Plaintiff could have learned the same thing by trying to open the Sliding Door—especially when Plaintiff concedes she did try and had actual notice of the alleged defect before the fire.

### 2. *There Is No Reasonable Inference of Long-Existing Termite Damage and No Entitlement to Rely on Information and Belief.*

Plaintiff's claim of long-existing termite damage is an unwarranted inference to which she has no rebuttal other than a general plea to conduct discovery—discovery she failed to request in pre-litigation discussions before filing her Complaint. While Rule 12(b) allows the plaintiff certain privileges, the court as gatekeeper must determine whether the plaintiff has reasonably been harmed in the manner alleged. Judge Robert Doumar of the United States District Court for the Eastern District of Virginia urged judges to be "diligent," observing that "only by taking care to require that the factual allegations support each element of each claim . . . can [we] hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence." *VA C 12266 Jefferson, LLC v. Mattress Warehouse Inc.*, No. 4:14cv34, 2014 U.S. Dist. LEXIS 147626, *5-6 (E.D. Va. Oct. 16, 2014)

(quoting *Twombly*, 550 U.S. at 559) (cleaned up). Plaintiff's fraud claim is based on fatal logical flaws that she did not explore before involving the court in her claims.

The opposition fails to cite a single authority that "it is fair" or otherwise reasonable to infer termite holes existed before Plaintiff took possession and years before the fire and before the photograph was taken. *See* Opp. (ECF No. 31, at 7-8). The opposition simply reiterates the same successive set of inferences in the Amended Complaint, claiming damage "had been ongoing for years" and was present <u>on the date certain</u> of May 31, 2022. *See id.* Allegations about an actual calendar date are so far-fetched as to be implausible. In *Patton v. Carnival Corp.*, the Eleventh Circuit would not infer that a gap in a threshold had "emerged gradually over the course of days"— an inference of only days' prior notice, not years. *Patton v. Carnival Corp.*, No. 22-13806, 2024 U.S. App. LEXIS 10441, *6-7 (11th Cir. 2024). Courts similarly exclude experts who make speculative assertions based on inspections occurring far after the alleged incident. *See Blake v. Bell's Trucking, Inc.*, 168 F. Supp. 2d 529, 533 (D. Md. 2001) (criticizing an expert's opinion as speculative when "based on his inspection of the hotel three years after the accident and his review of the photographs of the hotel taken by plaintiffs' counsel several days after the accident"); *Paczkowski v. Dawson*, No. 126,108, 2024 Kan. App. Unpub. LEXIS 251, *18 (Kan. Ct. App. July 5, 2024) ("The experts . . . inspected the site one and half and three years after the incident, and any conclusions they reached are pure speculation."). This speculation is exactly what Rule 9(b) should prohibit. *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake."). The opposition does nothing to overcome the countless reasons rehearsed in Pinetree's opening brief for exclusion.

Plaintiff looks to the Fourth Circuit's relaxed pleading standard in *Corder v. Antero Res. Corp.* for help, insisting she can plead nearly anything "by information and belief." Opp. (ECF

No. 31, at 5) (citing 57 F.4th 384 (4th Cir. 2023)). While Defendant agrees that *Corder* is good

law and cited the case within its opening brief, *Corder* does not save the Amended Complaint. *See*

Def.'s Mem. (ECF No. 27, at 8, 11). *Corder* explained the approach adopted from other circuits:

> "[A]llegations based on information and belief may suffice, <u>so long as the
> allegations are accompanied by a statement of facts upon which the belief is
> founded</u>." . . . When alleging fraud by omission or concealment, plaintiffs may
> <u>partly</u> rely on information and belief without running afoul of Rule 9(b). However,
> they <u>must state the factual allegations that make their belief plausible</u>.

