IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NYEISHA S. GHEE,

     Plaintiff,

v.                                   Civil Action No.: 3:25-cv-17-RCY

PINETREE APARTMENTS, LLC,

     Defendant.

**PINETREE APARTMENTS, LLC'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

     Pinetree Apartments, LLC ("Pinetree" or "Defendant"), by counsel, hereby submits this Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint (ECF No. 53).

## I.    <u>INTRODUCTION</u>

     Plaintiff's now fourth attempt to plead concealment claims, regardless of how framed (common law fraud, fraudulent concealment of a latent defect, or other causes of action pled now or in future amendments), requires that the alleged unsafe condition was not something Plaintiff had the means of knowing about by ordinary inspection. Adding improper defendants does not alter the simple fact: the operability of the sliding door in her apartment's main bedroom ("Sliding Door") could not be hidden, and Plaintiff concedes she did try and had actual notice of the alleged unsafe condition several months before the fire. Plaintiff admits she discovered all by herself that she could not open the Sliding Door in July 2023, which is 14 months after Pinetree painted the wood trim, and seven months before the fire. Something cannot be both readily discoverable by Plaintiff before the damages occurred, yet at the same time be a latent defect that the landlord concealed from Plaintiff. The discovery of the underlying cause of the unsafe condition (whether that be wood rot damage inside the wall, as alleged by Plaintiff, or some other unknown cause,

because the Sliding Door was destroyed in the fire) is unnecessary to place Plaintiff on notice that the Sliding Door's immobility posed a safety risk. Notice of the unsafe condition eliminated any concealment claim, period.

The additional defendants should not be joined. Plaintiff cannot state a personally viable claim against PestNow of Central Virginia, LLC ("PestNow"), a termite contractor, for work performed in 2019 – three years before her tenancy – because she was not an intended beneficiary of that work. Her claim is also non-actionable nonfeasance because she only alleges that PestNow did not apply the termiticide broadly enough to kill the 2019 infestation, which is an extremely speculative claim (as to both Pinetree and PestNow). The passage of time after PestNow's work in 2019, PestNow's clean inspection of Building G in 2020, the lack of subsequent termites reported in Building G, and Plaintiff's failure to report termites during her 21-month tenancy before the fire, cut off any possible claim related to the 2019 termite extermination. Further, Plaintiff does not even allege when the Sliding Door's wood rot began, because the date is unknown, and whether there was any subsequent progression of wood rot is likewise unknown. In fact, the alleged damaged wood inside the wall above the Sliding Door was first discovered during a post-fire inspection. The wood rot found after the fire could have existed prior to Pinetree's purchase of the apartment complex in 2011. Plaintiff's negligence *per se* claim under Va. Code § 3.2-3939(B) is equally deficient because she does not allege injury from the actual termiticide, and the fire occurred five years after the termiticide was sprayed. Lastly, PestNow is not a necessary party because Plaintiff can resolve her claim against Pinetree without PestNow's presence, and because any proven wrongful actions by PestNow would be imputed to Pinetree as the owner.

Plaintiff's actions against the individual employees, Nadra Yohannes, Ricky McConnell, and Alvin Peebles (the "Individuals"), also cannot lie because the gravamen of Plaintiff's claim is

failure to inspect, repair, and disclose apartment conditions (e.g., failure to act, not affirmative wrongdoing). Virginia law is settled: nonfeasance is not actionable against individual employees. Fraud is also impossible because the Individuals could not have concealed an inoperable Sliding Door. The only reason to add the Individuals is to defeat diversity.

Plaintiff has also named several defendants whose addition would not destroy diversity: Beachwold Holdings, LLC; Beachwold Residential, LLC; and Beachwold Holdings, LP (the "Affiliated Entities") and the property manager, South Oxford Management, LLC ("South Oxford"). These entities should not be added because Plaintiff cannot plead fraud against them. None of the Affiliated Entities knew about any alleged issues in Plaintiff's unit, and Plaintiff does not allege, nor could she, that the alleged July 2023 request for repairs to the Sliding Door in Unit G-8 was ever communicated higher than the ground-level maintenance at Pinetree. An action against the Affiliated Entities is also not ripe because veil piercing depends on first establishing Pinetree's liability.

The equities also overwhelmingly favor denial. This case presents a textbook example of forum manipulation through strategic post-removal joinder designed to defeat diversity jurisdiction. After over a year of federal litigation, extensive discovery producing thousands of documents, multiple depositions (including PestNow's corporate representative and Pinetree's corporate representative), and substantial motion practice, Plaintiff now seeks to force remand to state court. Granting this motion would reward Plaintiff's dilatory tactics, impose substantial prejudice on Defendant through loss of its federal forum and duplicative litigation costs, and add parties whose joinder serves no purpose other than jurisdictional destruction. Pinetree also has a legally recognized interest in retaining its right to choose federal jurisdiction. The Court should

deny Plaintiff's Motion for Leave to File Third Amended Complaint and preserve federal jurisdiction over this action.

## II.    PROCEDURAL BACKGROUND

On or about December 19, 2024, Plaintiff filed a personal injury action in Petersburg Circuit Court. On January 13, 2025, Pinetree properly removed the action to this Court based on diversity jurisdiction. Pinetree partially moved to dismiss the Complaint. (ECF No. 6). On February 21, 2025, Plaintiff filed an unopposed motion for leave to amend the Complaint, (ECF No. 21), and upon entry, Pinetree partially moved to dismiss Plaintiff's First Amended Complaint, (ECF No. 26). On October 6, 2025, Plaintiff filed a motion for leave to again amend the Complaint, (ECF No. 37), which Pinetree opposed as futile, (ECF No. 49). The only named defendant in Plaintiff's proposed Second Amended Complaint was Pinetree. (ECF No. 38-1).

On February 6, 2026, Plaintiff withdrew her pending motion on the Second Amended Complaint, (ECF No. 51), and filed the instant motion on her Third Amended Complaint, (ECF No. 54). Her request includes leave to add nine new defendants – PestNow, the Individuals, the Affiliated Entities, and South Oxford – several who are citizens of Virginia and thus non-diverse from Plaintiff. At the same time, Plaintiff filed a nearly <u>identical</u> Complaint against Pinetree and the additional defendants in Petersburg Circuit Court, creating the oddity of a pending state-court action while this federal action is pending. *See* Pl.'s Mot. (ECF No. 53, at 8) (admitting this was "uncommon"). Plaintiff, as the administrator of the estate, also filed a related wrongful death action on behalf of her child against Pinetree and the new defendants in state court for the same events.[1] The issues raised in this opposition are similarly applicable to the wrongful death action.

---

[1] Not only did Plaintiff file the state-court action, but Plaintiff served all defendants on or before February 13, 2026, making Pinetree simultaneously defend in both federal and state court.

### III.    LEGAL STANDARD – JOINDER OF NON-DIVERSE PARTIES

The standard for adding parties whose joinder would destroy diversity is governed by 28 U.S.C. § 1447, which grants the Court discretion to deny or permit joinder and remand. This is a "flexible, broad discretionary approach" that is "committed to the sound discretion of the district court." *Mayes v. Rapoport*, 198 F.3d 457, 462-63 (4th Cir. 1999). A court may consider "all relevant factors," such as "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* at 462 (quoting *Gum v. GE*, 5 F. Supp. 2d 412 (S.D. W. Va. 1998)).

