### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

NYEISHA S. GHEE,

        Plaintiff,

v.                                            Civil Action No.: 3:25-cv-17-RCY

PINETREE APARTMENTS, LLC,

        Defendant.

### PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

For her reply to Defendant's Opposition to her Motion for Leave to file her Third Amended Complaint ("TAC"), Plaintiff Nyeisha S. Ghee ("Ms. Ghee") states as follows:

## I.    INTRODUCTION

Prompted by a notice of an upcoming inspection at her apartment, Ms. Ghee encountered difficulty opening her patio sliding glass door. She informed an apartment maintenance technician about the issue, who stated, "I got you." (ECF No. 52, hereinafter "TAC"), ¶ 38. Ms. Ghee trusted this statement and believed that the problem had been fixed. *Id.* Yet the problem was never fixed. Thus, on a cold night in February 2024, Ms. Ghee found herself trapped in an inferno with her three-year-old son, Mark. Ms. Ghee escaped, but only barely. She suffered horrendous burns over nearly her entire body, required multiple amputations, and is now severely disfigured. Mark died.

To obtain a remedy for these horrendous harms, Ms. Ghee sued Pinetree Apartments, LLC ("Pinetree") in state court in December 2024. Pinetree then removed the case to this Court and the parties agreed to proceed with discovery while the Court considered motions aimed at defining the claims at issue in this case. During discovery, the Plaintiff discovered a wealth of powerful evidence implicating persons and companies beyond Pinetree itself. As explained in her proposed

TAC, the Plaintiff's injuries were part of a shocking and long-standing pattern of maintenance failures and outright misconduct. To hold accountable those who perpetrated these failures, the Plaintiff filed her Motion to File Third Amended Complaint (ECF No. 54).

Pinetree opposes the Plaintiff's motion to amend on several grounds, none of which are availing. As explained below, the allegations in the TAC easily state a claim against the newly added defendants. Moreover, because some of these newly added defendants are citizens of Virginia, the proper course for this Court is to remand this matter back to state court.[1]

## II.    ARGUMENT

### A.    <u>The Court should permit joinder of the Non-Diverse Parties.</u>

In its Opposition, Defendant Pinetree repeatedly argues that PestNow of Central Virginia, LLC ("PestNow") and the Individual Defendants should not be joined, but conspicuously fails to acknowledge the "heavy burden" that it bears. *Johnson v. Am. Towers*, *LLC* 781 F.3d 693, 704 (4th Cir. 2015) (citations omitted). This "heavy burden" is crucial to keep in mind, as the Plaintiff need only demonstrate a "glimmer of hope" to defeat Pinetree's arguments. *Hartley v. CSX Transp., Inc*. 187 F.3d 422, 426 (4th Cir. 1999). As explained below, the Plaintiff easily meets this low standard with regard to her claims against PestNow and the Individual Defendants.

#### 1.    **The Court should permit Plaintiff's request to add PestNow.**

Defendant Pinetree offers three arguments against adding PestNow: (1) PestNow owed no tort duties to Ms. Ghee, (2) the Plaintiff has been "dilatory" in seeking to add PestNow, and (3) the

---

[1] In her Memorandum in Support of Her Motion for Leave to File Third Amended Complaint for Leave to Amend (ECF No. 53), the Plaintiff advised the Court that she has recently filed a similar version of the TAC in Petersburg Circuit Court. The Plaintiff anticipates that the defendants in that action may attempt to remove it to this Court, which may bring before the Court several of the same issues raised by Pinetree in its Opposition to this Motion (ECF No. 55). Given that possibility, the Court may wish to delay ruling on the instant Motion until the defendants in the state court action decide on removal.

Plaintiff will not be injured if PestNow is not added. All three of these arguments fail.

### a.  *Plaintiff does state a claim against PestNow.*

Virginia law is clear that PestNow has a duty if it was "in such a position" regarding a "class of persons" that "if [it] did not use ordinary care . . . [it] would cause danger of injury" to someone within the class. *RGR, LLC v. Settle*, 288 Va. 260, 276, 279 (2014) (citations omitted); *Cf. Quisenberry v. Huntington Ingalls, Inc.*, 296 Va. 233 (2018); *Restatement (Second) of Torts* § 324A (1965). Thus, the question for this Court is simply whether the TAC alleges that PestNow was "in such a position" that it owed a duty to a "class of persons" containing Ms. Ghee. The answer to that question is clear. The TAC alleges facts that PestNow was hired to treat Building G for termites. As an occupant of Building G, Ms. Ghee was obviously within the "class of persons" that could be harmed if PestNow failed to use "ordinary care." PestNow would have certainly known of the risk that a failure of "ordinary care" might cause and thus, by failing to use such care, breached its duty to Ms. Ghee.

