**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 25-1436**

─────────────

JEREMY JAMES SKIDMORE,

       Plaintiff - Appellant,

   v.

MICHAEL SCHINKE; GAIL SAUL,

       Defendants - Appellees.

─────────────

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Robert S. Ballou, District Judge. (7:24-cv-00445-RSB-CKM)

─────────────

Argued:  January 29, 2026                        Decided:  March 30, 2026

─────────────

Before AGEE, THACKER, and QUATTLEBAUM, Circuit Judges.

─────────────

Vacated and remanded by published opinion.  Judge Quattlebaum wrote the opinion, in which Judge Agee and Judge Thacker joined.

─────────────

**ARGUED:** Thomas Eugene Strelka, VIRGINIA EMPLOYMENT LAW, Roanoke, Virginia, for Appellant. Timothy J. Gorde Jr., JACKSON LEWIS PC, Richmond, Virginia, for Appellees. **ON BRIEF:** Kevin D. Holden, JACKSON LEWIS PC, Richmond, Virginia, for Appellees.

─────────────

QUATTLEBAUM, Circuit Judge:

Under what is known as diversity jurisdiction, federal courts may hear cases with an amount in controversy exceeding $75,000 where "*each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978); *see also* 28 U.S.C. § 1332(a). Stated negatively, if any defendant is a citizen of the same state as any plaintiff, there is no diversity jurisdiction. But there's an exception to that rule. If a defendant is a citizen of the same state as a plaintiff but has been fraudulently joined as a party, the court may disregard that defendant for diversity-of-citizenship purposes. Importantly, though, the standard for showing fraudulent joinder is high. It is only met when the plaintiff has engaged in actual fraud or "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).

In this case, which was removed from state court, one of the defendants was a citizen of the same state as the plaintiff, but the district court determined that the plaintiff had fraudulently joined that defendant. As a result, it concluded that it had diversity jurisdiction, denied the plaintiff's motion to remand and then dismissed the plaintiff's complaint for failure to state a claim. But the district court improperly held that the plaintiff had no possibility of establishing his claim against the nondiverse defendant. So, we vacate the district court's dismissal of the complaint and its denial of the motion to remand and remand to the district court for further proceedings consistent with this opinion.

## I.

In May 2024, Jeremy Skidmore sued Michael Schinke and Gail Saul in Virginia state court, alleging that both of the defendants were Virginia citizens. Skidmore alleged the following facts in his complaint.

From 1994 to 2022, Skidmore worked for Sonoco Products Company. Skidmore reported to Schinke, a production supervisor, who in turn reported to Saul, the plant manager. In February 2022, Skidmore told Schinke about "company violations regarding overtime compensation that were affecting Skidmore and other employees' compensation." J.A. 13. In response, Schinke "stripped Skidmore of his supervisory responsibilities." *Id.* In July 2022, Skidmore sent a letter to various "Sonoco corporate managers," including Saul, describing "Schinke's managerial failures and violations of policy, which were affecting employee compensation." *Id.* Schinke "knew that Skidmore was the author of the letter" and told Saul. *Id.* Sonoco investigated Skidmore's complaint. As part of that investigation, Skidmore spoke to a human resources representative about compensation issues affecting him and other employees. On August 11, 2022, Saul and Schinke terminated Skidmore.

Skidmore alleged a single cause of action—a claim under *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). In *Bowman*, the Virginia Supreme Court held that although Virginia had a general "common-law doctrine of employment-at-will," an employee could sue his employer for "improper discharge from employment" if he was terminated in violation of a "right conferred by statute" that was "in furtherance of established public policy." *Id.* at 800–01. A plaintiff can bring a *Bowman* claim not only

3

against his or her "actual employer" but also against "the actor in violation of public policy and who participated in the wrongful firing of the plaintiff, such as a supervisor or manager." *VanBuren v. Grubb*, 733 S.E.2d 919, 924 (Va. 2012).

Skidmore claimed that Schinke and Saul "violated the public policy expressly stated in" VA. CODE ANN. § 40.1-28.7:9. J.A. 14–15. That statute prohibits an employer from firing or "tak[ing] other retaliatory action against an employee because the employee inquired about or discussed with, or disclosed to, another employee any information about either the employee's own wages or other compensation or about any other employee's wages or other compensation." § 40.1-28.7:9(A).

The defendants removed the case to federal court. In their notice of removal, they said that Saul wasn't a Virginia citizen and attached a declaration from Saul to that effect. Additionally, the defendants argued that "Skidmore fraudulently joined Schinke as a nondiverse defendant in order to defeat diversity jurisdiction." J.A. 7. The defendants said that, setting Schinke aside, there was "complete diversity of citizenship between Skidmore and Saul, making removal proper." J.A. 7. The defendants also moved to dismiss Skidmore's suit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Meanwhile, Skidmore moved to remand the case to state court.

