**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

NYEISHA S. GHEE,

        Plaintiff,

v.

PINETREE APARTMENTS, LLC, et al.,

        Defendants.

Civil Action No.: 3:25-cv-17-RCY

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO PINETREE AND JASON
KEEN'S MOTION TO QUASH PLAINTIFF'S SUBPOENA DUCES TECUM AND
MOTION FOR A PROTECTIVE ORDER**

Plaintiff Nyeisha S. Ghee, by counsel, submits this memorandum in opposition to the

Motion to Quash and for a Protective Order filed by Defendant Pinetree Apartments, LLC

("Pinetree") and non-party Jason Keen ("Keen," together with Pinetree, "Movants"), and states as

follows:

## I.    INTRODUCTION

Movants' motion rests on a single, faulty premise: that this is an ordinary personal-injury

suit against one landlord, in which insurance and corporate-structure documents could not possibly

matter. That premise is wrong. As the operative Third Amended Complaint ("TAC") makes plain,

Pinetree Apartments, LLC is an empty shell—an entity that, by Movants' own admission, has no

employees. The TAC names ten additional defendants and alleges, in detail, that a network of

interrelated "Beachwold" entities and their principals actually owned, funded, controlled, and

operated the apartment complex, and that the nominal separateness of Pinetree, Clearfield, and

South Oxford is a sham that warrants piercing the corporate veil. Who truly owned and operated

this business is therefore not a side issue; it is a central, contested element of Plaintiff's claims

against every defendant other than Pinetree.

1

The documents in the claim file of Sedgwick go to the heart of this question. These documents will show who the named insureds actually are, who paid the premiums to insure a complex nominally owned by an employee-less LLC, and with whom Pinetree's own adjuster actually communicated about the property—Pinetree, or the Beachwold entities that Plaintiff alleges pulled the strings. That evidence is independently relevant to ownership and control, a purpose for which Rule 411 of the Federal Rules of Evidence expressly authorizes the use of insurance evidence. Movants' central reliance on Rule 411 is thus not merely misplaced; the very Rule they invoke refutes them.

The balance of the motion fares no better. Pinetree lacks standing to quash documents in which it holds no personal right or privilege. Keen—Pinetree's own retained adjuster, not a disinterested bystander—possesses or controls the claim file Plaintiff seeks. The temporal scope tracks the years of systemic water-and-termite problems the TAC documents. And the work-product objection is, by Movants' own account, already being handled the proper way: through a privilege log, document by document—not by quashing entire categories. The motion should be denied. To the extent the Court has any concern about scope, please note that Plaintiff has narrowed the scope (see below) and stands ready to confer regarding further narrowing.

## II.    RELEVANT BACKGROUND

This action arises out of a fire on February 20, 2024, at Unit G8 of the Pinetree Apartments in Petersburg, Virginia, in which Plaintiff was catastrophically burned and her three-year-old son died. Plaintiff alleges she was trapped in the primary bedroom because the sliding glass door—her only direct exit—would not open, the result of years of water intrusion and termite infestation that had rotted the door's supporting framing. TAC ¶¶ 1–9, 113–117.

2

The operative TAC is not a one-defendant case. It names eleven defendants, including six entities Plaintiff collectively calls the "Beachwold Defendants" (Pinetree; Clearfield/Pinetree Apartments, LLC; Beachwold Partners, LP; Beachwold Holdings, LLC; Beachwold Residential, LLC; and South Oxford Management, LLC), three individuals, and the exterminator, PestNow. TAC ¶¶ 16–24.

The TAC alleges that Pinetree "had no employees" and was "operated and managed" by the Beachwold entities; that decisions about the property were "made and imposed from the top down"; and that the entities shared a single document server, common insurance, and interlocking ownership such that "the corporate veil should be pierced." TAC ¶¶ 123–135. Among the specific facts alleged: South Oxford—not Pinetree—is listed as the sole "Manager" and as the first named insured on the governing insurance, with Beachwold Residential and Beachwold Holdings added as named insureds by endorsement, while Pinetree signs and acts only through South Oxford employees. TAC ¶¶ 129–135.