*Corder,* 57 F.4th at 401-02 (emphasis added) (quoting citations omitted). Courts emphasize the

importance of providing "factual content" that gives rise to the "<u>reasonable inference</u> that the

defendant is liable for the misconduct alleged." *Nayab v. Capital One Bank USA*, 942 F.3d 480,

493 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (emphasis added); *see

also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3rd Cir. 1997) ("[C]onclusory

allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations

that make their theoretically viable claim plausible[.]"). Several cited cases, as well as *Corder*

itself, ultimately held the factual predicate insufficient despite a relaxed standard, so it is clear the

relaxed standard does not automatically save a claim. *See Corder*, 57 F.4th at 402 ("Even under a

relaxed Rule 9(b) standard, Lessors' fraud allegations are not adequate."); *Emery v. American Gen.

Fin.*, 134 F.3d 1321, 1323 (7th Cir. 1998) (affirming lower court); *Kowal v. MCI Communications

Corp.*, 16 F.3d 1271, 1279 (D.C. Cir. Ct. 1994) ("The complaint lacks any factual specificity to

support the proposition[.]"). As described above and in Pinetree's opening brief, Plaintiff's factual

predicate is insufficient to yield any reasonable inference that Pinetree concealed termite damage.

Plaintiff also concedes the *Corder* rule is only available to her if she possesses "substantial

prediscovery evidence of those facts." Opp. (ECF No. 31, at 5). The opposition fails (1) to identify

exactly what discovery Plaintiff needs from Pinetree; and (2) to show that she asked for such

information from Pinetree prior to filing her Complaint but was refused. As Judge Richard A.

Posner emphasized in *Emery v. Am. Gen. Fin.*:

> We don't want to create a Catch-22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery (normally of the defendant, because the essential information is in his possession <u>and he will not reveal it voluntarily</u>) that she could not conduct before filing the complaint. . . . <u>The plaintiff did not make that showing. Her lawyer admits that she didn't explore the possibility</u> of obtaining [the information] from the defendants or other sources, without discovery[.]

*Emery*, 134 F.3d at 1323 (emphasis added); *see also Katz v. Household Int'l*, 91 F.3d 1036, 1040

(7th Cir. 1996) (finding pleading was allowed "if that information was not available to him without

discovery"); *Devaney v. Chester*, 813 F.2d 566, 569 (2nd Cir. 1987) ("[W]e recognize that the

degree of particularly required should be determined in light of such circumstances as whether the

plaintiff has had an opportunity to take discovery of those who may possess knowledge of the

pertinent facts."). Similarly, in *Kowal v. MCI Comm. Corp.*, the Second Circuit required that

pleadings on information and belief "require an allegation that the necessary information lies

within the defendant's control" to further "purposes of Rule 9(b), which attempts in part to prevent

the filing of a complaint as a pretext for the discovery of unknown wrongs." *Kowal*, 16 F.3d at

1279 n.3 (cleaned up). The relaxed *Corder* standard must be earned by a sufficient showing that

the plaintiff tried and failed to obtain the information by other avenues before filing.

Here, Plaintiff did not fulfill her obligation to request all necessary pre-litigation discovery,

despite Pinetree's full cooperation with all pre-litigation requests. On May 6, 2024, defense

counsel informed Plaintiff's counsel that the damaged property was scheduled to be repaired and

if "you would like any further inspections, please call my office to arrange for the same." Two

days later, in response to Plaintiff's request, Pinetree produced the work orders, which are attached

to the Amended Complaint. *See* Am. Compl. Exs. 8-10 (ECF No. 24-8, 24-9, 24-10). In March

and April 2024, the parties completed non-destructive joint inspections at the Pinetree Apartments.

At the last evidence inspection on December 17, 2024, counsel (accompanied by both parties' experts), standing in a circle at the end before leaving, discussed next steps, and defense counsel proposed to speak again in early January 2025 after the holidays. Plaintiff filed her Complaint in Petersburg Circuit Court on December 19, 2024, and had the Complaint served on Pinetree on December 26, 2024, although she had until February 20, 2026, to file suit. *See* Va. Code § 8.01-243. By filing her Complaint, she indicated *de facto* that she needed no further pre-litigation investigation.[1] Pinetree never denied or withheld any pre-litigation record requests made by Plaintiff's counsel, and notably, the Complaint was Plaintiff's first notification to Pinetree that her case theory involved deterioration to the wood above the Sliding Door.[2] Plaintiff is therefore not entitled to the relaxed pleading standard adopted in *Corder*, and the Court should find that the Amended Complaint fails to meet the pleading requirements of Rule 9(b).