One court observed, "there are a great number of obstacles to obtaining joinder of a non-diverse party for the purpose of defeating jurisdiction." *Martin v. Leacock*, No. 1:05cv218, 2005 U.S. Dist. LEXIS 52826, *4 (W.D.N.C. July 5, 2005). The dynamics include weighing the diverse defendant's "interest in retaining the federal forum." *E.g.*, *Gum*, 5 F. Supp. 2d at 414 ("[T]he removal statutes are predicated on giving the diverse defendants a choice of a state or federal forum." (quoting citation omitted)). Established precedent from this Court encourages "careful scrutiny of attempts at post-removal, non-diverse joinder [to] protect[] the diverse defendant's interest in keeping the action in federal court." *Mayes*, 98 F.3d at 465 (quoting citation omitted).

It is not necessary to prove fraudulent joinder, but if there is fraudulent joinder, "that fact should be a factor – and perhaps the dispositive factor – that the court considers in deciding whether a plaintiff may join a nondiverse defendant." *Id.* at 463. Fraudulent joinder occurs when the plaintiff cannot state a claim against the defendant. *Id.* at 464. When considering if joinder is fraudulent, "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Id.* (citation omitted).

## IV.    LEGAL STANDARD – LEAVE TO AMEND

Without written consent, Plaintiff can only amend her pleadings with the court's leave. *See* Fed. R. Civ. P. 15(a)(2). Appropriate justifications for denial include prejudice, bad faith, or futility. *See, e.g.*, *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 505 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A court provides a similar analysis as a Rule 12(b)(6) motion when determining futility. *See United States ex rel. Carter v. Halliburton Co.*, 144 F. Supp. 3d 869, 879 (E.D. Va. Nov. 12, 2015) (citation omitted). A request to amend a complaint that still fails to state a claim should be denied as futile. *See Letendre v. Parallon Enters., LLC*, No. 3:24CV184, 2025 U.S. Dist. LEXIS 59205, *43 (E.D. Va. Mar. 28, 2025) (citation omitted).

## V.    ARGUMENT

### A.  This Court Should Deny Joinder of the Non-Diverse Parties.

Plaintiff seeks to join several non-diverse defendants to this matter: PestNow and the Individuals. Plaintiff's clear purpose in adding these defendants is to defeat federal jurisdiction. *See Mayes v. Rapoport*, 198 F.3d at 462. Plaintiff has demonstrated resistance to Pinetree for exercising its right to the federal forum since initiation, including by pressing for extraneous information concerning Pinetree's members after Pinetree certified the diversity of same, (*see, e.g.*, ECF No. 10), and non-suiting the companion case, (*see* Case No. 3:25-cv-23). Plaintiff has waited until her *third* request to amend – over a year after her original Complaint[2] – and after Pinetree has filed multiple motions to dismiss and borne the expense of producing thousands of pages in discovery and participating in multiple depositions, including a Rule 30(b)(6) corporate deposition. The addition of multiple defendants is a "kitchen sink" approach suggesting an attempt to find any

---

[2] Plaintiff must conduct due diligence before filing suit. *See* Va. Code § 8.01-271.1. Pinetree did not turn down any pre-litigation request for documents, and Plaintiff did not disclose her liability theory before filing suit.

non-diverse party to force remand. None would be proper defendants, and the Court should deny joinder.

### 1. The Court Should Refuse Plaintiff's Request to Add PestNow.

The Court should deny Plaintiff's request to add PestNow because Plaintiff does not have her own action against PestNow. *See Mayes*, 198 F.3d at 464. While Pinetree (or South Oxford, the property manager) may have a future claim against PestNow, Plaintiff does not. Plaintiff was not even a tenant when PestNow applied the termiticide to Building G in 2019. PestNow's alleged failure to properly treat the termites in 2019 does not give her a right of action, either under general tort law or by statute. Plaintiff has also been dilatory in waiting until her *third request* to amend to add PestNow – months after learning PestNow's identity in May 2025 and even after deposing PestNow's Rule 30(b)(6) corporate representative in November 2025. Plaintiff will not be injured if her request is denied because she can seek recovery against Pinetree, who is not permitted under Virginia law to delegate its responsibilities to PestNow (to the extent such are proven), and Pinetree's potential claim against PestNow does not expire until two years after judgment.

### a. *Plaintiff Cannot State a Claim Against PestNow Because PestNow Did Not Separately Owe Her Tort Duties.*

Plaintiff cannot add PestNow because a tenant like Plaintiff does not have her own personal right of action for a contractor's work *before* Plaintiff assumed tenancy. In June 2022, when Plaintiff took possession of Unit G-8, only the property owner had a legally cognizable duty. *See, e.g.*, *Steward v. Holland Family Props., LLC*, 284 Va. 282, 287 (2012). Plaintiff makes just two allegations that pertain to PestNow's work *on Building G*, in which Plaintiff's unit was located:

- "PestNow technicians treated the exterior perimeter of buildings B, C, G, J, K, O and P on April 4-5, 2019. PestNow … **failed** to follow the termiticide label instructions by **not inspecting** the building's interiors when treating their exteriors, and by **failing** to drill holes in the abutting concrete slabs at the perimeter[.]" 3d Compl. ¶ 61 (emphasis added).

- "[O]n May 6, 2020, a technician performed an exterior termite reinspection of Building G. The invoice notes that 'Pinetree staff is aware that if an interior inspection is needed that they are to contact us. The annual inspection for termites is only an exterior inspection.'" 3d Compl. ¶ 62.

Plaintiff ties her damages directly to PestNow's alleged failure to apply termiticide broadly enough to eradicate the termites, baldly speculating this allowed termites to continue destroying the unit's wall. 3d Compl. ¶ 68. She cannot recover for PestNow's failure to act over three years before her tenancy.

A tenant who did not take occupancy until years after the work is not a third-party beneficiary. *Cf. Valley Landscape Co. v. Rolland*, 218 Va. 257 (1977) (noting the "third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him" at the time of contracting (citation omitted)). PestNow's records state its inspections are a snapshot in time. *See* **Exhibit A**. In an absence of privity (or even temporal proximity), "[c]ommon law does not require every person to consider the welfare of mankind in general, particularly when abiding by limited contract terms[.]" *Cawlo v. Rose Hill Reserve Homeowners Ass'n*, 106 Va. Cir. 235, 240 (2020). Without the contract – which PestNow had with <u>Pinetree</u>, not with Plaintiff – PestNow had no duty to perform. *See Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255 (2019) ("No matter the alleged harm, tort liability cannot be imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required him to do it anyway[.]"). Paragraphs 61-62 make it clear that Plaintiff's alleged damage is from PestNow's failure to apply termiticides broadly. *See supra* (emphasis above). As such, she claims a "lack of performance of something that would have prevented harm[.]" *Tingler*, 834 S.E.2d at 256 (citation omitted). Plaintiff cannot bring this nonfeasance claim against PestNow on her own behalf.

Plaintiff's claim under Va. Code § 3.2-3939(B) is flawed for the same reason, as the Statute reads: "It is unlawful for any person to use or cause to be used any pesticide in a manner

inconsistent with its labeling or regulations of the Board[.]" Va. Code § 3.2-3939(B). Plaintiff asserts that she "belonged to the class of persons for whose benefit" this Code was enacted, but this is not provided from its plain reading. *See id.* In *Kaltman v. All Am. Pest Control, Inc.*, the Supreme Court of Virginia held that the protected class under this statute was "consumers who allegedly were injured as a result of improper use of a pesticide[.]" 281 Va. 483, 498 (2011). The Kaltmans hired All American Pest Control, Inc., who treated the Kaltmans' home with Orthene pesticide (unlicensed for residential use), and the Kaltmans sustained injuries from the noxious fumes. *Id.* at 487-88. Unlike the Kaltmans, Plaintiff was not even in residence when PestNow performed the work, and Plaintiff does not allege personal injuries from the termiticide. In fact, unlike in *Kaltman*, Plaintiff alleges termiticide was the proper chemical, but that it was not applied broadly enough to achieve its purpose. *See* 3d Compl. ¶¶ 61-62. As her proposed claim does not stem from the actual chemical applied, Plaintiff is not within the class of persons that Va. Code § 3.2-3939(B) was intended to benefit.