Rather than focus its attention on the basics of tort law, Defendant Pinetree directs this Court's attention elsewhere. It first improperly applies a third-party beneficiary *contract* analysis to counter Plaintiff's *tort* claims against PestNow. *See* Opp., at 8. If the Plaintiff were alleging a contract claim, this might have some traction, but the Plaintiff is not alleging that PestNow's duty of care arose out of its contractual relationship with a particular person or entity. The Plaintiff is instead alleging that PestNow's duty of care arose from the fact that it was "in such a position" regarding a "class of persons" that "if [it] did not use ordinary care . . . [it] would cause danger of injury" to someone within the class. *RGR, LLC,* at 276, 279. *See also Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 493 (2011) ("[b]ecause the Kaltmans have alleged that AAPC and Harrison breached common law and statutory duties independent of the company's contractual

duty to control pests, we hold the trial court erred when it sustained the demurrers to the Kaltmans' negligence counts").

On page 9 of its Opposition, Pinetree takes another tack. It argues there that the Supreme Court of Virginia has recognized that the protected class under Virginia Code § 3.2-3939(B) was "consumers who allegedly were injured as a result of improper use of pesticide," citing *Kaltman v. All Am. Pest Control, Inc.*, at 498. That clearly includes Ms. Ghee. Liability under Section 3.2-3939(B) is not limited to those who inhale harmful fumes. The protected class covers individuals injured by the "improper use" of a termiticide. *Id.* As noted in *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 85-86 (2019), "[i]t was the contractor's affirmative act of using a dangerous pesticide, not the failure to use a safe pesticide, that mattered" because this "squared well with the nonfeasance-misfeasance distinction recognized in our common-law tradition." That is exactly the situation here. An active deviation from the label instructions leads to PestNow's liability. *See* TAC ¶¶ 57-58, 162-163; *Restatement (Second) of Torts* § 324A (1965).

Pinetree's scattershot arguments at the bottom of page 9 are unpersuasive. Pinetree claims that a finding of termites does not prove they are eastern subterranean termites. However, the TAC includes the affidavit of termite expert Robert Kunst, who states that the most common termite in the Petersburg, Virginia, area is the Eastern Subterranean Light Termite. He explains that these termites are often found in damp environments, such as Blackwater Swamp at the edge of Pinetree Apartments. TAC ¶ 53.

Pinetree also argues that in 2019, PestNow needed to find termites in or near Unit G8, not just inside Building G, which contains only eight apartments. This argument highlights the consequences of PestNow's failure to follow the termiticide label, which required PestNow to perform exterior inspections (which PestNow often did) and *interior* inspections (which PestNow rarely

conducted), apply the termiticide through holes drilled into abutting slabs (which PestNow never did), and use only Certified Applicators (which PestNow did not do). TAC ¶¶ 56-58. Additionally, regarding evidence of termites in or near Unit G8, the TAC contains ample evidence of such. Donisha Bugg, a prior resident of Unit G8, observed "termite damage above sliding glass door to [her] bedroom, as well as above sliding glass door to [her] mother's bedroom." *Id.* ¶ 29; *see also* n.3. Plaintiff's experts also found termite damage during a post-fire inspection of G6, the unit next to G8. *Id.* ¶ 116; *see also id.* ¶¶ 60-61, 103.

### b.    *Plaintiff was not dilatory in adding PestNow as a defendant.*

Even though the Plaintiff is seeking to sue PestNow *within the statute of limitations*, Defendant Pinetree somehow thinks that the claim is dilatory. Pinetree's claim is meritless on its face because, if the Plaintiff had sued PestNow in a separate action, that suit would almost certainly merged with this suit as a related case. But even putting aside this fact, the Plaintiff required discovery and the input of its termite expert to properly articulate her claims. Soon after receiving that input, Plaintiff asked this Court for leave to amend, a request that came before a Rule 16 conference has even been scheduled. There is no prejudice to Defendant Pinetree by adding PestNow.

### c.    *Plaintiff will be injured if PestNow is not a defendant.*

Plaintiff has a strong claim against PestNow and she will certainly be injured if she is not permitted to pursue her claims against it in this litigation. For instance, if PestNow is not a defendant, the other defendants will likely blame PestNow, and PestNow will not be present in court to respond. Moreover, if PestNow is excluded as a defendant, it will have less ability to pressure the other defendants into settling. Additionally, if PestNow is not a defendant, the available liability insurance may not be enough to compensate Ms. Ghee for her injuries or the Administrators of

Mark's Estate for his death. Finally, if PestNow is not included as a defendant, the Plaintiff will have to repeat most of her liability and damages evidence in state court, which makes no sense.