The district court denied Skidmore's motion to remand and granted the defendants' motion to dismiss. It acknowledged that Schinke was a Virginia citizen but determined that the defendants "ha[d] shown there [wa]s no possibility of a viable claim against Schinke, and ha[d], therefore, satisfied the requirements of fraudulent joinder." J.A. 118–19. The district court noted that "[n]umerous Virginia courts ha[d] held that a statute containing an

4

exclusive remedial scheme cannot serve as the basis for a *Bowman* claim" and that "Virginia courts ha[d] specifically held that '[when] a statute creates a right and provides a remedy . . . , then that remedy is exclusive unless the statute says otherwise.'" J.A. 122 (final two alterations in original) (quoting *Concerned Taxpayers of Brunswick Cnty. v. Cnty. of Brunswick*, 455 S.E.2d 712, 717–18 (Va. 1995)). It observed that § 40.1-28.7:9 contemplates "civil penalt[ies]" and suits by the Commissioner of the Virginia Department of Labor and Industry "for injunctive or such other relief as may be necessary for enforcement" of the statute but doesn't contemplate a private cause of action. J.A. 122–23 (quoting VA. CODE. ANN. § 40.1-28.7:9(B)–(C)). The district court found that a plaintiff couldn't bring a *Bowman* claim based on a violation of § 40.1-28.7:9. So, the district court concluded that Skidmore fraudulently joined Schinke, denied Skidmore's motion to remand and dismissed Skidmore's claims against both defendants for failure to state a claim.

This appeal followed.[1]

## II.

### A.

Congress conferred upon district courts jurisdiction over "all civil actions" with an amount in controversy exceeding $75,000 between "citizens of different States." 28 U.S.C. § 1332(a). Section 1332(a) requires complete diversity—"[t]hat is, diversity jurisdiction

---

[1] We have appellate jurisdiction under 28 U.S.C. § 1291. And "[w]e review questions of subject matter jurisdiction de novo, including a district court's denial of a motion to remand." *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 390 (4th Cir. 2018).

does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."

*Kroger*, 437 U.S. at 373.[2] Subject matter jurisdiction over this case hinges on the complete

diversity requirement. Nobody disputes that Skidmore is a Virginia citizen. And nobody

disputes that Schinke is a Virginia citizen.[3] So, if Schinke's citizenship matters for the

diversity analysis, there isn't complete diversity. And if there isn't complete diversity, there

isn't diversity jurisdiction.

But Schinke's citizenship doesn't matter if he was fraudulently joined as a

defendant. Fraudulent joinder "effectively permits a district court to disregard, for

jurisdictional purposes, the citizenship of certain nondiverse defendants, assume

jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."

*Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (citing *Cobb v. Delta Exports, Inc.*,

186 F.3d 675, 677–78 (5th Cir. 1999)); *see Wilson v. Republic Iron & Steel Co.*, 257 U.S.

92, 97 (1921) (noting that the "right of removal cannot be defeated by a fraudulent joinder

of a resident defendant having no real connection with the controversy").

---

[2] While § 1332(a) requires complete diversity, the Constitution does not. Article III simply requires minimal diversity—that "any two adverse parties are not co-citizens." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 (1967).

[3] Saul's citizenship is less clear. In the defendants' notice of removal, they said Saul was a Kentucky resident. Saul's attached declaration said she was a Tennessee resident. The defendants then filed a supplemental notice of removal "to confirm that Saul is a citizen of and domiciled in Kentucky." J.A. 26. But in their opposition to Skidmore's motion to remand, they said that there was "no dispute that Saul relocated to live in Tennessee in 2017, which is where she is and has been domiciled since leaving Virginia." J.A. 54. So, is Saul a Kentucky citizen or a Tennessee citizen? Fortunately, the answer is irrelevant to our analysis, since either way, Saul is diverse from Skidmore.

There are two ways to show fraudulent joinder. "[T]he removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley*, 187 F.3d at 424 (quoting *Marshall*, 6 F.3d at 232).[4] The defendants didn't allege any actual fraud by Skidmore. So, they had to show that Skidmore had no possibility of maintaining a *Bowman* claim against Schinke, "even after resolving all issues of law and fact in [Skidmore's] favor." *Id.*

For good reason, showing no possibility of a claim is a "heavy burden."[5] *Id.* When a defendant cries fraudulent joinder, he's asking the district court to do something extraordinary—maintain jurisdiction over a case that should, on its face, proceed in state court. At this stage, a district court shouldn't wrestle with thorny state-law questions, nor should it otherwise "delv[e] too far into the merits." *Id.* at 425. Instead, if it "cannot predict with certainty how a state court . . . would resolve the legal issues" implicated by the case,

---

[4] Justice Thomas described this second avenue of establishing fraudulent joinder— "dismiss[ing] nondiverse parties based on [a district court's] view of the merits of the claims against those parties"—as "unfaithful to Congress's limits on our diversity jurisdiction and inconsistent with [the Supreme Court's] precedents. *Hain Celestial Grp., Inc. v. Palmquist*, No. 24-724, 2026 WL 5017333, at *9 (U.S. Feb. 24, 2026) (Thomas, J., concurring). But *Hartley* remains good law, so we apply it here.