Sedgwick Claims Management Services, Inc. ("Sedgwick") served as Pinetree's third-party claims adjuster, and Movant Keen was the Executive General Adjuster assigned to the property-damage claim for the fire (Claim No. DAL24708220). Plaintiff served Keen with a subpoena duces tecum seeking eight categories of documents from that claim file: a single photograph of the rear of Building G (Topic 1); the insurance policy and premium records associated with the claim (Topics 2–4); and communications between Sedgwick and the named insured and the Beachwold entities concerning the complex (Topics 5–8). Plaintiff's counsel invited Movants to call with any questions about scope. Ex. A. Movants challenge or move to quash all topics.

## III.    ARGUMENT

Discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As Movants concede, relevance "is thus the foundation for any request for production, regardless of the individual to whom a request is made." *Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012). The party moving to quash bears the burden of establishing that the requested discovery is improper. Measured against the actual allegations of the TAC, each of Movants' objections fails.

### A.    The Discovery Plaintiff Seeks Is Directly Relevant to the Contested Question of Who Owned and Operated the Complex—the Linchpin of Plaintiff's Claims Against the Non-Pinetree Defendants.

Movants repeatedly characterize this case as a "personal injury action against Pinetree" in which insurance and entity documents are irrelevant. Mem. at 6. That characterization ignores the operative pleading. The TAC alleges that Pinetree is an employee-less shell and asks the Court to pierce the corporate veil and hold the Beachwold entities and individuals liable as the true owners and operators of the complex. TAC ¶¶ 123–135. Veil-piercing and alter-ego liability turn on a fact-intensive inquiry into unity of interest and ownership—including the commingling of funds, common insurance, shared management and personnel, undercapitalization, and which entity actually controlled and financed operations. *See C.F. Trust, Inc. v. First Flight L.P.*, 266 Va. 3, 10 (2003) ("The decision to disregard a corporate structure to impose personal liability is a fact-specific determination, and the factual circumstances surrounding the corporation and the questioned act must be closely scrutinized in each case"); *O'Hazza v. Exec. Credit Corp.*, 246 Va. 111, 115 (1993), reversing the trial court's decision to pierce the corporate veil but recognizing that "[p]iercing the corporate veil is justified when the unity of interest and ownership is such that

the separate personalities of the corporation and the individual no longer exist and to adhere to that separateness would work an injustice").

Plaintiff has expressly alleged that the insurance arrangements themselves evidence the sham structure: South Oxford is the first named insured, with Beachwold Residential and Beachwold Holdings added by endorsement, while Pinetree acts only through others. TAC ¶¶ 129–135. The documents the Plaintiff has subpoenaed—for example, documents showing who is insured, who pays the premiums, and who communicates with the adjuster--bear directly on those allegations and on which entities should answer for the conditions that killed a child and disfigured his mother.

Movants' own brief illustrates why this discovery matters. They assert, as though it were settled, that "[t]he insurance policies at issue were written for Pinetree." Mem. at 4. But that is precisely what Plaintiff disputes and what the subpoenaed documents will reveal. A party cannot defeat discovery by asserting its own answer to the very factual question the discovery is designed to test.

### B.     Rule 411 Does Not Bar This Discovery—It Authorizes It (Topics 2–4).

Movants' headline objection to the insurance topics is Federal Rule of Evidence 411. Mem. at 6–7. But Rule 411 cuts against them. The Rule provides that insurance evidence is inadmissible to prove negligence, and then expressly preserves its use for other purposes:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. *But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.*

Fed. R. Evid. 411 (emphasis added). Proving ownership and control is exactly why Plaintiff seeks these documents. Plaintiff does not offer the existence of insurance to show that any defendant was negligent; instead, she seeks the policy, named-insured information, and premium records to

show who owned, funded, and controlled Pinetree Apartments.  That is the textbook "another purpose" the Rule safeguards. Movants quote the first sentence of Rule 411 and ignore the second.