### 3.  *There Is No False Representation Because Pinetree Never Intended to Deceive Plaintiff About a Material Condition.*

Just as Plaintiff cannot show Pinetree concealed the defect in the Sliding Door, she cannot show that the concealment, if any, was intended to deceive her. Plaintiff makes the strident assertion that "[p]ainting over termite damage for the purpose of concealing the damage is a false representation," but her citation to *Clay v. Butler* does not support this sweeping proposition. *See* Opp. (ECF No. 31, at 6). The full quotation reads as follows:

---

[1] Plaintiff also served written discovery on Pinetree with the filing of the state court Complaint, but the two Interrogatories only asked Pinetree to identify experts and any available insurance, *see* (ECF No. 1-2, at 110), and the single Request for Production asked for the policy declaration page, *see* (ECF No. 1-2, at 113). None of Plaintiff's discovery to Pinetree served with the state court Complaint requested additional factual information on the Sliding Door or wood / termite damage.

[2] Until Pinetree was served with the Complaint, Defendant believed Plaintiff's case theory involved the Sliding Door's lock. Plaintiff never asked for records relating to wood and termite damage, and Plaintiff's experts did not ask to preserve the wood above the Sliding Door during the multiple site inspections.

> If a party conceals a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, the concealment is as much a fraud as if the existence of the fact were expressly denied, or the reverse of it expressly stated.

*Clay v. Butler*, 132 Va. 464, 474 (1922) (emphasis added). Concealment cannot be severed from the prerequisites of materiality and intention to deceive. Pinetree could lawfully have concealed damage to the apartment, the same way Pinetree could have concealed crayon markings left by a prior resident's children, so long as Pinetree was not engaging in deceptive practices. A cause of action accrues by concealment only when (1) the concealed condition is material to contract formation; and (2) the defendant knows the other party is unaware of the concealed condition and intentionally fails to remedy that assumption. The Amended Complaint does not plausibly allege either materiality or intent to deceive Plaintiff regarding the Sliding Door.

### i.    A Lack of Termite Damage Was Not Material to the Lease.

As a preliminary matter, Plaintiff did not tell Pinetree before May 31, 2022, that she desired a termite-free residence. Plaintiff instead relies on "[c]ommon sense and common experience," which "tell[s] us that the mere presence of ongoing termite damage is a material fact[.]" Opp. (ECF No. 31, at 8). This is not the law in Virginia, where a "material breach is a failure to do something that is <u>so fundamental</u> to the contract that the failure to perform that obligation defeats an <u>essential purpose</u> of the contract." *Horton v. Horton*, 254 Va. 111, 115 (1997) (emphasis added). Materiality cannot be waived away with alleged common sense and assumptions; if a termite-free apartment had been essential, it would have been in the fifty-one-page Lease, and it is not. *See* Am. Compl. (ECF No. 24-5, at 1-51); *cf. Dean v. Morris*, 287 Va. 531, 537 (2014) (stating that a contract is only complete when "the contract embraces all the material terms . . . [and] each of those terms is expressed in a <u>sufficiently exact and definite manner</u>'" (quoting *Smith v. Farrell*, 199 Va. 121, 127-28 (1957)) (emphasis added)). Without allegations showing a meeting-of-the-minds on the

materiality of this condition, it is not incorporated into the contract. *See Comm'r of Highways v. 496 Elden St., LLC*, No. 0734-23-4, 2025 Va. App. LEXIS 25, *7 (Jan. 21, 2025) ("Until the parties have a distinction intention common to both . . . there is a lack of mutual assent and, therefore, no contract." (quoting *Moorman v. Blackstock, Inc.*, 276 Va. 64, 75 (2008)). Plaintiff cannot show materiality when she never asked Pinetree and Pinetree was ignorant to its alleged importance.