Plaintiff's claims also fail for being remote and speculative, which is confirmed from the discovery. *See Mayes*, 198 F.3d at 464. PestNow testified that if a PestNow record just says "termite" (which is all the records say), it cannot be established that it was an eastern subterranean termite. PestNow Depo. 141:7-143:18 (**Exhibit B**). There is also no way to know the quantity of termites or the size of the affected area in 2019. *See id.* 141:7-22. PestNow's record on Building G does not say that the termites were near Plaintiff's unit (G-8), so Plaintiff cannot even establish that PestNow found termites near her apartment in 2019. *See* Ex. A (only finding "live termites on exterior foundation"). Further, because there were no termites found during PestNow's recheck in 2020, there is no evidence showing the termiticide did not do its job:

Q: [W]hen your company back in April 2019 treats Building G and then comes back and does the reinspection in 2020 and finds no signs of exterior termites, is that a sign to you that your prior treatment had worked and killed the termites in the area?

A: I would – I would say yes. If the previous inspection reported live, active termites and a year later we come out and find nothing, then I would say the treatment was doing what it was supposed to do.

*Id.* at 162:16-163:1 (Ex. B). PestNow testified that when performing the re-examination, the technician would be looking at ground-floor doors, exactly like the Sliding Door. *Id.* 148:13-149:16. Plaintiff's claim of ongoing termite damage from 2019 to 2024 is too speculative to stand. Moreover, Plaintiff lived in the unit for 21 months before the fire, and never reported any bugs, let alone termites.[3] These facts are not just inconvenient to Plaintiff's claim against PestNow, but fatal to her claims that the same colony of termites was inside the wall after PestNow completed its work in 2019.

### b. *Plaintiff Was Dilatory in Adding PestNow as a Defendant.*

Another factor is whether Plaintiff could have discovered PestNow's identity prior to filing the initial complaint, as well as whether she was dilatory in adding PestNow. *See O'Neal v. Speed Mining, LLC*, No. 5:10-cv-446, 2010 U.S. Dist. LEXIS 105847, *6-7 (S.D. W. Va. Oct. 4, 2010). Plaintiff forfeited her opportunity to discover PestNow's identity pre-litigation by failing to request this information, even though Pinetree never denied or withheld any pre-litigation record requests. *See* Def.'s Mem. (ECF No. 32, at 8-9) (describing timeline in which Plaintiff did not fulfill her

---

[3] Plaintiff never pled in the original Complaint that she reported termites. The First Amended Complaint claims Plaintiff's mother reported "flying ants," (ECF No. 24, at 10), but she then withdrew this allegation, (ECF No. 34). The Second Amended Complaint averred that they saw flying ants, but without an allegation of reporting. (ECF No. 38-1, at 10). The allegation of even seeing ants is now conspicuously absent from the Third Amended Complaint. Plaintiff's shotgun pleadings and need to change facts across multiple complaints creates undue prejudice to Defendant and the Court. While Rule 15 allows amendments to correct errors, repeatedly changing facts raises serious questions of credibility and potential bad faith.

obligation to request all pre-litigation discovery). Before discovery began, on May 21, 2025, the defense provided Plaintiff with PestNow's termite bond. Pinetree again identified PestNow in its initial disclosures on June 2, 2025, and provided documentation in its initial production on July 9, 2025. Notably, Plaintiff filed a <u>second</u> request to amend her Complaint on October 6, 2025[4] – *over five months after discovering PestNow's identity* – but did not name PestNow as a defendant.

Plaintiff's delay is further highlighted by the discovery process. By Plaintiff's own admission, she has been conducting discovery for almost a year and has received "thousands of pages of documents" and taken depositions. *See* (ECF No. 53, at 1). Her approach to PestNow has been equally delayed. Plaintiff issued a subpoena to PestNow on June 2, 2025, and a Rule 30(b)(6) deposition notice on July 17, 2025. PestNow's counsel asked on September 2, 2025, whether Plaintiff intended to sue PestNow, to which Plaintiff answered negatively. *See* **Exhibit C.** PestNow's representative was then deposed on November 6, 2025 – three months before Plaintiff moved to add PestNow as a defendant. Plaintiff's actions in continually delaying adding PestNow despite significant discovery and prior amendments should weigh against joinder.

### c. *Plaintiff Will Not Be Injured if PestNow Is Not a Defendant.*

Plaintiff will not be injured if PestNow is not a defendant. PestNow's addition is not necessary for Plaintiff to seek relief against Pinetree under Rule 19. *See* Fed. R. Civ. P. 19(a); Moore's Manual Federal Practice and Procedure § 14.04 (2026); *SS Richmond LLC v. Harrison*, No. 3:22cv405, 2023 U.S. Dist. LEXIS 20016 (E.D. Va. Jan. 9, 2023) (clarifying "[c]omplete relief refers to relief as between persons already parties, not between a party and an absent person whose

---

[4] Pinetree predicted that Plaintiff might request further amendment, to which Plaintiff responded that Pinetree "offer[ed] no justification for claiming that further motions to amend are probable" (ECF No. 50, at 4) – and yet here is a third request to amend four months later. There is no expectation that this will be Plaintiff's last attempt to amend, if not nipped in the bud by the Court.

joiner is sought" (quoting *United States v. Arlington Cty.*, 669 F.2d 925, 929 (4th Cir. 1982)). Thus, Plaintiff's claims against Pinetree do not compel adding PestNow as a defendant.

Any alleged wrongdoing by PestNow for improper termiticide would be imputed to Pinetree. Landlords cannot delegate their duties by hiring third-party contractors. *See Love v. Schmidt*, 239 Va. 357, 360-61 (1990) ("[I]f a duty to maintain a premises in a safe condition is imposed by contract or by law, it cannot be delegated to an independent contractor."); *Boland v. Rivanna Ptnrs.*, 69 Va Cir. 308, 310 (Charlottesville 2005) ("It is settled law that a landlord cannot delegate its common law duty[.]"). To the extent Plaintiff meets her burden of proof, Plaintiff can seek relief from Pinetree without adding PestNow, and thus cannot be injured by failure to add the termite company.

### 2. The Court Should Refuse Plaintiff's Request to Add the Individuals.

The Court should deny Plaintiff's request to add the Individuals. Yohannes was the regional manager over the Pinetree Apartments from May 2019 to January 2024 (before the fire). 3d Compl. ¶ 22. McConnell and Peebles were maintenance personnel, from May 2022 to October 2023, and January 2020 to March 2022, respectively. *See* 3d Compl. ¶ 23. The Court should deny Plaintiff's request because none of the Individuals caused water and/or termites to enter Unit G-8, and because Plaintiff's clear purpose is to defeat diversity jurisdiction. As discussed below, *the most* they allegedly did was fail to adequately inspect or repair the unit, which is intrinsically nonfeasance for which they are not individually subject to suit. Even Plaintiff's creative allegations, knowing this standard to state a claim against and individual employee, cannot transform such monitoring or inspection into malfeasance. Their actions are also imputed to Pinetree, from whom Plaintiff can seek recovery, and Plaintiff is not injured by their absence.