### 2.    The Court should permit the request to add the Individuals.

In addition to attacking the claims against PestNow, Defendant Pinetree also targets the claims against the Individual Defendants (Defendants McConnell, Peebles, and Yohannes). As explained below, Pinetree's arguments fail because the Pinetree cannot meet its "heavy burden" of showing that the claims have no "glimmer of hope." *Hartley v. CSX Transp., Inc.* 187 F.3d 422, 424 (4th Cir. 1999).

### a.    *The Individual Employees were appropriately named; Pinetree misunderstands Virginia law on the nonfeasance-malfeasance distinction; also, they did cause the alleged defect.*

Pinetree engages in semantic games in a tortuous attempt to characterize the Individual Employees' conduct as nonfeasance. Filling in termite holes and painting over moisture, which McConnell and Peebles did and which Yohannes furthered, did nothing to eliminate the termites. It only concealed their presence, which was the goal of the Individuals, and constitutes both misfeasance and fraud, "in the aggregate" or otherwise. *Tingler*, at 91. In its Opposition, Pinetree argues that Peebles was no longer employed by Pinetree at the time of the move-in inspection. Opp., at 13. But Peebles's name is listed in the work order detailing the repairs before Ms. Ghee's move-in. *See* ECF No. 42-1. If Pinetree and Peebles claim that the work order was falsely completed, they may raise this argument before the jury. However, at this stage, the Plaintiff has plausibly pleaded that Peebles's actions constitute concealment and fraud.[2]

---

[2] Moreover, the Fourth Circuit has further observed that "a jurisdictional inquiry is not the appropriate stage of litigation to resolve… various uncertain questions of law and fact." *Hartley*, at 425. "Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance [the] objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper." *Id.*

At the bottom of page 14 of the Opposition, Pinetree tries to distinguish "visible" damage from hidden damage. In doing so, Pinetree supports Plaintiff's point – the Individuals' deception efforts caused visible damage to be concealed.

Beyond its nonfeasance argument, Pinetree offered assorted other arguments. On page 14 of its Opposition, it claims that the TAC is insufficient because it contains "generalized allegations about moisture and termite problems at Pinetree." Pinetree appears to believe that, where a plaintiff who suffers unspeakable harm because of a sliding glass door failure caused by wood rot, a complaint that alleges widespread sliding glass door failures caused by wood rot is impermissibly "general." There is no law supporting that argument, and the TAC cannot be fairly characterized as "general." The TAC explains in great detail the systemic problems at Pinetree, often citing the specific unit where a problem existed. TAC ¶¶ 45-98. Furthermore, despite Pinetree's assertion otherwise, the May 31, 2022 Work Orders "tie these Individuals to specific knowledge of Unit G-8's Sliding Door." Opp., at 14. They painted over moisture damage and termite holes in an effort to conceal the conditions from PRHA and Ms. Ghee.

On pages 15 and 16 of its Opposition, Pinetree repeats arguments that the Plaintiff already refuted, most notably in her Reply Memorandum in Support of Plaintiff's Motion for Leave to Amend the Amended Complaint. (ECF No. 50, at 6-10).[3] As the Plaintiff explained there, the Individual Defendants were aware of a much larger and more serious problem than just the temporal stickiness to the sliding glass door. In Pinetree's description, McConnell put lipstick on a pig and

---

[3] In its argument, Pinetree refers the Court to it memorandum at ECF No. 49 (Opp., at 15), but that was in response to Plaintiff's Motion for Leave to Amend the Amended Complaint (to file the Second Amended Complaint) (ECF No. 37), which was withdrawn (ECF No. 51). To provide the Court with Plaintiff's reply, Plaintiff republishes ECF No. 37 and its related exhibits for the limited purpose of responding to Pinetree's arguments.

falsely presented the problem as minor and quickly fixable. Even if fully accepted, Pinetree's argument is hardly persuasive.

### b.     *Plaintiff does state a claim for fraud against the Individuals.*

#### i.     Repair work in Unit G8 was fraudulently concealed.

Plaintiff's original complaint and all amended complaints sufficiently allege fraud against the individuals. Painting over termite damage and moisture, which the TAC plausibly alleges was done by Defendants McConnell and Peebles under Defendant Yohannes's direction, is a clear example of fraudulent concealment. Defendant Pinetree's latest argument—that "the defect is not plausibly alleged as existing when Plaintiff took possession"—is unpersuasive and, at most, a question for the jury. This argument is based solely on the claim that the "Sliding Door moved smoothly" on June 1, 2022. Opp., at 17. As stated above, that claim is thoroughly rebutted in detail at ECF No. 50, at 6-10.