[5] For perspective, the fraudulent joinder standard is "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6). *Hartley*, 187 F.3d at 424. And *Hartley* was decided before *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which require plaintiffs to plead allegations "with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). So, if the fraudulent joinder standard was more plaintiff-friendly than the Rule 12(b)(6) standard at the time of *Hartley*, that's even more true today.

it should leave those issues for a state court to decide. *Id.* at 425–26. In other words, all doubts about the propriety of removal should be resolved in favor of remanding the case to state court. *Marshall*, 6 F.3d at 232.

**B.**

The defendants argue Skidmore has no possibility of success against Schinke because § 40.1-28.7:9 contains its own remedies. And they're right that under Virginia law, "where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." *Sch. Bd. of Norfolk v. Giannoutsos*, 380 S.E.2d 647, 649 (Va. 1989). What's more, courts have applied this principle in the *Bowman* context. *See Carmack v. Virginia*, No. 18-cv-00031, 2019 WL 1510333, at *13 (W.D. Va. Apr. 5, 2019) (collecting Virginia trial court cases supporting the proposition that "statutes containing their own remedy cannot also support a *Bowman* claim"); *Hice v. Mazella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 554 (E.D. Va. 2022) ("When a Virginia statute already contains a remedial scheme for violations of the statute, a plaintiff does not have a *Bowman* claim to vindicate the statute's underlying public policy.").

Skidmore says this principle doesn't foreclose a *Bowman* suit under § 40.1-28.7:9 because that section only "creates a remedy for a government entity—not the employee whose rights were violated." Op. Br. at 11–12. He points out that the Virginia Supreme Court held that a plaintiff could bring a *Bowman* claim based on an early version of the Virginia Human Rights Act (VHRA), even though that version of the VHRA "specifically disallowed private rights of action" and left enforcement to state agencies. Op. Br. at 12

(citing *Lockhart v. Commonwealth Educ. Sys. Corp.*, 439 S.E.2d 328, 331–32 (Va. 1994));

*see Lockhart*, 439 S.E.2d at 331 (recognizing "that the [VHRA] does not create any new

causes of action" but nonetheless "rely[ing] solely on" *Bowman* to establish a cause of

action for a VHRA violation).

Skidmore's argument is far from airtight. If we had to decide whether a plaintiff

could bring a *Bowman* claim based on a violation of § 40.1-28.7:9, *Lockhart* wouldn't be

dispositive. More recently, the Virginia Supreme Court refused to imply a private cause of

action in an arguably similar context. *See Cherrie v. Va. Health Servs., Inc.*, 787 S.E.2d

855, 857–59 (Va. 2016) (holding that a statute that "grant[ed] interested parties the

opportunity to file administrative complaints against a licensed nursing home" but left the

prosecution of those complaints to a state agency and provided no individual remedies

nonetheless precluded a private cause of action). Also, the fact that *Bowman* described the

cause of action it established as "a narrow exception to the employment-at-will rule," 331

S.E.2d at 801, might suggest a reluctance by Virginia courts to apply *Bowman* to a new

statutory context.

But our question is whether there is a "possibility" that a Virginia court would see

this issue Skidmore's way. *See Hartley*, 187 F.3d at 424 (emphasis omitted). We can't say

there is not. No Virginia court has addressed whether a plaintiff can bring a *Bowman* claim

based on a violation of § 40.1-28.7:9. And while the defendants rely on cases analyzing

other statutes and general principles concerning *Bowman* claims, neither those cases nor

those principles definitively foreclose Skidmore's specific claim against Schinke. So, even

if the defendants have the better of this argument, it is not impossible that Skidmore could prevail. As a result, the district court erred in finding fraudulent joinder on this basis.

Below, the defendants made other arguments about why Skidmore has no possibility of success against Schinke. But the district court didn't consider these arguments. So, we'll leave them for the district court to assess in the first instance on remand. *See Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) ("[W]e should be 'mindful that we are a court of review, not of first view.'" (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005))).

## III.

Skidmore's claim against Schinke might not be strong. It might even be the legal equivalent of a half-court shot. But as anybody who's watched enough basketball knows, half-court shots sometimes go in. Improbable? Yes. Impossible? No. So, we vacate the district court's entry of judgment in favor of the defendants and its denial of Skidmore's motion to remand and remand the case to the district court for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

10