Two further points dispose of the insurance topics. First, Rule 26(a)(1)(A)(iv) is a floor, not a ceiling. Movants argue that Rule 26 "only requires" production of the policy up to the ad damnum. Mem. at 4–5. But Rule 26(a)(1) governs mandatory initial disclosures; it does not define or limit the universe of discoverable material, which is set by the relevance-and-proportionality standard of Rule 26(b)(1). That a document need not be disclosed automatically does not immunize it from a properly directed request.  Furthermore, disclosure of additional insurance policies may disclose additional liability carriers who "have a dog in the fight" and should be "at the table" when settlement is discussed.

Second, Movants' authorities are inapposite. *Sea Salt, LLC v. Bellerose* and *Salazar v. Bocanegra* concerned reservation-of-rights letters sought for insurance-coverage purposes in cases where coverage was disputed. Here, Plaintiff seeks insurance and premium records not to litigate coverage, but to prove the ownership-and-control structure of the defendants—the purpose Rule 411 specifically blesses. Neither case addresses insurance documents offered for that purpose. The premium-payment records (Topics 3–4) are especially probative: who actually wrote the checks to insure a property nominally owned by an LLC with no employees speaks directly to commingling, funding, and control.  Was it Beachwold Residential who wrote the checks?  For purposes of veil piercing and alter-ego liability, this matters.

**C.      The Subpoena Does Not Improperly "Circumvent" Party Discovery, Because the Documents Reside with Sedgwick and Pinetree Has No Employees (Topics 2–8).**

Movants invoke *Sziber v. Dominion Energy, Inc.,* No. 3:20-cv-117, 2021 U.S. Dist. LEXIS 250163, at *7 (E.D.Va. 2021) and *Knott v. Nationstar Mortgage,* No. 5:15-CV-00043-RLV, 2017

U.S. Dist. LEXIS 73580, *7 (W.D.N.C. May 15, 2017), for the proposition that Plaintiff must obtain these documents from a party rather than from Keen. Mem. at 5–6, 7–8. The principle is sound but does not aid Movants here, for four reasons.

First, the rule applies only where the requesting party "can obtain the information from another party in the litigation." *Sziber*, at *7. Pinetree cannot supply much of what Plaintiff seeks. After all, Pinetree, by Movants' own admission and the TAC's allegations, has no employees.

Second, Pinetree has not been a willing source. Pinetree has objected to producing insurance information beyond the ad damnum and, as the TAC recounts, the Beachwold Defendants have "refused to provide" even the management agreements that would reveal the entities' relationships. TAC n.14 at pp. 38-39. Pinetree should not be allowed to withhold insurance information and then invoke the abstract availability of party discovery to block a third-party subpoena seeking insurance information.

Third, Keen and Sedgwick are not strangers to this dispute. The "special weight" afforded truly disinterested non-parties rests on the premise that bystanders "have no dog in the fight." *Consumer Fin. Prot. Bureau v. Nexus Servs.*, No. 5:21-cv-00016, 2022 U.S. Dist. LEXIS 90308, at *25 n.6 (W.D. Va. May 19, 2022). Sedgwick is Pinetree's claims adjuster, and Keen personally adjusted the property-damage claim arising from the very fire at issue. The policy considerations underlying non-party protection are at their weakest when the "non-party" is the defendant's own agent, deeply enmeshed in the underlying events.

Fourth, allowing Plaintiff to obtain documents from the third-party Movants "enables Plaintiff to confirm that production is complete." *Riddick v. Chex Systems, Inc.*, Case No. 2:24cv700, 2025 WL 4716771, at *3 (E.D.Va. 2025).  Furthermore:

> Even where there is no explicit indication that a party's production is deficient, a
> subpoena may still be enforced if the requested materials are relevant, proportional

7

to the needs of the case, and not unduly burdensome to the third party. *Rule 45* permits the use of third-party subpoenas not only to fill gaps in a party's production but also to ensure accuracy and completeness where doing so imposes minimal burden. Thus, when these criteria are met, enforcement of the subpoena is appropriate.