Plaintiff cannot even show materiality to herself. The court in *Guy v. Tidewater Inv. Props.*, did not find the presence of lead paint inherently material, and the facial danger of lead paint is more significant than termite damage. *Guy v. Tidewater Inv. Props*, 41 Va. Cir. 218, 222 (Norfolk 1996) (finding the plaintiff had "failed to plead sufficiently the materiality of the fact that the apartment contained lead paint"). When the Amended Complaint does hint at the presence of termites in the apartment during Plaintiff's tenancy, the allegations indicate that any resulting termite damage was not material to her. Plaintiff saw ants (perhaps termites, perhaps not) "on several occasions," but she did not report those as a safety hazard or material breach of the Lease. *See* Am. Compl. ¶ 32, n. 4. Only the "flying ants" by the living room windowsill were reported, and those ants were reported by her mother, not by her. *Id.* She was aware that no exterminator had visited the apartment. *Id.* Further, termites are a common and well-known threat to buildings, particularly an older 1995 building, like the Pinetree Apartments. Termite damage can be remediated, killing the active infestation, but the old termite trails remain in the woodwork. It is not necessarily material to every tenant that there is no termite damage, and Plaintiff has not shown that an absence of termites alone was critical to her.

Lastly, the court should reject Plaintiff's argument that the defect was material because "one of the primary exits would not function in an emergency[.]" Opp. (ECF No. 31, at 8). The timeframe to consider materiality is when Plaintiff signed the contract, not afterward. *Guy*, 41 Va.

Cir. at 222 (citing *Packard Norfolk, Inc. v. Miller*, 198 Va. 557 (1956)). Plaintiff's assertion of materiality is belied by her failure to check the exit until July 2023. Am. Compl. ¶¶ 55-56. Had Plaintiff believed the Sliding Door was material to her lease, she would have checked and notated it on her Inventory and Condition Form. *See* Lease (ECF No. 24-5, at 10-12) (agreeing to "inspect and test all the safety-related items"). She also would have followed the procedures appearing in her Lease and the Virginia Residents and Landlord Tenant Act for seeking repairs.[3] *See* Def.'s Mem. (ECF No. 27, at 9 & n.4). However, even if the court were to accept that the exit's functionality was material, this proposition does not render termite and water damage material to the Lease, separate and apart from the Sliding Door. Termite and water damage did not independently impact Plaintiff's egress in the fire. If Plaintiff believed emergency egress was critical, the most she can show is that an open and obvious defect to the Sliding Door was material—a proposition that gets her nowhere. The court should examine the facts of the Amended Complaint and determine that the Sliding Door and/or any termite and water damage was immaterial to the formation of the Lease.

### ii. Pinetree Was Not Aware Plaintiff Was Relying on a Lack of Termite Damage and Did Not Intentionally Conceal Same.

The opposition's conclusory argument about Pinetree's intention fares no better. Plaintiff infers intent based only the timing of the repair work, posing a single hypothetical question as her

---

[3] Plaintiff argues that Pinetree cannot "create notice obligations contrary to the practices followed by the parties[.]" Opp. (ECF No. 31, at 4). Defendant is unclear what Plaintiff means by this because Ms. Ghee submitted five (5) different work order requests in writing between July 2022 and August 2023, both before and after her discovery of the Sliding Door issue in July 2023, as seen in Exhibit 3 to Plaintiff's original Complaint. *See* Compl. Ex. 3 (ECF No. 1-2, at 83). Thus, to the extent that the record supports general "practices followed by the parties," the practice was to make written requests via the online portal. Further, while Pinetree acknowledges that tort obligations are generally set by the common law, the Lease provisions are relevant because Plaintiff's failure to follow the Lease is a key indication that the alleged defect was not material.

entire argument. *See* Opp. (ECF No. 31, at 8) ("Why else would a landlord paint over termite holes . . . the day before a tenant takes possession of an apartment?") But Pinetree already provided a plethora of alternative explanations in its opening brief. Plaintiff needed to say more in Amended Complaint to overcome the pleading requirements of Rule 9(b). *Cf. In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3rd Cir. 1997) (observing in the securities context that "plaintiffs must still allege facts that show the court their basis for inferring that the defendants acted with 'scienter'" or there would be suits "based on no more than plaintiffs' detection of a few negligently made errors in company documents"). Timing alone is insufficient to raise an inference of fraud, particularly when the facts are highly contested. *Cf. Campbell v. Dudley (In re Sobota)*, No. 08-01700-dd, 2009 Bankr. LEXIS 1496, *8 (D.S.C. June 3, 2009) (observing that while "an intra-family transfer of property at or near the time of litigation with creditors . . . lend themselves to support a suspicion of fraud, something more is required—especially where . . . the points in contention remain in contest"). The Amended Complaint categorically fails to show any intention.