**a. *Individual Employees Are Not Appropriately Named Because Their Alleged Conduct Was Nonfeasance, Not Malfeasance, and They Did Not Cause the Alleged Defect.***

This Court should refuse Plaintiff's request to add the Individuals because they did not cause the alleged defect. The allegations against the Individuals are sparse:

| EMPLOYEE | ALLEGATIONS |
|---|---|
| Nadra Yohannes | Yohannes was emailed about obtaining a termite inspection for Pinetree in 2020 (which was negative). *See* 3d Compl. ¶ 63 & n.9.<br><br>Yohannes was "informed" of resident complaints "which she failed to address adequately." *See* 3d Compl. ¶ 133.[5]<br><br>Yohannes "purposefully withheld the cash required to eliminate the resulting damage and [was] complicit in causing the fraudulent conduct of McConnell and Peebles." *See* 3d Compl. ¶ 140. |
| Ricky McConnell | McConnell was "aware of water intruding into the walls around … sliding glass doors" and was "directed to spend little annually[.]" *See* 3d Compl. ¶ 133.<br><br>McConnell "painted over termite holes and moisture-laden wood to hide the water damage and termite infestation and allegedly greased the sliding glass doors to mask the out-of-square condition[.]" *See* 3d Compl. ¶ 133. |
| Alvin Peebles | Plaintiff alleges the same facts against Peebles as she does against McConnell. However, Peebles was <u>no longer employed</u> when Unit G-8 was repaired in May 2022. *See* (**Exhibit D**). More to the point, there is a video of the work performed, with McConnell's voice on it. There is no remaining logical dispute that it was not McConnell who performed the work. *See* McConnell Depo. 96:21-22 ("I did the work. I mean, that's obviously my voice.") (**Exhibit E**); *see also* **Exhibit F** (PINETREE00615-618). |

These alleged inactions, within the scope of employment, only go to nonfeasance rather than malfeasance, and thus should not subject them to individual suit.

Virginia precedent establishes clear boundaries for when employees face personal tort liability. "[A]n employee may be liable for his own misfeasance (i.e. performance of an affirmative act done improperly), but not for his own nonfeasance (i.e., omission to do some act which ought

---

[5] Even though elsewhere in the Complaint Plaintiff references specific communications about which Yohannes was "informed," none of these communications pertained to Plaintiff's unit.

I-3029447.1

to be performed).” *Harris v. Morrison*, 32 Va. Cir. 298, 298 (Richmond 1993); *Hope v. Commonwealth*, 92 Va. Cir. 6, 12 (Staunton 2015) (quoting *id.*). There is a “fundamental difference” between causing physical harm and “lack of performance of something that would have prevented harm.” *Brannon v. BOP Reston F, LLC*, 113 Va. Cir. 287, 294 (Fairfax 2024) (quotation omitted). Courts do not consider this a formulaic line, but instead look at the gravamen of the Complaint: “When the allegations are viewed in this manner, courts do not myopically focus on whether some ‘action or inaction as to the particular act or omission . . . has caused the damage,’ but rather, they … determine whether the allegations in the aggregate constitute nonfeasance or misfeasance.” *Tingler*, at 298 Va. at 91. There are public policy reasons for limiting personal tort liability against individual employees for job-related nonfeasance, including avoiding imposing an unfair burden on individuals. *See, e.g.*, *First Va. Bank-Colonial v. Baker*, 225 Va. 72, 79 (1983). Instead, the employee’s omission “would be a duty owing to his employer, rather than a positive act towards the plaintiff.” *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 823 (E.D. Va. 2005) (quoting *Pusey v. Riner*, 26 Va. Cir. 321, 325 (Fairfax 1992)).

The allegations describe at most nonfeasance: failures by employees to adequately inspect, repair, or disclose building conditions. *Cf. Saunders v. Boddie-Noell Enters.*, No. 7:08-cv-110, 2008 U.S. Dist. LEXIS 48715, *5 (W.D. Va. June 25, 2008) (“Plaintiff’s allegations, that defendant omitted to do acts which should have been performed, constitute acts of nonfeasance, and not misfeasance.”). The Complaint contains generalized allegations about moisture and termite problems at Pinetree but does not tie these Individuals to specific knowledge of Unit G-8’s Sliding Door. Instead, Plaintiff focuses her allegations on an issue that occurred in a small subset of apartments with water intrusion. *See* 3d Compl. ¶¶ 47-50. These allegations are irrelevant to Plaintiff’s Complaint, including because those tenants complained of *visible* damage (unlike

alleged hidden damage), and because moisture issues (which were repaired) were unconnected with the operation of the Sliding Door.[6] *See* 3d Compl. ¶¶ 113, 137. Plaintiff cannot claim that employees without knowledge of Unit G-8, the Sliding Door, or Plaintiff, committed malfeasance.

To attempt to transform her claim from nonfeasance to malfeasance, Plaintiff will likely focus on McConnell painting the trim in Unit G-8 before Plaintiff's move-in, which Plaintiff improperly assumes was to cover up the unfounded claim there was exterior signs of termite damage. The unreasonableness of this allegation has been addressed extensively in prior briefing. *See* (ECF No. 27, at 11-15); (ECF No. 49, at 6-11). The Sliding Door was operable when Plaintiff took possession of Unit G-8. Marrietta Paschal, the Petersburg Redevelopment and Housing Authority ("PRHA") inspector who passed Unit G-8, reported that "Maintenance was able to get to the windows/doors to open smoothly while I was present by lubricating the seals." *See* (ECF No. 49-1); *see also* 3d Compl. ¶ 134 (acknowledging the seals were greased, which allowed movement). Plaintiff wants to characterize Pinetree's repairs as "temporary," but how could a reasonable maintenance person think a functional sliding door requires any further attention when simultaneously the PRHA inspector passed the unit after considering the issue resolved? A property owner is not required to provide an egress point that will never need maintenance. An apartment complex may choose to make a repair that fixes the problem short of replacement. *See* (ECF No. 49, at 9-10).

---

[6] Plaintiff attempts to compare her apartment to a small subset of apartments where water "was pouring in from the outside when it rains." *See* 3d Compl. ¶ 47(c). When this occurred, taping was ineffective at keeping water out – evidence that a layer of paint never would have either. *See id.* Plaintiff has also never claimed water was pouring into her apartment when it rained. Notably, the tenant in K-1 – the unit referenced in Paragraph 47(c), which was repaired in 2020 before Plaintiff's tenancy – never complained that the sliding door could not open from water damage. Defendant previously briefed the lack of similarity to other units. *See* (ECF No. 49, at 14-17).

I-3029447.1

Even if Plaintiff is allowed to make the unreasonable assumption that McConnell should have known to do something further to repair the operable Sliding Door, McConnell did not do anything that prevented the Sliding Door from functioning. The case is like *Alier v. Gorbel, Inc.*, in which the Roanoke Circuit Court rejected the plaintiff's argument that a crane inspector committed malfeasance because "by negligently inspecting the crane and affirmatively certifying it as safe, the alleged structural defects in the crane structure grew and worsened." *Alier v. Gorbel, Inc.*, 115 Va. Cir. 295, 295-96 (Roanoke 2025) (finding the alleged violation to be nonfeasance). Similarly, Plaintiff asserts that the failure to repair the Sliding Door in May 2022 permitted the alleged pre-existing natural condition of termites and/or water infiltration, which Plaintiff alleges may have begun as early as 2019 (but such date is unknown), to continue to worsen. *See* 3d Compl. ¶¶ 39-40. Nothing about the painting attracted additional termites or accelerated the deterioration, and there is no concealment because Plaintiff pled that she knew the Sliding Door was allegedly stuck in July 2023. Plaintiff's claim is that McConnell allegedly did not adequately repair the Sliding Door. The gravamen of such an allegation is not malfeasance, but nonfeasance.