The Individuals painted over the termite holes and moisture, and, by their own assertion, lubricated the patio sliding glass door enough to make it slide. All of this could be done while the "compression" issue remained at move-in. It's a temporary fix for a serious problem, similar to sending a football player back onto the field after applying a pain reliever, even though his injured knee still requires surgery. The player may finish the game, but the issue remains unresolved. At most, Pinetree has flagged a concern for an expert to address. Finally, the defect could not be identified by tenants "by a cursory inspection," as Pinetree claims. That would require understanding the systemic flashing problem, moisture issues, termite infestation, and/or wood rot throughout the complex. Additionally, the lease prohibits Ms. Ghee from making any material changes to the wall, let alone pulling back the siding of the outer wall to find the wood rot. *See* ECF No. 42-2, at 4.

ii.     <u>Yohannes was complicit in the work to Unit G8.</u>

Yohannes was a Regional Manager whose properties included Pinetree Apartments. As such, Yohannes was uniquely positioned at the intersection of two streams of information: 1) an acute awareness of the systemic flashing problem, moisture issues, termite infestations, and wood rot throughout the complex, and 2) "Ownership's" years-long efforts to sell the complex, and relatedly, its directive to limit costs in order to maximize the bottom line from the sale of the property. She received numerous and regular tenant complaints regarding the foregoing issues, communicated with maintenance technicians and property managers about the same, and received numerous work orders detailing the problems. Essentially, all the information detailed in the TAC was known to her or available to her. She was also reminded by her superiors to spend as little as possible on potentially dangerous problems. *See generally* TAC, at 29, n.11. Yohannes had the ability to "do the right things" – to ensure that problems were fixed. She clearly had the authority and power to ensure that fixes were made. Her submission of budgets that neglected the repairs and direction of work that masked moisture, termites, and wood rot was not "nonfeasance" that immunizes her from liability. Because she had a duty to act, her failure to act constitutes a tort. *See Taylor v. Virginia Construction Corp.*, 209 Va. 76, 79 (1968) (landlord has duty of "ordinary care to keep [rental property] in a reasonably safe condition"); *Milburn v. J.C. Penney Props.*, 2007 No. 2006-7068, Va. Cir. LEXIS 42 (Va. Cir. Ct. March 30, 2007) (Fairfax County) (property manager owes a duty of care to occupants of the rental property).

Finally, regarding Pinetree's claim that "there is no intent by Yohannes as to Unit G-8," Pinetree seeks specificity that is neither required nor relevant. A nursing home director who understaffs a ward may not necessarily know who will be most affected, but the director understands that someone will be impacted nonetheless. The statement that the long-time Regional Manager

did not know that water intrusion or termite damage might affect the operability of a sliding door says much about her candor. Opp., at 18. Finally, Norris's testimony on page 19 of the Opposition will be challenged by Plaintiff's experts. In fact, Plaintiff's pest control expert Robert Kunst stated in his affidavit that through his work, he is "aware of instances where termite damage has interfered with the operation of sliding glass doors." (ECF No. 52-12, ¶ 5). Again, at most, Pinetree raises a question for the jury.

### c. Other actions against the Individuals are viable.

Other causes of action against the Individuals complained of by Pinetree at page 19 of the Opposition far exceed the "glimmer of hope" standard to join a party, and therefore, the jurisdictional inquiry "ends." *Hartley,* at 426. As noted above, the Individuals did owe a duty to maintain the inside of the back wall. *See Gumenick,* at 516 (holding "in the exercise of reasonable care [landlords] *and their agents* had full authority *and the duty* to make reasonable inspections of the premises and to make needed repairs.") (Emphasis added.) Also, as noted herein and the TAC, Yohannes certainly *did* have control over the nuisance-creating condition. As Regional Manager, Yohannes was uniquely positioned to communicate with Beachwold Defendants any needed repairs and/or inspections. While the Beachwold Defendants ultimately decided on large expenditures, Yohannes had control over informing them of the issues at Pinetree and communicating the necessity of the repairs and/or inspections. TAC ¶¶ 133, 140.

### d. Additional factors support adding the Individuals.

At page 19 of its Opposition, Pinetree complains that the Individuals were not added earlier but is unable to cite any prejudice from their inclusion now. Once again, Pinetree fails to inform the Court of *Hartley's* "glimmer of hope" standard for joining a party. *Hartley,* at 426. The jurisdictional inquiry "ends" when the Plaintiff makes plausible claims, which the Plaintiff has. *Id.*

### 3.    The equities favor adding the additional Non-Diverse Defendants.

The equities favor adding the additional non-diverse Defendants. Remanding this matter to state court does not mean it "starts again." Opp., at 21. Clearly, the parties would use the discovery already conducted in this Court. Indeed, Plaintiff respectfully asserts that this Court must remand this case to Petersburg Circuit Court because the newly joined parties are properly included, the causes of action against them are factually plausible and legally sound, and the requirements of 28 U.S.C. § 1447(e) are straightforward:

> When a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with 28 U.S.C. § 1447(e), which offers two options: If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court. These are the only two options for a district court faced with a post-removal attempt to join a nondiverse defendant; the statute does not permit a district court to retain jurisdiction once it allows a nondiverse defendant to be added in the case.