*Id.*

**D.    Keen and Sedgwick Have Possession, Custody, or Control of the Claim File (Topics 2–4).**

Movants argue that Keen lacks Rule 45 "control" over the insurance documents because control requires a legal right, not mere access. Mem. at 6. The cases they cite—*Bleecker v. Standard Fire Insurance Co.,* 130 F. Supp.2d 726, 739 (E.D.N.C. 2000), *In re Doe v. Under Seal*, 584 F.3d 175, 190 (4th Cir. 2007), and *United States v. Guterma,* 272 F.2d 344, 346 (2nd Cir. 1959)—involved individuals with incidental access to records belonging wholly to others (an employee's access to corporate records and a trustee's custody of a locked safe he could not open). Sedgwick's claim file is different in kind. It is the adjuster's own file, assembled by him in the ordinary course of adjusting Claim No. DAL24708220, and Keen is the Executive General Adjuster Sedgwick assigned to it. The subpoena topics are framed around that claim number and that file. Keen's possession and control of the documents he gathered and generated in adjusting the claim are not the "mere access" present in Movants' cases. At a minimum, the subpoena plainly reaches the claim-file materials Sedgwick itself created.

**E.    The Document-and-Communication Topics Are Not Overbroad, and Their Temporal Scope Tracks the TAC's Allegations (Topics 5–8).**

Movants contend Topics 5–8 are overbroad because they reach documents "after 2020" and are not limited to the fire. Mem. at 7–9. The breadth Movants decry is a function of the breadth of Plaintiff's allegations, not of overreaching.  Even so, excepting communications among Sedgwick, the named insured, and the Beachwold entities concerning the property, Plaintiff hereby

8

limits her subpoena to documents prepared in 2023 and 2024. She also hereby excludes documents sent by Sedgwick only to BlueSky, as well as those sent by BlueSky only to Sedgwick, to the extent that the documents do not mention or deal with termites.

Communications among Sedgwick, the named insured, and the Beachwold entities concerning the property during 2023 and 2024 are directly relevant to the ownership-and-control questions discussed above.

Movants' overbreadth authorities confirm only that a subpoena must be limited to relevant subject matter—which this one is, by its terms, to documents "mentioning, dealing with, or concerning Pinetree Apartments." Movants' hypotheticals about business-income-loss claims or tenant-relocation expenses do not justify quashing; at most they identify discrete subsets that, if truly irrelevant, can be addressed by agreement or a tailored objection. The proper response to a request that may sweep in some marginal material is to narrow it, not to deny all of it.

Finally, Movants' generalized assertions of burden—that Keen would have to "sort through his records"—are mere lawyer embellishments. There are no specific facts and there is no supporting affidavit. Movants submit no declaration quantifying the volume of responsive material or the effort required. Furthermore, the existence of an assembled claim file under a single claim number, together with the privilege log Sedgwick has already prepared, indicate that the responsive universe is identifiable and manageable. Conclusory burden claims do not carry Movants' burden as the parties seeking to quash. Thus, Keen and Sedgwick have made an inadequate showing of burden. *Sziber v. Dominion Energy, Inc.*, *supra,* *3, stating that "'The party claiming that a discovery request is unduly burdensome must allege specific facts that indicate the nature and extent of the burden.'"

9

**F.**     **Work Product Is Properly Resolved Through the Privilege Log, Not a Blanket Quash (Topics 5–8).**

Movants' final argument is that some post-fire documents are protected work product because Keen evaluated Pinetree's subrogation claims. Mem. at 10. That objection does not support quashing Topics 5–8, for three reasons.

First, a privilege log that complies with Rule 45 is the answer to a privilege objection: responsive non-privileged documents are produced, privileged ones are logged, and any dispute is resolved entry by entry. A privilege objection to some documents is not a basis to quash entire categories that plainly include non-privileged material—for example, the insurance policy, premium and payment records, notices of loss, and ordinary-course communications.

Second, the work-product doctrine is qualified, not absolute, and protects only materials prepared in anticipation of litigation. It does not shield documents generated in the ordinary course of insuring and managing the property, nor does it convert every communication in an adjuster's file into protected material. To the extent any genuinely protected work product exists, it can be withheld and logged—which Movants say they have done—leaving nothing in this category for the Court to quash.