It is unquestioned that "reckless nondisclosure is not actionable." *Western Capital Partners, LLC v. Allegiance Title & Escrow, Inc.*, 520 F. Supp. 2d 777, 782 (E.D. Va. 2007) (quoting *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999)). Plaintiff must show that Pinetree understood Plaintiff was entitled to certain knowledge[4] and then deliberately concealed it from her. This showing is impossible when the most plausible inference is that the

---

[4] Plaintiff has not established that she was entitled to know about termite and wood damage independent of its alleged impact on the Sliding Door. The Opposition itself acknowledges some uncertainty about whether the area above the Sliding Door was within Plaintiff's possession. *See* Opp. (ECF No. 31, at 3) ("The negligence claims are in the alternative based on whether the defect is deemed to be in the control of Ms. Ghee or Pinetree.") If counsel is concerned about allocating proper control, then it is plausible that a maintenance worker, without the benefit of a law degree, would be unsure whether discussing the repairs with a tenant was necessary. A landlord is not required to disclose defects within its control unless the defects may foreseeably cause harm. *See Jones v. Kidd*, 63 Va. Cir. 432, 434 (Norfolk 2003) (explaining general common law).

work order recorded the only damage that was present and visible, which was chipping paint. Am. Compl. ¶ 32. But even if termite damage was visible, the worker may not have noticed because he was busy, addressing multiple separate issues on May 31, 2022. *See* Am. Compl. ¶¶ 30-33 ("[T]he unit was the subject of several work orders."). The most incompetent maintenance worker in all of Virginia could not defraud a tenant through mere incompetence. But even if the Court allows these successive inferences, a worker who knowingly painted over visible termite damage would also have known that Plaintiff might (and likely would) open the Sliding Door upon taking possession, thus obviating any practical need to inform her of the alleged defect. As Professors Prosser and Keeton observed, there "is of course no duty to disclose conditions . . . which are so open and obvious that [the tenant] cannot reasonably be expected to fail to discover them when he takes possession[.]" Prosser & Keeton on Torts, § 63, at 436 (5th ed. 1984) The court should give no credence to Plaintiff's assertion that Pinetree intended to deceive her.

### 4. *Plaintiff's Reliance on Pinetree for an Operational Sliding Door Was Categorically Unreasonable When She Could Have Tested It.*

Plaintiff does not produce a single authority in her opposition supporting her broad-brush assertion of entitlement from Pinetree to the general safety of the apartment, despite Pinetree indicating that such indiscriminate reliance would create a fraud claim out of every unsuccessful repair. *Compare* Def.'s Mem. (ECF No. 27, at 18), *with* Opp. (ECF No. 31, at 8-9). The well-established law is that "a landlord is not an insurer of his tenant's safety." *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 157 (1974) (citing *Wagman v. Boccheciampe*, 206 Va. 412, 415-16 (1965); *Revell v. Deegan*, 192 Va. 428, 433-35 (1951)). Without any entitlement to rely on Pinetree, Plaintiff is subject to the general principle of *caveat emptor. Cf. Kuczmanski v. Gill*, 225 Va. 367, 371 (1983) ("Under the doctrine of caveat emptor, the Kuczmanskis were not entitled to rely on this statement instead of ascertaining the true facts for themselves."); *Lepera v. Fulson*, 83 Ohio

14

App. 3d 17, 25 (Ohio Ct. App. 1992) (discussing *Noth v. Wynn*, 59 Ohio App. 3d 65, 66 (1988), in which "caveat emptor barred the purchaser's claim for fraudulent inducement to purchase real estate because the purchaser was not entitled to rely on the seller's knowing and material misrepresentations regarding matters of public record"). To the extent Plaintiff relied upon Defendant for general safety, she was not entitled to do so.