### b. *Plaintiff Cannot State a Claim for Fraud Against the Individuals.*

#### i. There Is No Fraudulent Concealment Claim for Repair Work in Unit G-8.

The Individuals cannot be charged with fraud because the defect is not plausibly alleged as existing when Plaintiff took possession. Plaintiff has been extremely clear throughout this lawsuit about the defect (the alleged "Compression Issue"), defining it as follows: "namely, water damage and termites that were causing the wooden framing behind the drywall to deteriorate and deflect, thereby interfering with the operation of the sliding glass door." *See, e.g.*, 3d Compl. ¶ 144. The Compression Issue requires (1) that there was both water and termite damage; (2) that resulting damage placed pressure on the Sliding Door's frame; (3) that the pressure caused the Sliding Door's frame to compress and shift out of square; and (4) that the Sliding Door would not open

because of the compression. Plaintiff has even provided an expert diagram detailing the specific causal chain. *See id.* ¶ 113. It is not enough for Plaintiff to show damage when McConnell made the repairs (which she cannot do),[7] because without a compression effect on the Sliding Door, there is no defect. If Plaintiff is to show the Compression Issue was in place when she took possession, then she must show that the door was inoperable on June 1, 2022. As described above, the Sliding Door moved smoothly, and thus there was no Compression Issue. *See* 3d Compl. ¶ 134.

Equally detrimental to Plaintiff's fraud claim is the fact that the Compression Issue, if it occurred, would be impossible to conceal. Fraudulent concealment requires "conceal[ment of] the material fact while knowing that plaintiff was acting on the assumption that the fact did not exist." *Guy v. Tidewater Inv. Props.*, 41 Va. Cir. 218, 220-221 (Norfolk 1996); *see also Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368 (2003); *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999). No concealment can occur when Plaintiff could have discovered – and indeed, did discover – the alleged Compression Issue by simply attempting to open the Sliding Door. *See* 3d Compl. ¶ 37. A layer of paint on a door's header, no matter how thickly applied, cannot conceal whether a door functions. The Supreme Court of Virginia has disclaimed liability for even affirmative misrepresentations when the defect can be discovered by a cursory inspection.[8] *See Kuczmanski v. Gill*, 225 Va. 367, 370 (1982). Nothing Pinetree could have done

---

[7] There is not a single person who will testify that the wooden header was "moisture laden" when repaired. *See* 3d Compl. ¶ 133. Nor is it reasonable that paint over a wet area would conceal ongoing water damage for 21 months. *See supra* note 6.

[8] Plaintiff tried to deflect her own legal duty by claiming fear of snakes, but Plaintiff's subjective fear of snakes did not prevent her from testing the door in July 2023. *See* 3d Compl. ¶ 37. Plaintiff was instructed to test safety items in her lease. *See* Lease (ECF No. 24-5, at 10-12). Tenants are responsible for testing an exit's ongoing functionality.

would have concealed an inoperable Sliding Door in the main bedroom where Plaintiff slept for 14 months before the fire. As such, a fraudulent concealment claim is not possible.

ii.  <u>Yohannes Was Not "Complicit" in the Repair Work to Unit G-8.</u>

Even more absurd is Plaintiff's claim that Yohannes was "complicit" in the alleged fraud. *See* 3d Compl. ¶ 140. Fraud requires a showing that Yohannes had knowledge of the "material fact." *See Cohn*, 266 Va. at 368 (the plaintiff "produced no evidence that Bonhomme was aware of this bias, much less that she intentionally concealed it"). Yohannes did not know of alleged water and/or termite damage in Unit G-8. *See* Yohannes Depo. 68:19-22 (**Exhibit G**) (she never knew of termite damage in Unit G-8). Yohannes did not know the Sliding Door in Unit G-8 would not open. Yohannes did not know when McConnell prepared Unit G-8 in May 2022 or know Plaintiff specifically. *See id.* at 65:7-11. Fraud under Rule 9(b) requires, at minimum, some allegation of Yohannes's "malice, intent, [or] knowledge" about Plaintiff's unit, as well as stating "with particularity the circumstances constituting fraud or mistake."

Plaintiff appears to connect Yohannes to the alleged fraud because she "withheld the cash required" for repairs, but this general allegation is for nonfeasance and non-actionable. *See supra*; *Harris*, 298 at 298. Even if Plaintiff's allegations supported that Yohannes withheld funds from other units – far from shown in the Third Amended Complaint, which details substantial funds Pinetree paid for repairs[9] – there is no intent by Yohannes as to Unit G-8. There are not even any allegations that Yohannes thought water intrusion and/or termite damage might affect the operability of a sliding door. *See* Yohannes Depo. 80:15-17 (water damage was not her expertise);

---

[9] The Court does not need to consider every repair to see that Plaintiff is relying on <u>other apartments where repairs were made</u> to argue that additional repairs should have been made to Plaintiff's unit. If anything, this shows that Pinetree was willing (and in fact did) pay for any repairs. *See* Def.'s Br. (ECF No. 49, at 11-14).

132:12-14 (she did not understand flashing). Yohannes was questioned about other apartment units with repaired flashing, but not a single unit discussed with Yohannes reported related opening issues. There is no record in Pinetree's 8,000-plus-page production showing Yohannes or other employees thought water damage above the sliding doors would impede operation. When William Norris (maintenance supervisor) was asked whether it made sense that the "weight of the building" would "push[] on the sliding glass door" after the water damage occurred, he answered that Plaintiff's theory did not make sense "because I haven't seen it happen like that." Norris Depo. 182:7-19 (**Exhibit H**). Even if Yohannes knew about Plaintiff's apartment, which she did not, if the repairs had nothing to do with the Sliding Door's functionality, fraud cannot be shown.

### c.   *Other Actions Against the Individuals Are Not Viable.*

Other causes of action against the Individuals should also be outright denied. For example, Count III alleges that the Individuals owed a duty to maintain the inside of the back wall, but individual employees do not have a common law duty to tenants to maintain the premises. *See supra.* Count VI alleges a private nuisance against Yohannes, but Virginia nuisance law requires the defendant to have some property interest or control over the nuisance-creating condition, and individuals without such interests are not proper nuisance defendants. *See, e.g.*, *In re Chinese Drywall Cases*, 80 Va. Cir. 69, 86 (Norfolk 2010). Plaintiff has taken a scatter-shot approach to including the Individuals in various claims that simply cannot lie against employees.

### d.   *Additional Factors Supporting Refusal to Add the Individuals.*

As with PestNow, Plaintiff has delayed adding the Individuals. *See O'Neal*, 2010 U.S. Dist. LEXIS 105847, *6-7. Plaintiff is on her third request to amend the Complaint, but Plaintiff was aware of the Individuals' identities before she filed her last request to amend. Plaintiff received the original work orders listing Peebles on or around May 8, 2024. McConnell was identified as performing the work on Unit G-8 in initial discovery responses, on July 9, 2025. *See* **Exhibit I**.