> *Mayes v. Rapoport*, 198 F.3d 457, 461-462 (4th Cir. 1999).

Based on the above, remand is the only proper action this Court should take.

### B.    <u>The Court should permit the Diverse Defendants to be added.</u>

The Court should grant Plaintiff leave to add the Diverse Defendants, including the Affiliated Entities[4] and the Property Manager, South Oxford.

### 1.    The Court should grant leave to add the Affiliated Entities.

Pinetree first argues that Counts I, II, and III against the Affiliated Entities are not valid because the TAC does not establish a "link" between "the allegations against the Affiliated Entities and Unit G-8 or Plaintiff." Opp., at 23. In Pinetree's view, it is not enough that the Entities had

---

[4] The "Affiliated Entities" are the entities that own and operate Pinetree Apartments, LLC, including Clearfield/Pinetree Apartments, LLC, Beachwold Partners, LP, Beachwold Holdings LLC, Beachwold Residential, LLC and South Oxford Management, LLC.

knowledge of systemic problems across the apartment complex involving wood rot, termites, and inoperable sliding glass doors. The Entities can only be liable, the argument goes, if they knew these problems existed within Unit G8 specifically. *Id.* This argument is without merit.

Regarding the structural elements of a building that are beyond a tenant's exclusive control, a landlord has a duty to exercise "ordinary care to keep such places in a reasonably safe condition." *Taylor v. Virginia Construction Corp.*, 209 Va. 76, 79 (1968). The duty of ordinary care includes the responsibility to "make reasonable inspections of the premises and to make needed repairs." *Gumenick v. United States*, 213 Va. 510, 516 (1973). The duty of reasonable inspection is not merely a duty to respond to complaints; the duty presupposes that, at any given time, latent defects may exist and that inspections are necessary to identify and fix them.

*Gumenick v. United States* is illustrative here. In that case, a tenant leaned against a porch railing that gave way, causing the tenant to fall and suffer serious injuries. The tenant sued the landlord and presented expert evidence that the railing was in a "state of decay, crumbling and deteriorating" and had been in that condition for "at least two years…" *Id*. at 514. However, "the defect in [the] railing was a latent defect" that had not been "observed by anyone prior to [the] accident." *Id.* at 515. And, importantly, there was no systemic issue with rotten railings that could have alerted the landlord to inspect all the railings. *Id*. Based on these facts, the Virginia Supreme Court held that a "jury could have found that [the landlord] did not maintain the rail in a reasonable state of repair, and did not exercise ordinary care in inspecting the railing to determine its condition." *Id*. at 517.

The Plaintiff's allegations in this case are stronger than in *Gumenick*. As in *Gumenick*, the Plaintiff's injury here resulted from deteriorating wood that had been in need of repair for a long period. TAC ¶¶ 2-4. Also like in *Gumenick*, the Plaintiff has claimed (with expert support) that this

condition caused the sliding glass door to become inoperable. *Id*. ¶ 113. In *Gumenick*, this alone was enough to establish liability, but here, the Plaintiff has much more evidence—specifically, evidence of widespread problems throughout the entire apartment complex. As the TAC clearly states, wood rot (caused by water infiltration and/or termites) was widespread across the Pinetree apartment complex and, as expected, regularly caused "dozens" of sliding glass door issues. ¶¶ 2, 69, 98. These problems were known not only to front-line maintenance workers, but also to executives working for the Affiliated Entities. The TAC clearly indicates that those executives knew of a "bad termite infestation at Pinetree" that likely spread through many buildings in the complex, and that there was serious water damage around . . . patio doors" in many units throughout the complex. ¶¶ 101, 133. Knowledge of these problems is a much more significant reason for inspection than in *Gumenick* (where there was no prior knowledge of any problem). Therefore, if the evidence in *Gumenick* was enough to state a claim, the Plaintiff's allegations here are also sufficient.

Pinetree cites *Roll "R" Way Rinks, Inc. v. Smith*, 218 Va. 321, 325 (1977), for the claim that "prior accidents or occurrences" only give a defendant notice of a defect if they "happened at substantially the same place and under substantially the same conditions." *Roll "R" Way* actually supports the Plaintiff here. In *Roll "R" Way*, the Virginia Supreme Court held that when a plaintiff injures himself on one of several ramps leading onto the floor of a roller-skating rink, evidence of accidents on other ramps is relevant to showing the defendant's notice of a defect on the ramp where the injury occurred. *Id.* at 325-326. Here, the Plaintiff alleges there were widespread problems with wood rot throughout the Pinetree apartment complex, causing "dozens" of sliding glass door failures. TAC ¶¶ 2, 69, 98. Consistent with *Roll "R" Way*, a reasonable fact finder could conclude that, where an apartment complex has experienced dozens of sliding glass door problems

caused by wood rot, a specific sliding glass door issue from wood rot in that complex happened in "substantially the same place and under substantially the same conditions" as the others.