Third, the work product doctrine does not protect historical facts. Thomas E. Spahn, The Attorney-Client Privilege and the Work Product Doctrine: A Practitioner's Guide § 40.502 (3rd 2013), stating:

> As with the attorney-client privilege, the work product doctrine generally does not protect historical facts from discovery. As one court bluntly put it, "[t]he work product doctrine does not protect from disclosure the underlying facts known by the party or her counsel, even if acquired in anticipation of litigation." [footnotes omitted].

Thus, for example, claims of work product and anticipation of litigation do not shield the identity of the entity that sent a premium payment or to whom a receipt for such a payment was addressed.

### G.    Pinetree Lacks Standing to Quash Much of the Subpoena.

A party may move to quash a subpoena directed to a third party only if it claims "some personal right or privilege in the information sought." Mem. at 3 (quoting *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo* and *Eichenwald v. Rivello*). Pinetree satisfies that standard, if at all, only for documents containing its own confidential information—not for the bulk of what the subpoena seeks. The premium-payment records of various entities (Topics 3–4), and Sedgwick's communications with South Oxford, Beachwold Residential, and Beachwold's affiliated entities (Topics 5–8), are not Pinetree's confidential information; many concern other entities entirely, and Pinetree disclaims having any employees who would have generated or held them. Pinetree therefore lacks standing to quash those topics, and only Keen's objections—burden and privilege, both addressed above—are properly before the Court as to them.

### H.    The Movant's Privilege Log Fails to Comply with Rule 45(e)(2)(A)(ii).

The Movant's Privilege Log Fails to Comply with Rule 45(e)(2)(A)(ii), which states:

> (2) *Claiming Privilege or Protection.*
>
> (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Plaintiff's counsel expects to file a separate motion to address this deficiency.

11

**I.        Request for *in camera* review.**

Before ruling that a privilege shields any document from production, Plaintiff asks the Court

to examine the document *in camera.*

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Movants'

Motion to Quash and Motion for a Protective Order and order production of the subpoenaed

documents, with any genuinely privileged materials addressed through Movants' privilege log. To

the extent the Court finds any topic insufficiently tailored, Plaintiff requests that the Court narrow

rather than quash it.  And Plaintiff asks the Court to grant such other relief as is just.

Respectfully submitted,

NYEISHA S. GHEE


By:*/s/ Charles H. Cuthbert, Jr.*
Counsel


Charles H. Cuthbert, Jr. (VSB No. 14519)
Richard M. Cuthbert (VSB No. 82025)
**CUTHBERT LAW OFFICES, P.C.**
220 North Sycamore Street
Petersburg, Virginia 23803-3228
Phone: (804) 733-3100
Fax: (804) 732-4658
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com

Mark J. Krudys (VSB No. 30718)
Danny Zemel (VSB No. 95073)
**THE KRUDYS LAW FIRM, PLC**
Truist Place, 919 East Main Street, Suite 2020
Richmond, Virginia 23219
Phone: (804) 774-7950
Fax: (804) 381-4458
mkrudys@krudys.com
dzemel@krudys.com

Counsel for Plaintiff Nyeisha S. Ghee

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2026, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel of record, including the following:

Joseph P. Moriarty (VSB No. 68465)
Kevin M. Kennedy (VSB No. 75071)
Bryn L. Clegg (VSB No. 96923)
**WILLCOX & SAVAGE, P.C.**
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510-2243
jmoriarty@wilsav.com
kkennedy@wilsav.com
bclegg@wilsav.com
*Counsel for Jason Keen and Pinetree Apartments, LLC*

Alexander Francuzenko (VSB No. 36510)
Philip C. Krone (VSB No. 87723)
**DUNN CRAIG FRANCUZENKO**
3251 Blenheim Blvd., Suite 404
Fairfax, Virginia 22030
alex@dunncraig.com
pkrone@dunncraig.com
*Counsel for PestNow of Central Virginia, LLC*

*/s/  Charles H. Cuthbert, Jr.*
Charles H. Cuthbert, Jr.