Tellingly, Plaintiff's arguments do not improve even if such nonspecific reliance is permissible. In response to the straightforward observation that she could have checked the Sliding Door, Plaintiff redirects the Court's attention to the termite damage, stating she had "no information about what was happening behind the sheetrock" and her discovery of the Sliding Door's immobility is "irrelevant." Opp. (ECF No. 31, at 9). But how can her discovery be irrelevant? She revealed the precise problem that she claims injured her. Am. Compl. ¶ 87 (defining the latent defect as "namely, termites that were causing the supporting wooden framing behind the sheetrock to deteriorate and deflect, thereby interfering with the operation of the Sliding Glass Door" (emphasis added)). Nothing could be more relevant to the reliance requirement than her easy discovery of the alleged defect in July 2023. *Schryer v. VBR*, 25 Va. Cir. 464, 467 (Fairfax 1991) (finding the plaintiff's reliance unreasonable because the terms of the contract were equally available to both parties). By July 2023, she knew the Sliding Door would not move,[5] and the failure of the Sliding Door during the fire caused Plaintiff's egress claims. *See* Am. Compl. ¶¶ 55, 66-68. Plaintiff cannot escape the fact that her claim is barred by her lack of reasonable reliance.

---

[5] The opposition muddies when the Sliding Door became immobile, theorizing that the Sliding Door could still move (just not easily) in May 2022, although Plaintiff has no facts on this. *See* Opp. (ECF No. 31, at 9). This point is irrelevant; whether the Sliding Door could not move easily or not at all in May 2022, Plaintiff's reliance is equally unreasonable. Plaintiff had a daily opportunity, starting the day after the maintenance work was performed, to ascertain the Sliding Door's current and/or deteriorating condition. For the same reason, her claims that she could not have known the framing "would deteriorate more and more" are not persuasive. *Id.* at 10.

In sum, there are myriad reasons to exclude Plaintiff's common law fraud claim. The Amended Complaint does not show an iota of deception on Pinetree's part because:

- Plaintiff "could have known when she took possession of the apartment . . . that the door did not move easily along its track." Pl.'s Opp. (ECF No. 31, at 9).

- It is neither reasonable nor fair to infer that termite holes existed on the date certain of May 31, 2022.

- Pinetree did not intend (and indeed, was not capable of) concealing an inoperable Sliding Door from the Plaintiff.

- Neither the Sliding Door nor the termite damage was a material Lease condition.

- Plaintiff was not entitled to rely on Pinetree for the general safety of the apartment.

- Reliance on Pinetree for the operation of the Sliding Door was unreasonable when Plaintiff could have checked its function at any time.

A common law fraud claim requires substantially more than the allegations in the Amended Complaint, particularly under the heightened pleading requirements for fraud. As detailed here and in Pinetree's opening brief, there are obvious alternative explanations refuting Plaintiff's litany of deductions. *See* Def.'s Mem. (ECF No. 27, at 19-20). For all these reasons, the Court should dismiss this claim.

**B.    The Court Should Dismiss Plaintiff's Concealment of a Latent Defect Claim.**

For the same reasons discussed above, Plaintiff misses the mark in her latent defect claim. The parties agree on the basic legal principle (that a landlord may be liable for concealment of a material defect that causes injury) but the agreement ends there. *See* Opp. (ECF No. 31, at 9-10). In defining latency, Plaintiff again confuses the need for notice with an invented need to understand origin. *See* Opp. (ECF No. 31, at 10) ("Plaintiff never learned, and could not have learned, that water and termites had caused the wooden trim supporting the sliding glass door to deteriorate[.]"). Notice is an uncomplicated legal standard with a low bar. For example, property owners become

16

liable under the theory of constructive notice when "an ordinarily prudent person, given the fact and circumstances . . . , knew or should have known, [or] could have foreseen the <u>risk of danger</u> resulting from such circumstances[.]" *Winn-Dixie Stores, Inc. v. Parker*, 240 Va. 180, 183 (1990) (quoting *Memco Stores, Inc. v. Yeatman*, 232 Va. 50 (1986)) (emphasis added). Notice is driven entirely by the perception of risk, not causation. *See, e.g.*, *Neville v. Value City Dep't Stores, LLC*, No. 07-cv-53-DRH, 2008 U.S. Dist. LEXIS 55289, *18 (S.D. Ill. 2008) (discussing whether a reasonable person "would notice the potentially dangerous condition and recognize the risk"). If a tenant could adequately perceive the risk, then the tenant possessed the requisite notice.