Plaintiff received McConnell's and Peebles's entire personnel files in July 2025, with Yohannes named as manager, and Yohannes is also listed on documents produced to Plaintiff ahead of her October 2025 request to amend. However, instead of naming them as defendants, Plaintiff delayed. She took McConnell's non-party deposition on December 10, 2025, and Yohannes's non-party deposition on January 6, 2026. Peebles was subpoenaed to be deposed on February 11, 2026.

Plaintiff also is not injured if the Individuals are not added. The Individuals' actions, to the extent proven, are imputed to Pinetree. Under Virginia law, a property manager's employee's actions are imputed to the property owner through its non-delegable duty. *See Love*, 239 Va. at 360-61; *Boland*, 69 Va Cir. at 310. Pinetree has already answered in discovery:

> All actions taken at Pinetree Apartments were done through property management companies. . . . South Oxford Management, LLC managed Pinetree Apartments from June 24, 2019, to the date of the sale (August 29, 2024). The property manager employed the workers at Pinetree Apartments. … All references to Pinetree include South Oxford, LLC's property management of Pinetree Apartments[.]

Ans. Rog. Nos. 8, 16 (**Exhibit J**). Defendant has never taken the position that the actions of its property manager and/or its employees are not imputed to Pinetree. *See, e.g.*, Def.'s Mem. (ECF No. 49, at 2 n.1). For the scope of negligence asserted, Virginia law prevents a scenario in which Plaintiff would be unable to recover against Pinetree for proven actions of Yohannes, McConnell, and/or Peebles. Joint and several liability law further assures that Plaintiff would be seeking recovery against Pinetree, not the Individuals. *See Oppenheimer v. Linkous' Adm'x*, 159 Va. 250 (1932) ("The principle is settled … that, where two or more tort-feasors by concurrent acts of negligence which although disconnected yet in combination inflect injury, the plaintiff may sue them jointly or severally, although he can have but one satisfaction in damages.").

Plaintiff's addition of the Individuals is purely to seek remand. *See Mayes*, 198 F.3d at 462. Plaintiff seeks to add these individuals, not because she would ever recover actual funds from these

Individuals – two maintenance employees and a manager – but to exert extra-judicial pressure on Pinetree by depriving Pinetree of its rights to a federal forum.

### 3. The Equities Weigh Against Adding Additional Non-Diverse Defendants.

There are numerous equities weighing against adding non-diverse defendants who destroy diversity. *See Mayes v. Rapoport*, 198 F.3d at 462. Remanding this case to state court would result in starting again. Pinetree has produced over 8,000 documents in response to Plaintiff's 114 Requests for Production (across six different sets of Requests). Numerous depositions have already occurred, including Pinetree's corporate representative and several former employees. Pinetree has filed two different Motions to Dismiss Plaintiff's Complaint (ECF Nos. 5-6, 26-27) and a lengthy opposition to Plaintiff's Motion for a Second Amended Complaint (ECF No. 49). Pinetree has already been forced to bear substantial legal fees in the defense of this matter in the federal forum. The effort already expended in defending this case has been significant.

Plaintiff can obtain complete relief from the Pinetree for her claims arising from the fire, and she will not be impaired or impeded in her ability to protect her interests by the new defendants' absence. Plaintiff has already obtained significant discovery from PestNow and the Individuals, and Plaintiff pleads in her Complaint that Pinetree was responsible for those proposed defendants' actions. The Court should deny Plaintiff's request.

### B. __The Court Should Deny Leave to Add the Diverse Parties.__

#### 1. The Court Should Deny Leave to Amend the Affiliated Entities.

While the Affiliated Entities are diverse and would not destroy diversity, their addition should be denied. Beachwold Residential, LLC, was the asset manager of Pinetree until May 2023, until the contract was assigned to Beachwold Holdings, LLC, which continued to manage Pinetree by written agreement until the property was sold. Beachwold Partners, LP, is a passive investment

entity that Plaintiff plucked off the under-seal corporate filing (see ECF No. 15), and about which there has been no discovery in the last year. These are not proper defendants.[10]

Defendant has never taken the position that its delegates' actions are not imputed to Pinetree. *See, e.g.*, Def.'s Mem. (ECF No. 49, at 2 n.1); *see also Love*, 239 Va. at 360-61; *Boland*, 69 Va Cir. at 310. However, Plaintiff cannot state a claim against the Affiliated Entities because she cannot connect any alleged action regarding Unit G-8 and/or the Plaintiff with the Affiliated Entities. No one above McConnell had any information about the Plaintiff's Sliding Door. Plaintiff relies instead on broad-brush claims of "withholding" repair funds, but without even a report to the Affiliated Entities that Unit G-8 needed repairs, this cannot state a claim of fraud. Plaintiff's request is also not ripe because she must obtain a judgment before attempting to pierce the corporate veil.

### a.  *Plaintiff Cannot State a Claim Against the Affiliated Entities.*

Plaintiff cannot state a claim against the Affiliated Entities because the Complaint does not connect any Affiliated Entity to Unit G-8 and Plaintiff's specific damages. To bring Plaintiff's fraud claims against the Affiliated Entities, Rule 9 requires that Plaintiff "must state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(a). Plaintiff merely alleges an organizational "top-to-bottom knowledge" about construction work on other apartments, relying on cherry-picked emails in which the asset manager was notified about costly repairs that Pinetree needed to perform (and did) at the complex.[11] *See* 3d Compl. ¶ 133. But there

---

[10] The "organization chart" has other almost comical errors (*e.g.*, Charles Rubenstein is general counsel and is not involved in any maintenance or budgeting decisions). *See* 3d Compl. ¶ 124.

[11] While Plaintiff does not draw the distinction in her Third Amended Complaint, as the asset manager, Beachwold would only become aware of larger repair issues involving third-party contractors. The work completed by McConnell in May 2022 would never have been – and was not – reported outside of the Pinetree apartment complex.

is no link in the Third Amended Complaint between the allegations against the Affiliated Entities and Unit G-8 or Plaintiff.

No one above McConnell, on-the-ground maintenance, is alleged to have knowledge about Unit G-8. Yohannes never had any knowledge of Unit G-8 repairs. *See supra.* The discussions between South Oxford and the Affiliated Entities never concerned Unit G-8. Plaintiff does not assert, nor could she, that an alleged request to repair to the Sliding Door in Unit G-8 was ever communicated higher than ground-level maintenance at Pinetree. Further, while Plaintiff claims that the Affiliated Entities generally encouraged "cut[ting] corners in preparing the units," *see, e.g.*, 3d Compl. ¶ 133, there is nothing Plaintiff has uncovered in months of discovery that supports such a character assassination – if such a thing was even admissible.[12] *See* Fed. R. Evid. 404.