In summary, the TAC presents facts sufficient to establish the liability of the Affiliated Entities for Counts I, II, and III. The Affiliated Entities had significantly more notice of the risk of harm to individuals like the Plaintiff than what the Virginia Supreme Court has required in other cases, and therefore, there is no reason to consider her claims against the Entities as futile.[5]

2.    **The Court should permit the Plaintiff leave to add South Oxford.**

Pinetree also argues, rather tepidly, that the Court could "consider that there is no need to add South Oxford as a named defendant because Plaintiff can seek her remedy against Pinetree." Opp., at 26. Pinetree provides no citation for this argument, and there is none. The Plaintiff is free to file claims against any or all persons who have caused her harm. She is not required to pick one defendant from many.[6]

C.    <u>Plaintiff's additional allegations are not futile.</u>

---

[5] Pinetree also argues that the Plaintiff's corporate veil arguments are not ripe because she has not yet obtained a judgment against Pinetree. Opp., at 25-26. With regard to this argument, it is important to note at the outset that the Plaintiff does not solely rely on a veil-piercing theory to hold the Affiliated Entities liable. *See* TAC ¶ 135 (explaining that "The Defendants should be held liable for their own torts."). With regard to the veil-piercing theory in particular, however, Pinetree's argument fails. While there is authority holding that a veil-piercing issue should be decided only after a judgment has been obtained against an alter ego, there is no authority holding that a plaintiff may not *allege* a veil-piercing claim before that occurrence. Indeed, in *Dana v. 313 Freemason, A Condo. Ass'n*, 266 Va. 491 (2003), Pinetree's central authority for its argument, the veil-piercing issue arose in the *same lawsuit* in which the alter ego had been found liable. Thus, while a court may refrain from ruling on a veil-piercing argument until the plaintiff has obtained a judgment against an alter ego, there is no authority for the proposition that a plaintiff may not *allege* veil-piercing claims in the same suit as claims against the alter ego.

[6] Pinetree also notes here that South Oxford is not suable because it only engaged in nonfeasance, not misfeasance. Opp., at 26. McConnell, Peebles, and Yohannes all identified as South Oxford employees and were paid by South Oxford. *See also J.C. Penney Props.*, 2007 No. 2006-7068, Va. Cir. LEXIS 42 (Va. Cir. Ct. March 30, 2007) (Fairfax County), for the proposition that property managers owe a duty of care to occupants of the property.

Contrary to Pinetree's assertion, in addition to important facts about the entities that controlled Pinetree, the TAC includes many new facts that influence the liability issue in this case. (The TAC expands on the more than 100 new facts mentioned in the proposed Second Amended Complaint. *See* ECF No. 47-2.) In fact, Paragraph 50 of the TAC states that in 2017 and 2018, over 40 work orders related to moisture, mold, and water leaks around patio glass doors were created by Pinetree (ECF No. 52-11). A summarized spreadsheet of these work orders was attached to the TAC as Exhibit 10. This information was not provided by Pinetree but was recently obtained through a subpoena from a third party.

1. **Plaintiff does state a claim for common law fraud or concealment of a latent defect; the structural defect was indeed hidden.**

As noted above, discovering that the door was sticking on a specific date did not inform Ms. Ghee of the dangerous condition developing in her apartment wall. A patient may experience abdominal discomfort but not realize it is due to a cancerous tumor. A healthcare provider who knows of the specific condition through imaging but fails to inform or treat the patient for the tumor cannot claim that the patient was aware of the issue just because she has midsection pain. Pain does not necessarily indicate a tumor, and a sticking door did not alert Ms. Ghee to a serious structural problem in her apartment wall.

2. **Plaintiff's proposed TAC properly pleads a claim under the Virginia Consumer Protection Act ("VCPA").**

The VCPA was passed "to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law." *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 497 (2014). The Supreme Court of Virginia has recognized the "legislature's express direction that we apply the VCPA as remedial legislation," and how that direction supports conclusions that are "more favorable to the injured plaintiff." *Ballagh v. Fauber Enters.*, 290 Va. 120,

126 (2015). Contrary to that express direction, Pinetree argues that the exemption to the VCPA concerning landlord-tenant transactions—added by the General Assembly and specifically leaving in place many claims—eliminates the ability to bring any claim under the VCPA related to landlord-tenant transactions. That interpretation is contrary to the clear language of the exemption and the purpose of the VCPA.