The opposition devotes significant space to elucidating the dangers that the Sliding Door posed to Plaintiff and her family during the fire. *See* Opp. (ECF No. 31, at 1-4). Plaintiff's argument only reinforces Defendant's point that the hazard is so obvious that Plaintiff can be charged with perceiving the risk as a matter of law, long before the fire. *See Howell v. Clyde*, 533 Pa. 151, 158 n.9 (Pa. 1993). Plaintiff lived in the apartment for 22 months and slept in the bedroom with the Sliding Door. Am. Compl. ¶ 62. She learned in July 2023 that the Sliding Door did not work, and she acknowledged that she "could have known when she took possession of the apartment . . . that the door did not move easily along its track." Pl.'s Opp. (ECF No. 31, at 9). Plaintiff had all the requisite notice required under the law.

Plaintiff unnecessarily complicates the definition of a reasonable investigation by arguing that a "reasonable person would not have discovered the defect between the walls[.]" *Id.* at 10. This is true; no party, even Pinetree, would open the walls without a reason, but that is not the issue. A reasonable inspection would show that the Sliding Door constituted a safety risk. *See John Aragona Enterprises, Inc. v. Miller*, 213 Va. 298, 299-300 (1972). Nowhere does the opposition explain why this simple, common-sense fact does not sink Plaintiff's case. The opposition diverts

attention away from the critical portion of the alleged defect that was pled with clarity in the Amended Complaint: that termites "were causing the supporting wooden framing behind the sheetrock to deteriorate and deflect, <u>thereby interfering with the operation of the Sliding Glass Door</u>." Am. Compl. ¶ 87 (emphasis added). This is a case about the operation of the Sliding Door. The alleged immobile Sliding Door is the defect that allegedly caused Plaintiff's injuries. *See* Am. Compl. ¶¶ 66-67 (asserting that the door "would not slide" and she "could not get the door to move"). And any defect to the Sliding Door is patent, not latent. The Court should dismiss this claim because it does not reflect the facts of the Amended Complaint.

**C.    The Court Should Dismiss Any Negligent Repair Claim.**

Defendant's motion and memorandum asked this Court to dismiss any claim for negligent repair "in order to clarify and narrow the scope of dispute." Def.'s Mem. (ECF No. 27, at 23-24). Plaintiff did not address this claim in her opposition. *See* Opp. (ECF No. 31). Thus, this is a resolved issue, and the Court should dismiss any claim for negligent repair.

**D.    The Court Should Dismiss Plaintiff's Punitive Damages Claim.**

Pinetree has moved to dismiss Plaintiff's punitive damages claim as to all counts. Plaintiff's allegations do not establish any willful or wanton negligence, which "differs in kind" from gross negligence. *Infant C. v. Boy Scouts of America, Inc.*, 239 Va. 572, 582 (Va. 1990). Plaintiff argues that it is too early for the Court to decide because "conscious disregard is a question for the jury." Opp. (ECF No. 31, at 11). While generally true, the Court may dismiss punitive damages claims when there are simply no facts within the complaint that support their imposition. *See Wallace v. Farah*, 72 Va. Cir. 37, 38 (Stafford 2006) ("The Court finds that the pleading, on its face, fails to allege willful or wanton negligence. . . [T]he claim for punitive damages is stricken, without leave to amend."); *Stivers v. Lake Holiday Country Club, Inc.*, 104 Va. Cir. 417 (Frederick 2012) ("[T]he Court finds as a matter of law that the Plaintiffs fail to allege sufficient facts that

18

would support a claim for punitive damages based on willful and wanton negligence."). Plaintiff's caselaw shows that a court may remove a claim for punitive damages "when it is conclusively apparent that the plaintiff has proven no cause of action against the defendant." *Curtis v. Highfill*, 298 Va. 499, 506-07 (2020) (emphasis added); *see also Booth v. Robertson*, 236 Va. 269, 274 (1988) (Russell, J., dissenting) ("[W]e do not base jury instructions upon speculation . . . The award of punitive damages rests entirely on speculation."). The Amended Complaint does not establish punitive damages as a matter of law.