Neither do the allegations in the Complaint plausibly support that necessary repairs were avoided. As bears repeating, Plaintiff is relying on apartments where repairs were made. Such is the illogicity of Plaintiff's claims. For example, Plaintiff leans heavily on one asset manager's comment about avoiding unnecessary costs, but the manager in that same sentence directed repairs be completed. *See* Compl. ¶¶ 101-102. Plaintiff also criticizes another asset manager for negotiating with a subcontractor, but the subcontractor agreed to the price and performed the repairs. *See* Compl. ¶ 101 n.12. Plaintiff has not identified in her Third Amended Complaint any safety-related tenant complaints for which repairs were <u>not</u> performed because of a decision by the Affiliated Entities to restrict necessary funds. It is also not relevant that Pinetree was in the sales process, *see* Compl. ¶ 100, because that never prompted any restriction of necessary repairs. An

---

[12] William Norris, maintenance, was never disciplined at Pinetree for going over budget. *See* Norris Depo. 202:24-203:9 (Ex. H). Bonuses were awarded by meeting the budget for the entire expense category (e.g., leasing, administrative, services, taxes and insurance, payroll, and repairs), not just maintenance. In 2022, Pinetree employees did not earn any bonus in Q1 or Q2, and only $24.90 in Q2 and $75.00 in Q3. This amount does not incentivize employees to "cut corners" on safety.

analogy is helpful: if you are planning to sell a car in six months but are told by a mechanic that you need new tires, you are going to ask the natural follow-up question of *when* you need new tires. If the car is safe to drive for the next eight months, then it becomes the buyer's problem. If the car is not safe to drive now, then you make the repairs regardless of the expected sale because you will not drive on unsafe tires for six months. The repairs identified in the Third Amended Complaint fall in that second category: they were repaired, regardless of possible sale.

The repaired apartments are also not substantially similar to Plaintiff's apartment because there is no evidence that the Compression Issue occurred, and thus they cannot be admitted for notice. As the Supreme Court of Virginia has observed:

> [I]t is well settled that evidence of prior accidents or occurrences is **not admissible** and can have **no effect** in establishing the defendant's knowledge of a danger unless the plaintiff shows that those prior accidents or occurrences happened at substantially the same place and under substantially the same circumstances, and had been caused by the same or similar defects and dangers as those in issue, or by the acts of the same person.

*Roll "R" Way Rinks, Inc. v. Smith*, 218 Va. 321, 325 (1977) (quoting *Spurlin v. Richardson*, 203 Va. 984, 989 (1962)) (emphasis added). The defect and causation must be the same. *Funkhouser v. Ford Motor Co.*, 285 Va. 272, 275 (2013). One analogous Georgia case found that although there were other incidents of "falling walls" at an apartment complex, the plaintiff was unable to show that the "missing or different blocks in other walls were in that state because of original construction, alteration, vandalism, collisions with the wall, or … deterioration. . . . **There is no showing of substantial similarity**[.]" *Smith v. Hous. Auth.*, 212 Ga. App. 503, 505 (1994) (emphasis added). Plaintiff has not identified a single apartment about which *anyone* at Pinetree or the Affiliated Entities knew the Compression Issue had occurred. As William Norris testified, the defendants "haven't seen it happen like that." Norris Depo. 182:7-19 (Ex. H).

24

Without the Compression Issue, Plaintiff's allegations against the Affiliated Entities do not show any alleged tortious conduct that would justify veil piercing. The Supreme Court of Virginia has noted its extreme reluctance to permit veil piercing. *See, e.g.*, *Dana*, 266 Va. 491. It is generally imposed only when the member has used the corporate structure to "evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *Van Buren v. Earl Ronald Poston & Old Meadow, LLC*, 97 Va. Cir. 229, 235 (Loudoun 2017). None of this is plausibly alleged in the Third Amended Complaint. Further, there is no evidence that the Affiliated Entities are using Pinetree to gain an unfair advantage. Plaintiff will not be injured by failure to add the Affiliated Entities, and the Court should deny Plaintiff's request.

### b. *Plaintiff's Corporate Veil Arguments Are Not Ripe.*

The Court should also not add defendants based on Plaintiff's "corporate veil" arguments. *See* 3d Compl. ¶ 135. Piercing the corporate veil is not an independent cause of action, but a means of imposing liability. *See Peacock v. Thomas*, 516 U.S. 349 (1996). In *Dana v. 313 Freemason, A Condo. Ass'n*, the Supreme Court of Virginia procedurally approved the determination <u>post-trial</u> to pierce the corporate veil only after liability had been established. 266 Va. 491 (2003) (finding veil-piercing "is dependant on **first obtaining a judgment against the corporation**." (emphasis added)); *see also O'Hazza v. Executive Credit Corp.*, 246 Va. 11 (1993). The Fourth Circuit has held that a plaintiff must wait until after judgment is obtained to bring a claim:

> **[B]efore bringing an action to pierce the corporate veil, the plaintiff must "first obtain a judgment against the corporation."** Because Bennett was required to first obtain a judgment against Virtus before bringing his alter-ego claim, **this claim had not yet accrued[.]**

*Bennett v. Garner*, 913 F.3d 436 (4th Cir. 2019) (emphasis added) (quoting *Dana*, 266 Va. 491) (emphasis added); *see also Williams v. White*, 412 B.R. 860, 865, No. 07-71909 (Bank. W.D. Va. Aug. 5, 2009) ("Procedurally, a court may not pierce the LLC veil until after the requesting party

obtains a judgment against the LLC."). Because Plaintiff cannot claim remedy from the Affiliated Entities until proving entitlement from Pinetree, the Affiliated Entities should not be added now.

### 2. The Court Should Deny Leave to Amend to Add the Property Manager.

Pinetree has never taken the position that the actions of its property manager, South Oxford, are not imputed to Pinetree.[13] *See, e.g.*, Def.'s Mem. (ECF No. 49, at 2 n.1). However, it is Pinetree and not South Oxford that has the non-delegable duty. *See Love*, 239 Va. at 360-61; *Boland*, 69 Va Cir. at 310. To bring any claim against a contractor like South Oxford, Plaintiff would need to show malfeasance. *See Brannon*, 113 Va. Cir. at 294. While she has named three South Oxford employees for this claim – Peebles, McConnell, and Yohannes – as discussed above, their actions in failing to adequately repair Unit G-8 are not malfeasance. *See supra.* Plaintiff thus cannot state the same set of claims against South Oxford that she attempts to assert against Pinetree.

The Court should also consider that there is no need to add South Oxford as a named defendant because Plaintiff can seek her remedy against Pinetree. As Plaintiff mentions in the Third Amended Complaint, there is only a single coverage tower over South Oxford and Pinetree. *See* 3d Compl. ¶ 135. Adding South Oxford does not create any cognizable benefit, but adding South Oxford will add to potential jury confusion. The Court should exercise its discretion and prevent joinder.

### C. Plaintiff's Additional Allegations from the First Amended Complaint Are Futile.

Other than Plaintiff's amendment to add the additional defendants, there is nothing substantively distinct in the Third Amended Complaint from Plaintiff's last request to amend in October 2025. Pinetree previously opposed Plaintiff's Second Amended Complaint because her

---

[13] Strangely, Plaintiff claims that she does not have a copy of the agreement between South Oxford and Pinetree. *See* 3d Am. Compl. 129 n.14. **This agreement was produced with Pinetree's first production in July 2025** as PINETREE001183 (Confidential) (**Exhibit K**) (first page only).

plethora of proposed factual allegations did nothing to overcome the arguments stated in Pinetree's pending Partial Motion to Dismiss, namely that Plaintiff has failed to plead any reasonable inference of fraud or intentional misrepresentation regarding the Sliding Door. *See* (ECF No. 49). As such, Plaintiff is subject to the general rule in Virginia that the tenant takes the premises in whatever condition it is in, "assuming all risk of personal injury from defects therein." *Isabell v. Commercial Investment Associates, Inc.*, 273 Va. 605, 611-12 (2007) (quoting *Caudill v. Gibson Fuel Co.*, 185 Va. 233, 239-41 (1946)). Plaintiff's Third Amended Complaint is deficient for the same reasons that Pinetree has briefed repeatedly. Many of these issues are addressed above with regard to certain proposed additional defendants, but points bear highlighting.