### a.    The VCPA applies to this transaction.

As Pinetree notes, the VCPA includes a specific exception for landlord-tenant transactions that prevents such claims unless there is misrepresentation or fraud. This means that transactions involving misrepresentation or fraud must be covered under the VCPA. The fact that Pinetree believes the exemption does not sufficiently cover or leaves too many landlord-tenant transactions under the VCPA is an issue to address with the General Assembly.

This commonsense conclusion is supported by Virginia court decisions regarding the VCPA. In *Stith v. Liberty Pointe LP*, the plaintiff alleged that the defendant "failed to provide habitable conditions at the time of leasing the unit." 110 Va. Cir. 141 (Va. Cir. Ct. 2022) (Petersburg). The court determined that such an allegation properly stated a cause of action under the VCPA. Similarly, in *Guy v. Tidewater Investment Properties*, the plaintiff claimed that "fraudulent concealment and/or omissions regarding the lead paint hazards and the supposed repair of the hazard are equivalent to verbal misrepresentations of material facts," allowing them to bring a claim under the VCPA. 41 Va. Cir. 218, 230 (Va. Cir. Ct. 1996) (Norfolk). The *Guy* court also noted that "[t]he Virginia Supreme Court has continually emphasized in the fraud context that concealment can be the equivalent of an express misrepresentation." *Id.* (string citation omitted). These two decisions are not exceptions. *See Yong Su Park v. Gates Hudson & Assoc.*, 83 Va. Cir. 45, 49 (Va.

16

Cir. Ct. 2011) (Fairfax) (holding that concealment of a bedbug infestation established a claim under the VCPA).

Federal courts have similarly ruled that the VCPA applies to all types of fraud and misrepresentation in landlord-tenant transactions. In *Miller v. Charles E. Smith Management Incorporated*, the Fourth Circuit reversed a district court decision and permitted a claim against a landlord based on fraudulent misrepresentation under the VCPA. No. 96-2636, 1999 U.S. App. LEXIS 1013, *7-8 (4th Cir. Jan. 26, 1999) (unpublished). This district reached the same conclusion in *Smith v. 4037 Lamplighter DR, LLC*, holding that misrepresentation and deceptive practices can constitute fraud and give rise to a claim under the VCPA, but that the plaintiff had not provided enough facts to prove such fraud. No. 3:24-cv-580, 2025 U.S. Dist. LEXIS 13200, *30-31 (E.D. Va. Jan. 24, 2025). In summary, the VCPA applies here as long as the Plaintiff can prove that Pinetree made a misrepresentation or committed fraud, including concealment. For the reasons discussed above and below, she can.

### b.      Plaintiff has sufficiently pled a VCPA claim.

As the Supreme Court of Virginia explained in *Owens v. DRS Automotive Fantomworks, Inc.*, while proof of fraud is "sufficient to establish a violation of the VCPA…the VCPA's proscription of conduct by suppliers in consumer transactions extends considerably beyond fraud." 288 Va. 489, 497 (2014). Misrepresentations—such as those explicitly covered in the landlord-tenant exemption—also violate the VCPA. Unlike in cases of fraud, these misrepresentations do not necessarily have to be made "knowingly or with the intent to deceive," because if a plaintiff proves willfulness, they are entitled to treble damages. *Id.* (citing Va. Code. § 59.1-204(A)). More importantly, VCPA claims only require proof by a preponderance of the evidence, rather than the clear and convincing standard needed for common law fraud. *Ballagh v. Fauber Enterprises*, 290

Va. 120, 127 (2015). Therefore, Plaintiff's fraud and VCPA claims do not necessarily rise or fall together. Plaintiff has sufficiently alleged common law fraud. However, even if this Court finds otherwise, she has at least satisfied the lower standard required for a VCPA claim.

### 3.    Plaintiff has properly pled a nuisance claim.

The Supreme Court of Virginia broadly defines the term "nuisance" as "'everything that endangers life or health, or obstructs the reasonable and comfortable use of property.'" *Collett v. Cordovana*, 290 Va. 139, 145 (2015). In *Fancher v. Fagella*, 274 Va. 549 (2007), the Supreme Court of Virginia held that the roots of a sweet gum tree located on the defendant's adjacent land could constitute a nuisance, where the invasive roots impaired the foundation of the plaintiff's house and caused the plaintiff other property damage. Similar to the unmanaged sweet gum tree roots, Pinetree's improperly installed flashing and the resulting water and termite damage—damage that Pinetree failed to control—constituted a nuisance.