As discussed throughout Defendant's opening and this reply brief, Plaintiff has not pled facts showing Pinetree intentionally deceived her or was even capable of deceiving her. Indeed, the only competently pled factual allegation is that Pinetree did not repair a Sliding Door. Pinetree did not make the damage worse: painting would only have allowed natural deterioration to proceed, not escalated or added to its danger. The Sliding Door was not the apartment's only exit: Plaintiff and her surviving sons exited the front door, and the other bedroom had a sliding door. *See* Am. Comp. ¶¶ 21, 64, 69, 72. The fire was not imminent: over 22 months elapsed before the fire, and Pinetree did not cause the fire. Absent the allegations of painting over termite damage, which are speculative and unreasonable, there are no allegations that Pinetree's actions are even facially worthy of enhanced damages. Nothing in the Amended Complaint supports that Pinetree acted with willful and wanton negligence giving rise to punitive damages.

Lastly, if the Court finds that Plaintiff has not adequately pled the first two counts, then none of the facts she relies upon for punitive damages as to Count 3 remain because the court has already found there is no fraud or concealment. Count 3 is also "predicated upon the defect being in an area within Pinetree's control." Opp. (ECF No. 31, at 4). All factual predicates regarding concealment are thus irrelevant to the cause of action and to the punitive damages claim. As

19

Virginia enforces a high bar against plaintiffs seeking to transform simple negligence claims into punitive damages actions, and the Amended Complaint does not meet it, this Court should dismiss Plaintiff's claims for punitive damages as to all counts.

### III.    CONCLUSION

For the foregoing reasons, the reasons stated in Defendant's opening briefing (ECF Nos. 26-27), and any reasons stated at any hearing on this matter, the defendant, Pinetree Apartments, LLC, by counsel, respectfully requests this Court partially dismiss Plaintiff's Amended Complaint related to any claim for common law fraud, concealment of a latent defect, negligent repair, willful and wanton negligence, and punitive damages with prejudice, and order such other and further relief as the Court may deem appropriate.

This 25th Day of April, 2025.

Respectfully submitted,

**PINETREE APARTMENTS, LLC**

By: ___*/s/ Joseph P. Moriarty*_____
Joseph P. Moriarty (VSB No. 68465)
Kevin M. Kennedy (VSB No. 75071)
Bryn L. Clegg (VSB No. 96923)
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510-2243
Telephone: (757) 628-5500
jmoriarty@wilsav.com
kkennedy@wilsav.com
bclegg@wilsav.com
*Counsel for Defendant Pinetree Apartments, LLC*

20

## <u>CERTIFICATION</u>

I hereby certify that on this 25th day of April, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Charles H Cuthbert, Jr. (VSB No. 14519)
Richard M. Cuthbert (VSB No. 82025)
Cuthbert Law Offices, P.C.
220 North Sycamore Street
Petersburg, VA 23803-3228
Telephone:  804-733-3100
Facsimile:  804-732-4658
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com
*Counsel for Plaintiff*

Mark J. Krudys (VSB No. 30718)
Daniel Guinnane Zemel (VSB No. 95073)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, VA 23219
Telephone:  804-774-7950
Facsimile:  804-381-4458
mkrudys@krudys.com
dzemel@krudys.com
*Counsel for Plaintiff*

*/s/ Joseph P. Moriarty*
Joseph P. Moriarty (VSB No. 68465)
Kevin M. Kennedy (VSB No. 75701)
Bryn L. Clegg (VSB No. 96923)
WILLCOX SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510-2243
Telephone: (757) 628-5500
Facsimile: (757) 628-5566
jmoriarty@wilsav.com
kkennedy@wilsav.com
bclegg@wilsav.com
*Counsel for Defendant*
*Pinetree Apartments, LLC*

21

I-2905615.1