    1.  **Plaintiff Cannot State a Claim for Common Law Fraud or for Concealment of a Latent Defect Because the Compression Issue Cannot be Hidden.**

    All of Plaintiff's concealment-based claims fail because the Compression Issue cannot be hidden from a resident tenant. *See supra*. The defect does not arise until the Sliding Door's movement is impeded – which is the exact moment that the defect becomes equally discoverable to the tenant. It is impossible for the Compression Issue to exist as a defect and be concealed from the Plaintiff. Plaintiff herself easily discovered the alleged defect when she tried to open the door in July 2023. *See* 2d Am. Compl. ¶ 29. Because this core fact cannot be altered, no matter how many facts Plaintiff adds to her complaint, any amendment is futile and should be denied.

    2.  **Plaintiff Cannot State a Claim Against Pinetree Under the Virginia Consumer Protection Act ("VCPA").**

    Plaintiff added the VCPA claim in her proposed Second Amended Complaint, *see* (ECF No. 49, at 18), but the VCPA, Section 59.1-200(14), is not applicable to Plaintiff's claims in the lawsuit. As a preliminary matter, the VCPA states that the Act does not apply to landlord-tenant relationships without a showing of "misrepresentation or fraudulent act or practice under § 59.1-200." Va. Code Ann. § 59.1-199. Section 200 is narrow, and Section 200(14), upon which Plaintiff

I-3029447.1

attempts to rely, is even more arrow, allowing recovery only when a supplier in connection with a consumer transaction uses "deception, fraud, false pretense, false promise, or misrepresentation[.]" Va. Code Ann. § 59.1-200. Even assuming that Pinetree is a "supplier" of goods and services under the VCPA, she cannot show misrepresentation in connection with a consumer transaction.

Plaintiff fails to define what the alleged "consumer transaction" is, but for the sake of argument, Defendant assumes she means the lease of an allegedly "safe apartment" that she later learned was not safe. *See* 3d Compl. ¶ 157. This is not the type of consumer transaction contemplated under the VCPA, which specifically exempted from coverage the lease of apartments generally covered by the Virginia Residential Landlord Tenant Act ("VRLTA"). *See* Va. Code Ann. § 59.1-199. If the Court were to consider every leasing of an apartment to be a potential misrepresentation whenever the traditional rule of *caveat emptor* controls, then the exemption for the VRLTA would have no meaning at all. A canon of statutory construction is that all words must have meaning (and generally their plain meaning) without absurd result. *Cf. Lawlor v. Commonwealth*, 285 Va. 187, 237 (2013) ("[T]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction, and a statute should never be construed in a way that leads to absurd results." (quotation omitted); *United States v. Goldenberg*, 168 U.S. 95, 102 (1897) (emphasizing importance of "obvious and natural import of the language, giving to it the ordinary grammatical construction"). The Court should not consider an alleged generic misrepresentation (and a silent one) that an apartment was "safe" as triggering the VCPA.

Plaintiff has not pled any facts supporting a reasonable inference that Pinetree acted with specific intent to defraud her. "[U]nlike fraud for affirmative misrepresentations, concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable." *Western Capital Partners, LLC v. Allegiance Title & Escrow, Inc.*, 520 F. Supp. 2d 777, 782 (E.D.

Va. 2007) (quoting *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999)). If the Court were to allow Plaintiff to amend her Complaint to bring a VCPA claim, that VCPA claim would fail for all the reasons that every Complaint and amendment filed by Plaintiff fails to state fraud and concealment claims against Pinetree.

###    3.  Plaintiff's Claim for Nuisance Is Flawed When Brought Against the Landlord.

Plaintiff wishes to bring a private nuisance claim, but nuisance law is not designed to remedy a tenant for defects in a rented property. A private nuisance claim arises when a property owner uses their property in a way that substantially interferes with another's use and enjoyment of their property (e.g., neighboring properties). *See Virginian R. Co. v. London*, 114 Va. 334, 334-35 (1912). Plaintiff's claim differs because it is all the same property: Unit G-8, for which control passed from Pinetree to the Plaintiff at the inception of the lease. As the Supreme Court of Virginia has noted, defendant landlords are not liable to plaintiff tenants, the invitees, under nuisance theories. *See Oliver v. Cashin*, 192 Va. 540, 546 (1951) ("[A] landowner is not liable to a person on the demised premises in the right of the tenant for injuries caused by a defective condition of the demised premises on the theory that the condition is a ruinous condition or a nuisance."). Further, Plaintiff alleges that Pinetree's actions occurred *before* her tenancy, and thus there is a synchronicity issue. A landlord is not liable for an "open and obvious condition existing at the inception of the tenancy, and of which the tenant knew or had means of knowing equal to the landlord." *John Aragona Enters., Inc. v. Miller*, 213 Va. 298, 300 (1972).

There is also a causation problem with nuisance in this context. Private nuisance theory relies upon active negligence by the defendant in <u>creating</u> the nuisance condition. *See Cline v. Dunlora South, LLC*, 284 Va. 102, 109 (2012) (noting that there was nothing to suggest the property owner "engaged in any affirmative act that caused the property . . . to be different than in its natural state"). Plaintiff does not allege that the Compression Issue was created by Pinetree: she

alleges it was created by termites and water damage, which are naturally occurring degenerative agents. Private nuisance theory does not require the property owner to interfere with nature to prevent the development of a dangerous condition on their property. *See id.* (finding that a private landowner has no duty to traveling motorists to cut down decaying trees adjoining a public highway); *see also Carmello v. Cockerill*, No. 1818-22-4, 2024 Va. App. LEXIS 411, *8 (July 16, 2024) ("Mere failure to inspect or maintain … is not enough" and noting that "law punishes misfeasance, not nonfeasance."). Plaintiff's private nuisance theory is a square peg in a round hole when applied to the alleged conduct here, and her request for leave to amend should be denied.

## VI.     CONCLUSION

For the foregoing reasons, and any reasons stated at any hearing on this matter, the defendant, Pinetree Apartments, LLC, by counsel, respectfully requests this Court DENY Plaintiff's Motion for Leave to File Third Amended Complaint, and order such other and further relief as the Court may deem appropriate.

This 20th Day of February, 2026.

Respectfully submitted,

**PINETREE APARTMENTS, LLC**


By:    */s/ Joseph P. Moriarty*
    Joseph P. Moriarty (VSB No. 68465)
    Kevin M. Kennedy (VSB No. 75071)
    Bryn L. Clegg (VSB No. 96923)
    WILLCOX & SAVAGE, P.C.
    440 Monticello Avenue, Suite 2200
    Norfolk, Virginia 23510-2243
    Telephone: (757) 628-5500
    jmoriarty@wilsav.com
    kkennedy@wilsav.com
    bclegg@wilsav.com
    *Counsel for Defendant Pinetree Apartments, LLC*

## <u>CERTIFICATION</u>

I hereby certify that on this 20th day of February, 2026, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Charles H Cuthbert, Jr. (VSB No. 14519)
Richard M. Cuthbert (VSB No. 82025)
Cuthbert Law Offices, P.C.
220 North Sycamore Street
Petersburg, VA 23803-3228
Telephone:  804-733-3100
Facsimile:  804-732-4658
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com

Mark J. Krudys (VSB No. 30718)
Daniel Guinnane Zemel (VSB No. 95073)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, VA 23219
Telephone:  804-774-7950
Facsimile:  804-381-4458
mkrudys@krudys.com
dzemel@krudys.com

*Counsel for Plaintiff*

*/s/ Joseph P. Moriarty*

31