Pinetree argues that "nuisance law is not designed to remedy a tenant for defects in a rented property." Opp., at 29. However, the nuisance at issue here was not located in the property rented by Ms. Ghee, but in property under the complete control of Pinetree and/or other renters. Flashing was improperly installed *throughout* the Pinetree complex, causing water to accumulate and attracting termites, which also spread *throughout* the complex. TAC ¶¶ 45, 65, 72, 115. As a result of Pinetree's penny pinching from 2019-2024 (while Pinetree sought to sell Pinetree Apartments), the nuisance foreseeably spread to Unit G8. Further, even if the nuisance somehow originated precisely within the walls of Unit G8, this is still an area *outside* Ms. Ghee's property. Pinetree maintained complete control of the space between the interior and exterior back walls of apartment units. *Id.* ¶ 39.

Pinetree's reliance on *Oliver v. Cashin*, 192 Va. 540 (1951), is misplaced. Pinetree cites *Oliver* for the proposition that "defendant landlords are not liable for plaintiff tenants… under nuisance theories." Opp., at 29 (citing *Oliver,* at 546). However, *Oliver* involved a defective condition within the demised premises where the tenant had control and responsibility over the condition. As explained, that is not the situation here.

Pinetree then argues that the conditions causing the nuisance were open and obvious when Ms. Ghee took possession of the Unit G8, and therefore, they are not a basis for liability. However, when Ms. Ghee took possession of Unit G8, she was not taking control of the area containing the defective condition, which was always under Pinetree's control. Additionally, the defect was in no way "open" or "obvious," as Plaintiff claims the defective conditions were concealed and hidden from Ms. Ghee. Plaintiff also had no "means of knowing equal to the landlord" that termites and water damage were deteriorating the area in the walls around the Primary Bedroom sliding glass door. Furthermore, the invasive roots of the sweet gum tree in *Fancher* were open and obvious, yet they posed no barrier to recovery. 274 Va., at 552.

Pinetree contends that the Plaintiff lacks causation for a nuisance claim because "[p]rivate nuisance theory relies upon active negligence by the defendant in creating the nuisance condition." Opp., at 29 (citing *Cline v. Dunlora South, LLC*, 284 Va. 102, 109 (2012)). Here, Pinetree confuses duty and nuisance. Virginia's definition of nuisance does not mention "active" negligence. Similarly, there was no "active" negligence by the owner of the sweet gum tree in *Fancher*, yet the Supreme Court of Virginia still found the allegations stated a cause of action for nuisance. Moreover, under section 361 of the *Second Restatement of Torts*, a land possessor can be held liable, regardless of whether the negligence is active or passive, for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control.

19

Pinetree argues that the nuisance was not caused by Pinetree but "created by termites and water damage, which are naturally occurring degenerative agents." Opp., at 30. But *Fancher* makes clear that the defendant in a nuisance action need not have caused the nuisance – control over the source of the nuisance will suffice. 274 Va., at 549. In any event, a jury could reasonably determine that Pinetree created the conditions for the nuisance when its improperly installed flashing continually diverted the natural flow of rainwater into the interior walls of units throughout the Pinetree complex, leading to water damage and termite infestations, which they sparingly treated and/or repaired.

As to *Cline v. Dunlora South, LLC*, *supra*, it is distinguishable because it involves damages caused by a tree falling from private property onto a public highway—a narrow fact pattern with its own unique body of Virginia law, totally different from Ms. Ghee's claims. And the same is true for *Carmello v. Cockerill*, No. 1818-22-4, 2024 Va. App. WL 3416703 (July 16, 2024), an unpublished decision of the Court of Appeals of Virginia.

## III.     CONCLUSION

Plaintiff Ms. Ghee respectfully moves this Court for leave to file her Third Amended Complaint and to add the additional defendants.

Respectfully submitted,

NYEISHA S. GHEE

By*:     /s/ Mark Krudys*
Counsel

Mark J. Krudys (VSB#30718)
Daniel Zemel (VSB#95073)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, VA, 23219
(804) 774-7950
Fax: (804) 381-4458
mkrudys@krudys.com
dzemel@krudys.com

Charles H. Cuthbert, Jr. (VSB # 14519)
Richard M. Cuthbert (VSB # 82025)
Cuthbert Law Offices,
A Professional Corporation
220 North Sycamore Street
Petersburg, Virginia 23803-3228
(804) 733-3100
Fax: (804) 732-4658
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com

### Certificate of Service

I hereby certify that on this 26th day of February 2026, I have electronically filed the fore-

going with the Clerk of Court using the CM/ECF system, which will send notification of such

filing to all parties of record.

*/s/ Mark J. Krudys*
Mark J. Krudys (VSB# 30718)
The Krudys Law Firm, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, Virginia 23219
804.774.7950 Phone
804.381.4458 Fax
mkrudys@krudys.com
*Counsel for Plaintiff*

21